**BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE FIREFIGHTER TURNOUT GEAR PFAS LITIGATION** | **MDL DOCKET NO. ____** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CITY OF ROCHESTER'S
MOTION FOR CENTRALIZATION AND TRANSFER OF RELATED ACTIONS
TO THE DISTRICT OF MINNESOTA FOR CONSOLIDATED
OR COORDINATED PRETRIAL PROCEEDINGS**

Plaintiff City of Rochester, New York ("Movant") submits this memorandum of law in support of its Motion to Transfer and Centralize the Movant's Action[1] and the Related Actions for Consolidated or Coordinated Pretrial Proceedings.

In addition to the Rochester's Action filed in the District of Minnesota, there are two additional cases pending in Minnesota, one in the Northern District of California, and one in the District of Montana (collectively, the "Related Actions").[2] The Defendants are producers of perfluorinated and polyfluorinated alkyl substances ("PFAS"), textile manufacturers, and a number of other manufacturers, assemblers, and distributors. The Related Actions all allege that Defendants manufactured, distributed, and sold defective firefighter turnout gear contaminated with toxic PFAS.

---

[1] *City of Rochester, New York v. 3M Company, et al.*, No. 26-cv-02329 (D. Minn.) (the "Action").

[2] *City of Peabody, Massachusetts v. 3M Company, et al.*, No. 25-cv-2083 (D. Minn.); *Earlville Community Fire Protection District v. 3M Company, et al.*, No. 26-cv-02388 (D. Minn.); *County of San Mateo v. 3M Company, et al.*, No. 26-cv-02380 (N.D. Cal.); *City and County of Butte-Silver Bow, Montana, et al. v. 3M Company, et al.*, No. 25:cv-00036 (D. Mont.).

Given the common allegations in the Related Actions; the accessibility, centrality, and convenience of the District of Minnesota; the Court's experience handling class cases; and that Judge Bryan is the only judge assigned a Related Action who is not currently presiding over a pending MDL proceeding, and Judge Bryan's experience handling class actions, transfer to and centralization of the Related Actions in the District of Minnesota before Judge Bryan will advance the efficient resolution of this litigation and best serve the convenience of the parties and witnesses involved.

## FACTUAL AND PROCEDURAL BACKGROUND

Firefighters require the use of specialized occupational personal protective equipment ("PPE"), referred to as "turnout gear," such as self-contained breathing apparatuses, hoods, helmets, coats, pants, gloves, boots, reflective tape, and other multilayered PPE ("Turnout Gear"). Until very recently, all Turnout Gear available on the market was laden with highly toxic, carcinogenic, synthetic PFAS; and the vast majority of it still is.

PFAS are a class of highly toxic synthetic chemical compounds made of nearly indestructible chains of carbon and fluorine atoms. PFAS bioaccumulate and biomagnify with exposure. Once released into the environment and human body, PFAS persist for a long—if not indefinite—period of time, earning them the nickname "forever chemicals." They are difficult to remediate, requiring specialized and costly protocols.

The PFAS in the contaminated Turnout Gear ("PFAS Turnout Gear") leach, shed, crumble, abrade, off-gas, and otherwise migrate out of the PPE, exposing firefighters and other nearby persons to severe danger and contaminating the physical locations in which PFAS Turnout Gear is used, stored, and cleaned. Plaintiffs in the Related Actions purchased the PFAS Turnout Gear to protect the health and safety of their firefighters from the extreme conditions of firefighting

2

activities. Instead, PFAS Turnout Gear releases toxic PFAS that are absorbed, inhaled, and ingested by firefighters and others and bioaccumulate in their bodies, resulting in unreasonable toxic exposure known to cause cancer, disease, and other harmful health conditions.

All of the Related Actions involve the same core Defendants, and all Defendants fall generally into three categories: (1) those that manufacture, market, and sell PFAS used in PFAS Turnout Gear; (2) those that manufacture and apply PFAS to fabrics, textiles, and other Turnout Gear components; and (3) those that assemble, market, and sell completed PFAS Turnout Gear. All of the complaints in the Related Actions allege that Defendants knew about and conspired to conceal the dangers of PFAS. Movant and all of the other Plaintiffs in the Related Actions seek to recover the costs of remediation, repair, and replacement of their property contaminated by PFAS and elimination of the ongoing toxic exposure of their firefighters and others.

At present, five class-action complaints are pending in three districts, each of which alleges overlapping claims against largely the same Defendants on behalf of overlapping or identical classes stemming from the same conduct described above:

- *City of Rochester, New York v. 3M Company, et al.*, No. 26-cv-02329 (D. Minn.);
- *City of Peabody, Massachusetts v. 3M Company, et al.*, No. 25-cv-2083 (D. Minn.);
- *Earlville Community Fire Protection District v. 3M Company, et al.*, No. 26-cv-02388 (D. Minn.);
- *County of San Mateo v. 3M Company, et al.*, No. 26-2380 (N.D. Cal.); and
- *City and County of Butte-Silver Bow, Montana, et al. v. 3M Company, et al.*, No. 2:25-cv-36 (D. Mont.)

## ARGUMENT

I.    **Centralization of the Related Actions is Warranted Under 28 U.S.C. § 1407**

"When civil actions involving one or more common questions of fact are pending in different districts," this Panel may transfer the actions "to any district for coordinated or consolidated pretrial proceedings," if transfer would serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

Because these requirements are met here, for the reasons detailed below, the Panel should transfer and centralize the Related Actions to the District of Minnesota for coordinated or consolidated pretrial proceedings.

### A.    The Related Actions involve common questions of fact

For purposes of Section 1407, common questions of fact exist where multiple actions involve common factual questions and can be expected to focus on a significant number of common events, defendants, and/or witnesses. *See e.g.*, *In re: GoodRx & Pharm. Benefit Manager Antitrust Litig. (No. II)*, 776 F. Supp. 3d 1346, 1348 (J.P.M.L. Apr. 2, 2025) (centralizing related actions where "[t]he actions share overlapping complex issues of fact relating to how the integrated savings program operates, the agreements among GoodRx and the four PBM defendants, the program's impact on independent pharmacies, and the alleged damages"); *In re: Shale Oil Antitrust Litig.*, 743 F. Supp. 3d 1371, 1372 (J.P.M.L. 2024) (centralizing where actions shared defendants and "factual questions arising from an alleged price-fixing conspiracy").

Here, the Related Actions involve many common questions of fact, including:

- PFAS toxicity;

- The degree to which PFAS poses a contamination risk to individuals wearing or otherwise handling PFAS Turnout Gear;

- The degree to which PFAS Turnout Gear contaminates areas in which it is used, stored, and cleaned; and

- Defendants' knowledge and concealment of, and collusion regarding, the risks associated with PFAS Turnout Gear.

Accordingly, these cases will benefit from coordinated or consolidated pretrial proceedings in a centralized forum.

**B.    Centralization will serve the convenience of parties and witnesses and promote the just and efficient conduct of the Related Actions**

Centralization will serve the convenience of the parties and witnesses by ensuring the orderly and non-duplicative conduct of discovery and other pretrial proceedings. Absent centralization, discovery in the different jurisdictions would be conducted in parallel, which would unnecessarily multiply the amount of discovery required for largely similar cases and claims. Many of the same witnesses would likely need to be deposed multiple times rather than just once. In addition, the parties would likely engage in separate but similar motion practice. Such a parallel structure increases the chances that courts in different jurisdictions could reach different conclusions and thus subject parties to inconsistent rulings.

**II.    The Panel Should Centralize the Related Actions in the District of Minnesota**

In addition to being home to three of the five pending Related Actions,[3] the District of Minnesota provides additional advantages not afforded by the Northern District of California or the District of Montana.

**A.    The District of Minnesota is convenient for the parties and witnesses**

The District of Minnesota is a convenient location for all parties and counsel. It is geographically central and airlines offer a large number of non-stop and connecting flights to the Minneapolis-Saint Paul International Airport from across the country and around the world. *See In re Air Crash at Toronto Pearson Int'l Airport on Feb. 17, 2025*, 796 F. Supp. 3d 1377, 1378 (J.P.M.L. 2025) ("The District of Minnesota also offers a convenient and accessible forum for the

---

[3] Plaintiffs in the two first-filed cases, *City of Peabody, Massachusetts v. 3M Company, et al.*, No. 25-cv-2083 (D. Minn.) and *City and County of Butte-Silver Bow, Montana, et al. v. 3M Company, et al.*, No. 2:25-cv-36 (D. Mont.), have filed amended complaints. The first amended complaint was filed by the City of Peabody on February 10, 2026, followed by two amended complaints by the City and County of Butte-Silver Bow on March 13, 2026, and May 5, 2026.

parties and witnesses."); *In re Stryker Rejuvenate, ABG II Hip Implant Prods. Liab. Litig.*, 949 F. Supp. 2d 1378, 1380 (J.P.M.L. 2013) ("[The District of Minnesota] … offers a relatively accessible and geographically central forum").

### B.    Relevant witnesses and evidence are located in Minnesota

One of the core and largest Defendants, 3M Company ("3M"), is headquartered in the District of Minnesota in Saint Paul, Minnesota. 3M is alleged to be one of the PFAS Chemical Finish Defendants that designs, manufactures, markets, and sells "PFAS performance chemicals for high-hazard clothing . . . as well as other PFAS performance chemicals applied to the fabrics, textiles, adhesives, reflective tape, and assembled Turnout Gear." Class-Action Complaint ¶ 22, *City of Rochester, New York v. 3M Company, et al.*, No. 26-cv-02329 (D. Minn.). Defendant 3M is also alleged to have long known about, and conducted studies on, the dangers of PFAS. *See id.* ¶ 92. It is therefore exceedingly likely that many witnesses and evidence are located in Minnesota. Indeed, a previous MDL against 3M was transferred to and centralized in Minnesota in part because 3M is headquartered there and evidence and witnesses in that case were located there. *See In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 148 F. Supp. 3d 1383, 1386 (J.P.M.L. 2015) ("The 3M and Arizant defendants are headquartered in Minnesota, and many witnesses and relevant documents are likely to be found there.").

### C.    Judge Bryan is an experienced jurist who will efficiently manage this litigation, and he is not currently presiding over any MDL proceedings

Judge Jeffrey M. Bryan is a respected jurist who is not currently assigned an MDL proceeding. *MDL Cases*, United States District Court, District of Minnesota, https://www.mnd.uscourts.gov/mdl-cases. While Judge Bryan is not currently handling any MDL

6

proceedings, Judges Jacqueline S. Corley and Brian Morris—who are presiding over the California and Montana Related Actions—are both currently handling other pending MDLs.[4]

Judge Bryan also has handled more than fifty class actions during his several years on the bench, so appointing him to oversee these actions would facilitate their efficient management, and he is an excellent candidate to manage what would be his first MDL proceeding—providing a newer judge an opportunity to gain important MDL experience.

**CONCLUSION**

Based on the foregoing, Movant City of Rochester, New York respectfully requests that this Panel centralize and transfer all Related Actions pursuant to 28 U.S.C. § 1407 for coordinated or consolidated proceedings in the District of Minnesota before Judge Bryan.

Dated: May 12, 2026

Respectfully submitted,

*/s/ Bryan L. Clobes*
Bryan L. Clobes
Daniel H. Herrera
Henry Visser Melville
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, IL 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
bclobes@caffertyclobes.com
dherrera@caffertyclobers.com
hmelville@caffertyclobes.com

---

[4] *In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 730 F. Supp. 3d 1371, 1373–74 (J.P.M.L. 2024) (assigning MDL to Judge Corley in the Northern District of California); *In re Snowflake, Inc., Data Sec. Breach Litig.*, 813 F. Supp. 3d 1349, 1352 (J.P.M.L. 2025) (assigning MDL to Judge Brian Morris in the District of Montana).

_/s/ Garrett Blanchfield_
Garrett Blanchfield, Bar No. 209855
Brant Penney, Bar No. 316878
Roberta Yard, Bar No. 322295
**REINHARDT WENDORF &
BLANCHFIELD**
80 So. 8th Street, Suite 900
Minneapolis, MN 55402
Telephone: 651-287-2100
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com
r.yard@rwblawfirm.com


***Counsel for Plaintiff City of Rochester, New
York and the Proposed Class***

8