**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: FIREFIGHTER TURNOUT GEAR MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 3191 |

**RESPONSE TO MOVANT CITY OF ROCHESTER'S MOTION FOR
CENTRALIZATION AND TRANSFER OF RELATED ACTIONS TO THE
DISTRICT OF MINNESOTA PURSUANT TO 28 U.S.C. § 1407 FOR
CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS**

011292-11/3601314 V1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ....................................................................................................... 1

II.    BACKGROUND ......................................................................................................... 2

III.   ARGUMENT .............................................................................................................. 8

      A.     Legal Standard ................................................................................................. 8

      B.     The Related Actions Should Not be Consolidated and Transferred ...................... 9

      C.     If the Actions are Consolidated, They Should be Transferred to the District of Montana ........................................................................................... 11

              1.     Sixteen of the twenty plaintiffs in the Related Actions have brought their claims in the District of Montana, favoring centralization in that court. ........................................................ 12

              2.     The Montana Action is the first-filed action among the Related Actions and the most advanced. ................................................. 13

              3.     The District of Montana has the necessary capacity and resources, and it is preferable as the transferee court. ............................ 14

              4.     The purported convenience of Minnesota does not favor the District of Minnesota as the transferee court. .......................................... 15

              5.     The location of Defendant 3M in Minnesota does not favor transfer to the District of Minnesota. ....................................................... 16

IV.   CONCLUSION ......................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
No. MDL 2873, 2021 WL 755083 (J.P.M.L. Feb. 4, 2021) ....................................................16

*In re Avocado Oil Mktg. & Sales Pracs. Litig.*,
766 F. Supp. 3d 1333 (J.P.M.L. 2025).....................................................................................11

*In re Axon Enter., Inc., Body-Worn Camera & Digital Evidence Mgmt. Sys.*
*Antitrust Litig.*,
776 F. Supp. 3d 1344 (J.P.M.L. 2025).....................................................................................11

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*,
148 F. Supp. 3d 1383 (J.P.M.L. 2015).....................................................................................18

*In re Best Buy Co., Cal. Song-Beverly Credit Card Act Litig.*,
804 F. Supp. 2d 1376 (J.P.M.L. 2011).......................................................................................8

*In re Carter's, Inc., Mktg. & Sales Pracs. Litig.*,
766 F. Supp. 3d 1329 (J.P.M.L. 2025).......................................................................................1

*In re CCell Closed Cannabis Oil Vaporization Sys. & Components Prods. Litig.*,
808 F. Supp. 3d 1410 (J.P.M.L. 2025).....................................................................................13

*In re Direct Purchaser Plaintiff Beef Antitrust Litig.*,
609 F. Supp. 3d 1412 (J.P.M.L. 2022).....................................................................................15

*In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*,
446 F. Supp. 242 (J.P.M.L. 1978)...............................................................................................8

*In re Eligo Energy Litig.*,
812 F. Supp. 3d 1353 (J.P.M.L. 2025).....................................................................................10

*In re Gateway Video Game Addiction Prods. Liab. Litig.*,
812 F. Supp. 3d 1350 (J.P.M.L. 2025).....................................................................................10

*In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*,
899 F. Supp. 2d 1378 (J.P.M.L. 2012).....................................................................................11

*In re Huel, Inc., Heavy Metal Prods. Liab. Litig.*,
MDL No. 3177, 2026 WL 914656 (J.P.M.L. Apr. 2, 2026).....................................................11

*In re Snowflake, Inc., Data Sec. Breach Litig.*,
813 F. Supp. 3d 1349 (J.P.M.L. 2025)................................................................................2, 15

011292-11/3601314 V1

- 3 -

*In re TrueCar, Inc., S'holder Derivative Litig.*,
    412 F. Supp. 3d 1353 (J.P.M.L. 2019)................................................................................11

*In re Watson Fentanyl Patch Prods. Liab. Litig.*,
    883 F. Supp. 2d 1350 (J.P.M.L. 2012)................................................................................11

## STATUTES

28 U.S.C. § 1404....................................................................................................................10

28 U.S.C. § 1407.......................................................................................................... *passim*

## I.    INTRODUCTION

The Plaintiffs in *City and County of Butte-Silver Bow, Montana, et al. v. 3M Company, et al.*, Case No. 2:25-cv-00036-BMM (D. Mont.) ("Montana Plaintiffs") respectfully submit this Response to the motion of the City of Rochester (the "Movant") to transfer and centralize related actions under 28 U.S.C. § 1407 (the "Motion").[1] While the Montana Plaintiffs share the objective of efficiently litigating claims against the manufacturers and distributors of PFAS-contaminated turnout gear, the Motion for MDL consolidation is premature and unwarranted at this stage. The number of pending actions is small—five cases, three of which were filed in the last two months, pending before only three judges in three judicial districts. The Movant has made no showing that it made any attempts to coordinate informally with any parties or counsel before burdening this Panel with a consolidation petition. The Motion should be denied because "cooperation among the parties and deference among the courts can easily minimize the possibilities of duplicative discovery or inconsistent pretrial rulings." *In re Carter's, Inc., Mktg. & Sales Pracs. Litig.*, 766 F. Supp. 3d 1329, 1330 (J.P.M.L. 2025).

If the Panel orders centralization, the Montana Plaintiffs respectfully ask that the cases be transferred to the District of Montana, where the Honorable Brian Morris is presiding and where the first-filed and most procedurally advanced of the Related Cases, and sixteen of the twenty plaintiffs' claims at issue (80%), are currently pending. As Judge Morris recently stated, "this Court remains the Court with the most experience in these particular actions as it currently has the longest pending related action."[2] Judge Morris has further demonstrated exceptional capability in

---

[1] *See* MDL 3191, ECF No. 1.

[2] *See* Order On Motion For Stay, Case No. CV-25-36-BU-BMM, ECF No. 296, at 8.

- 1 -

managing a complex MDL proceeding. *See In re Snowflake, Inc., Data Sec. Breach Litig.*, 813 F. Supp. 3d 1349 (J.P.M.L. 2025).

## II.    BACKGROUND

The Related Actions at issue arise from substantially similar allegations that Defendants designed, manufactured, marketed, and sold firefighter turnout gear contaminated with toxic per- and polyfluoroalkyl substances ("PFAS"). PFAS are a class of highly toxic synthetic chemical compounds made of nearly indestructible chains of carbon and fluorine atoms that bioaccumulate in the human body, earning them the moniker "forever chemicals." The complaints allege that there are toxic levels of intentionally added PFAS in turnout gear, exposing firefighters and others to significant health risks. All Related Actions allege that Defendants knew about and conspired to conceal the dangers of PFAS in turnout gear, and each plaintiff seeks to recover costs of replacement and disposal of PFAS-infused turnout gear and elimination of ongoing toxic exposure. These claims concern the purchase (and need for replacement and disposal) of turnout gear, rather than the individual exposure of firefighters.

The first complaint on behalf of purchasers of PFAS-infused turnout gear was filed in the District of Connecticut in 2024.[3] The initial complaint in the Connecticut Action was filed on June 24, 2024, and was limited to claims by firefighters who did not themselves purchase the gear.[4] The Amended Complaint was filed on July 24, 2024,[5] and added new claims "on behalf of people

---

[3] *Uniformed Prof'l Fire Fighters Ass'n of Conn., et al. v. 3M Co., et al.*, Case No. 24-cv-1101 (D. Conn.).

[4] *Id.*, ECF No. 1.

[5] *Id.*, ECF No. 9.

and/or entities who purchased contaminated turnout gear that was manufactured, designed, or sold, in whole or in part, by any of the named Defendants" (the "Connecticut Purchaser Plaintiffs").[6]

As part of a coordinated voluntary consolidation effort intended to conserve judicial resources, promote efficient case management and expedite resolution of the claims, the Connecticut Purchaser Plaintiffs voluntarily dismissed their claims in the District of Connecticut on February 19, 2026 and refiled their claims in the Montana Action on March 13, 2026, along with four additional municipal plaintiffs from three additional states.[7] They did so because the Montana Action was at the time and remains the most procedurally advanced of all related cases pending across the country, making it the logical forum for consolidation.

On May 5, 2026, consistent with the scheduling order in the Montana Action, Plaintiffs filed a Second Amended Complaint adding nine new municipal plaintiffs from seven new States and corresponding state-law claims. *Id.*, ECF No. 234.[8] As a result, the Montana Action now includes sixteen Plaintiffs from twelve States.

By contrast, three turnout gear cases are pending in Minnesota before a single judge. The City of Peabody, Massachusetts filed a Complaint in the District of Minnesota on May 13, 2025.[9] The Movant filed its Complaint in the District of Minnesota on April 22, 2026.[10] Two days later, on April 24, the case was reassigned to Judge Bryan, who is presiding over *City of Peabody*.

---

[6] *Id.*, ¶ 6.

[7] *See City & Cnty. of Butte-Silver Bow, Mont., et al. v. 3M Co., et al.*, Case No. 2:25-cv-00036-BMM (D. Mont.), ECF No. 190 (adding as purchaser plaintiffs Baltimore City and Charles County, Maryland; St. Louis, Missouri; and Santa Monica, California).

[8] The new plaintiffs in the Second Amended Complaint are: Kansas City, Missouri; Anniston, Alabama; Little Rock, Arkansas; Pine Bluff, Arkansas; Markham, Illinois; Gary, Indiana; Worcester, Massachusetts; Borough of Emmaus, Pennsylvania; and City of Oak Creek, Wisconsin.

[9] Case No. 25-cv-02083 (D. Minn.), ECF No. 1.

[10] Case No. 26-cv-02329 (D. Minn.), ECF No. 1.

011292-11/3601314 V1

Earlville Community Fire Protection District (Illinois) filed its Complaint in the District of Minnesota on April 27, 2026.[11] On April 30, 2026, that case was also reassigned to Judge Bryan. Thus, three plaintiffs from three states (two of which are already represented in the Montana Action) now have actions pending before Judge Bryan in Minnesota. *City of Peabody*, the most advanced of the three, is scheduled to have oral argument on Defendants' Motions to Dismiss on June 23, 2026.

The County of San Mateo filed a Complaint in the Northern District of California on March 18, 2026.[12] The Montana Action likewise includes a plaintiff from California. On April 10, 2026, Judge Jacqueline Scott Corley set a deadline of June 5, 2026, for Defendants to answer, move to dismiss, or otherwise respond to the Complaint.[13] The Court set a hearing date on October 8, 2026. *Id.*

Thus, the Movant, who has yet to engage in a single substantive act beyond filing a complaint a month ago in a venue that includes two additional plaintiffs in two nearly-identical cases before the same District Court judge, proposes moving a case that has been vigorously litigated for two years and now includes 16 plaintiffs from 12 states after a process of voluntary consolidation, to a Court that is significantly procedurally behind and where the pending actions involve a fraction of the total number of litigants.

Movant's request fails to note the substantive actions that have taken place in the Montana Action:

1.    The Complaint was filed on April 3, 2025. Case No. 24-cv-00036, ECF No. 1.

---

[11] Case No. 26-cv-02388 (D. Minn.), ECF No. 1.

[12] Case No. 26-cv-02380 (N.D. Cal.), ECF No. 1.

[13] *Id.*, ECF No. 20.

- 4 -

2.  On June 13, 2025, Defendant 3M filed a motion to stay the deadline for responding to the Complaint pending resolution of a motion to transfer. *Id.*, ECF No. 20. The Court granted that motion. *Id.*, ECF No. 29.

3.  On July 1, 2025, Defendants filed a motion to transfer the case to the District of Delaware. *Id.*, ECF No. 32. Plaintiff filed an Opposition on July 24, 2025. *Id.*, ECF No. 46. Defendants filed a Reply on August 14, 2025. *Id.*, ECF No. 66. On September 4, 2025, the District Court held a hearing on the motion to transfer. *Id.*, ECF No. 78. The Court denied the motion in an eighteen-page Order on September 23, 2025. *Id.*, ECF No. 85.

4.  On October 15, 2025, Defendants filed four motions to dismiss with supporting memoranda. *Id.*, ECF Nos. 100-101, 103-109. Plaintiff filed its four Opposition briefs on November 20, 2025. *Id.*, ECF Nos. 128-131. On December 8, 2025, the Court held a hearing on the motions to dismiss. *Id.*, ECF No. 145. On January 6, 2026, the Court denied the motions to dismiss in a fifty-page Order. *Id.*, ECF No. 159.

5.  On February 12, 2026, the Court denied the Dupont Defendants' request that the Court reconsider its order on their motion to dismiss for lack of personal jurisdiction. *Id.*, ECF No. 173 (citing 1/6/2026 Order on motions to dismiss, ECF No. 159).

6.  Defendants filed Answers to the Complaint on February 17, 2026. *Id.*, ECF Nos. 174-178, 181.

7.  On February 17, 2026, the parties filed a Joint Discovery Plan and their preliminary pretrial statements. *Id.*, ECF No. 179-180, 182-186.

- 5 -

011292-11/3601314 V1

8. On March 13, 2026, Plaintiff filed a First Amended Complaint, which added claims by six new Plaintiffs from four new states. *Id.*, ECF No. 190.[14]

9. On April 10, 2026, all Defendants filed motions to dismiss the First Amended Complaint, with supporting briefs. *Id.*, ECF Nos. 193-194, 198-203, 206.

10. On April 10, 2026, defendant Globe Manufacturing moved to stay proceedings under Rule 41(d) and for fees and costs. *Id.*, ECF Nos. 204-205. On May 6, 2026, Plaintiffs filed a brief in Opposition. *Id.*, ECF No. 235. Globe filed a Reply on May 19, 2026. *Id.*, ECF No. 272.

11. On April 21, 2026, Plaintiffs moved for appointment of interim class counsel, with a supporting brief. *Id.*, ECF Nos. 220-221. Defendants filed a Response on May 5, 2026. *Id.*, ECF No. 233. Plaintiffs filed their Reply on May 12, 2026. *Id.*, ECF No. 246.

12. On May 5, 2026, Plaintiffs filed a Second Amended Complaint, which added nine new Plaintiffs from seven new states and corresponding state-law claims. *Id.*, ECF No. 234.[15]

13. On May 7, 2026, Defendants filed a joint motion for sanctions, with a supporting brief. *Id.*, ECF Nos. 237-238. Plaintiffs filed a brief in Opposition on May 12, 2026. *Id.*, ECF No. 243. Defendants filed a Reply on May 19, 2026. *Id.*, ECF No. 271.

---

[14] The new plaintiffs in the First Amended Complaint are: Santa Monica, California; City of Stamford, Connecticut; Old Mystic Fire District, Connecticut; Mayor and City Council of Baltimore, Maryland; Charles County, Maryland; and City of St. Louis, Missouri.

[15] The new plaintiffs in the Second Amended Complaint are: Kansas City, Missouri; Anniston, Alabama; Little Rock, Arkansas; Pine Bluff, Arkansas; Markham, Illinois; Gary, Indiana; Worcester, Massachusetts; Borough of Emmaus, Pennsylvania; and City of Oak Creek, Wisconsin.

011292-11/3601314 V1

14. On May 14, 2026, the Court ordered that Defendants' responsive pleadings to the Second Amended Complaint are due on or before June 4, 2026. *Id.*, ECF No. 254.

15. On May 20, 2026, Defendants filed a motion to stay their "responsive pleading and answer deadlines relating to the Second Amended Complaint until 30 days after the Judicial Panel on Multidistrict Litigation ('JPML') determines whether to transfer this and other similar cases to an MDL" with a supporting brief. *Id.*, ECF Nos. 278-279. Plaintiffs filed a brief in Opposition on May 21, 2026. *Id.*, ECF No. 291. On May 27, 2026, the Court denied Defendants' motion to stay and ordering that responses to the Second Amended Complaint are due by June 11, 2026. *Id.*, ECF No. 296.

16. On May 22, 2026, the Court held an in-person hearing on: (1) Plaintiffs' motion for appointment of interim co-lead class counsel; (2) Globe's motions for a stay of proceedings under Rule 41(d) and for fees and costs; and (3) Defendants' joint motion for sanctions. *Id.*, ECF No. 293. On May 28, 2026, the Court denied Defendants' motions for Rule 41(d) stay, fees and costs, and their motion for sanctions. *Id.*, ECF No. 300. On that same day the Court also granted Plaintiffs' motion and appointed them Interim Co-Lead Class Counsel. *Id.*, ECF No. 301.

17. Meanwhile, discovery has been actively underway in the Montana Action since January 2026.

18. Plaintiffs served initial disclosures on January 22, 2026, and issued a First Set of Requests for Production to the original defendants—3M Company, Corteva, DuPont de Nemours, Chemours Co., Chemours FC, W.L. Gore, Lion Group, and Globe Manufacturing—on the same date. Initial disclosures were received from 3M

- 7 -

(February 12, 2026), Globe (February 6, 2026), Lion Group (February 13, 2026), and W.L. Gore (February 13, 2026). Five defendants—3M, Corteva, DuPont, Chemours Co., and Lion—served responses to Plaintiff's First RFPs on March 25, 2026. A deficiency letter was sent to the DuPont defendants on May 21, 2026, indicating their responses were inadequate.

19.    Plaintiffs' First Set of RFPs was also served on the later-added defendants Fire-Dex LLC and Morning Pride Manufacturing on April 21, 2026.

20.    Plaintiffs have produced documents in response to Defendant W.L. Gore's requests, including firefighter roster records, turnout gear logs, and insurance documents.

In addition to ignoring this substantial progress, the Movant ignores that 80% of the plaintiffs representing over 85% of the states with named plaintiffs in the five pending actions are currently litigating in the Montana Action.

### III.    ARGUMENT

### A.    Legal Standard

The Judicial Panel on Multidistrict Litigation may order centralization under 28 U.S.C. § 1407(a) only upon an affirmative determination that the actions at issue "involv[e] one or more common questions of fact," and that transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." All three statutory prerequisites must be satisfied, and the burden of demonstrating that centralization is warranted rests squarely with the movant. *See, e.g., In re Best Buy Co., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011).

Even where the statutory criteria are facially met, the Panel retains broad discretion to deny transfer, and has consistently emphasized that centralization "should be the last solution after considered review of all other options[.]" *Id.*; *see also In re Eli Lilly & Co. (Cephalexin*

*Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978). In exercising that discretion, the Panel weighs a range of practical considerations, including the number of actions and districts involved, the degree of genuine factual (as opposed to merely legal) overlap, the risk of inconsistent pretrial rulings, the extent to which discovery would in fact be duplicative, the relative procedural posture of the actions, and—critically—whether less drastic alternatives such as informal coordination among the transferor courts, voluntary cooperation among counsel, or the use of Federal Rule of Civil Procedure 42(a) consolidation within a single district would adequately address any efficiency concerns. Where the movant fails to carry its burden on any of these points—particularly by demonstrating that informal coordination is unworkable—the Panel routinely denies centralization, recognizing that § 1407 transfer is an extraordinary measure that imposes real costs on the parties, the transferor courts, and the federal system as a whole.

**B.        The Related Actions Should Not be Consolidated and Transferred**

Here, though the cases involve one or more common questions of fact, the five Related Actions are pending before only three judges in three judicial districts, so centralization is not warranted for the convenience of the parties and witnesses or to further the just and efficient conduct of the litigation. In *In re Huel, Inc., Heavy Metal Prods. Liab. Litig.* the Panel denied a motion for centralization, where there were only "[six] actions pending in four districts…" No. MDL 3177, 2026 WL 914656, at *1 (J.P.M.L. Apr. 2, 2026) (footnote omitted). The *In re Huel* Panel found that "the parties' overlapping allegations may raise some common factual questions," but it was "unconvinced that centralization is warranted for so few actions." *Id.* "Because of consolidation that has occurred among cases pending in the Eastern District of New York, this litigation is spread among only four judges in four districts." *Id.*

- 9 -

011292-11/3601314 V1

The turnout gear litigation before this Panel is even less suitable for consolidation because it is spread among only three judges in three districts. The Movant lists five Related Cases, but two of the Minnesota cases it cites were filed just before this Motion in April 2026 and immediately assigned to Judge Bryan, who is presiding over the third action in that District. Moreover, those two cases required no judicial attention. As this Panel has explained, "Where related actions have not 'required significant judicial attention,' we have found that 'centralization may in fact thwart the orderly resolution' of the cases." *In re Gateway Video Game Addiction Prods. Liab. Litig.*, 812 F. Supp. 3d 1350, 1352 (J.P.M.L. 2025).

Moreover, litigants must pursue other options to obviate the need for an MDL. The Panel in *In re Huel* stated that in addition to the possibility of transfer under 28 U.S.C. § 1404, alternatives to MDL transfer "include (1) making depositions applicable in each action, (2) stipulating that discovery relevant to more than one action may be used in all those actions, and (3) seeking orders from the relevant courts directing the parties to coordinate their pretrial efforts." 2026 WL 914656, at *1 (citation omitted). The Panel concluded that "[w]e are not convinced that these and other alternatives to centralization will be ineffectual." *Id.*

Similarly here, the Movant has not provided any evidence or argument that it has pursued any informal coordination. The Movant filed its Complaint on April 22, 2026. The Movant has not identified any attempts it has made during the six weeks that its cases have been pending to pursue options to avoid an MDL. The JPML has consistently denied centralization motions absent proof of such efforts. For example, in *In re Eligo Energy Litig.*, 812 F. Supp. 3d 1353, 1354 (J.P.M.L. 2025), the Panel stated that a defendant's "argument that informal coordination will not suffice

- 10 -

011292-11/3601314 V1

here is not well taken. As we routinely state, centralization under Section 1407 should be the last solution after considered review of all other options." (cleaned up).[16]

## C.    If the Actions are Consolidated, They Should be Transferred to the District of Montana

If the Panel concludes that some form of centralization is warranted, the selection of an appropriate transferee district and judge is committed to the Panel's broad discretion and is guided by the same overarching statutory aim of serving the convenience of the parties and witnesses and promoting the just and efficient conduct of the litigation. *See* 28 U.S.C. § 1407(a). In identifying the most suitable forum, the Panel customarily weighs a number of factors including: the district in which the greatest number of constituent actions are pending; the district where the most procedurally advanced action is already pending; the relative caseloads and existing MDL dockets of the candidate courts; the demonstrated experience of the proposed transferee judge in managing complex multidistrict, class action; and the availability of a judge with the time, resources, and willingness to shoulder the substantial demands of an MDL assignment. *See, e.g., In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012); *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351–52 (J.P.M.L. 2012). No

---

[16] *See also In re Axon Enter., Inc., Body-Worn Camera & Digital Evidence Mgmt. Sys. Antitrust Litig.*, 776 F. Supp. 3d 1344, 1345 (J.P.M.L. 2025) ("Among [other] options are voluntary cooperation and coordination among the parties and the involved courts to avoid duplicative discovery or inconsistent pretrial rulings. Our review of the record indicates that the parties have not yet seriously pursued informal coordination, which provides a practicable alternative to formal centralization under Section 1407."); *In re Avocado Oil Mktg. & Sales Pracs. Litig.*, 766 F. Supp. 3d 1333, 1335 (J.P.M.L. 2025) ("Despite the Panel's repeated admonition that centralization should be the 'last solution after considered review of all other options,' movants here have made no effort to discuss the feasibility of informal coordination or other alternatives to centralization.") (quoting *In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012); *In re TrueCar, Inc., S'holder Derivative Litig.*, 412 F. Supp. 3d 1353, 1354 (J.P.M.L. 2019) ("Given the limited number of parties, counsel, and courts, informal cooperation should be sufficient to avoid duplicative pretrial activity (*e.g.*, filing notices of depositions in all actions, and agreeing that discovery obtained in one action will be usable in all actions).").

- 11 -

single factor is dispositive; rather, the Panel balances these considerations in light of the particular contours of the litigation, with the touchstone always being which forum will most effectively advance Section 1407(a)'s twin objectives—serving the convenience of the parties and witnesses, and promoting the just and efficient conduct of the litigation.

> **1.    Sixteen of the twenty plaintiffs in the Related Actions have brought their claims in the District of Montana, favoring centralization in that court.**

Eighty percent of the plaintiffs in the Related Actions (16 out of 20) brought their claims in Montana, which strongly favors selection of the District of Montana as the transferee court. In an effort to overcome this significant obstacle, the Movant incorrectly contends that Minnesota is preferable to Montana because it is "home to three of the five pending Related Actions."[17] Any suggestion that the number of similar pending actions in a district, rather than the number of similarly-situated litigants and claims should dictate a determination of the appropriate transferee court in an MDL, is baseless. A policy that elevates the primacy of the volume of separate cases over the number of plaintiffs represented and claims asserted would encourage inefficient pleading, and would discourage voluntary consolidation. As Judge Morris recognized in his May 28, 2026 Order on Motion for Interim Class Counsel Appointment, appointment of interim class counsel was warranted in the Montana case, even without input from the plaintiffs in the California or Minnesota cases, because of the "procedural, and scale-based differences between the Montana case and the other cases." ECF No. 301 at 10. By Movant's logic, Montana would be named the transferee venue if the Montana Plaintiffs had filed sixteen separate complaints rather than consolidating their efforts in a single pleading. Such reasoning should be rejected.

---

[17] Memorandum of Law in Support of Plaintiff City of Rochester's Motion for Centralization and Transfer of Related Actions to the District Of Minnesota for Consolidated or Coordinated Pretrial Proceedings ("Movant Br."), MDL 3191, ECF No. 1-1, at 5 (footnote omitted).

### 2.    The Montana Action is the first-filed action among the Related Actions and the most advanced.

The cases should be coordinated in Montana because the Montana Action is the first-filed of the Related Cases and the most advanced. Judge Morris recently denied the defendants' motion to stay briefing on motions to dismiss in the Montana Action until the Panel rules on this matter.[18] As Judge Morris stated, "All parties must agree that this action has moved beyond its infancy as it was filed over one year ago and has gone through numerous filings, motions, hearings, and judicial resources."[19] As Judge Morris further explained, "Judicial inefficiencies may be minimized by productive activity at this point in the proceedings. This fact remains particularly true considering that this Court remains the Court with the most experience in these particular actions as it currently has the longest pending related action."[20] For these reasons, the District of Montana should be designated the transferee court. *See In re CCell Closed Cannabis Oil Vaporization Sys. & Components Prods. Litig.*, 808 F. Supp. 3d 1410, 1411 (J.P.M.L. 2025) ("We find that the Northern District of California is the most appropriate transferee district for this litigation, where the first filed and most advanced actions are pending before Judge Vince Chhabria.").

The Movant appears to contend that the Related Cases should be consolidated in Minnesota because the "first amended complaint was filed by the City of Peabody on February 10, 2026, followed by two amended complaints by the City and County of Butte-Silver Bow on March 13, 2026, and May 5, 2026." Movant Br. at 5 n.3. The filing of an amended complaint by the City of Peabody before the amended complaints were filed in the Montana Action does not mean that its case is further developed. On November 6, 2025, after the defendants in *City of Peabody* filed

---

[18] *See* Order On Motion For Stay, Case No. CV-25-36-BU-BMM, ECF No. 296.

[19] *Id*. at 7.

[20] *Id*. at 8.

- 13 -

motions to dismiss the complaint, the parties stipulated to the filing of an Amended Corrected Complaint. *See* Case No. 25-cv-02083 (D. Minn.), ECF No. 140. On November 21, 2025, the *City of Peabody* Court approved the stipulation and cancelled a hearing on the pending motions to dismiss the Plaintiffs' Corrected Complaint. *Id*., ECF No. 145.

This means that the Court in the Minnesota actions has not ruled on *any* motion to dismiss. In contrast, as explained above, Judge Morris in the Montana Action has issued a detailed, 50-page opinion adjudicating the defendants' motions to dismiss the Complaint and, as explained in detail above, has made numerous other substantive rulings concerning multiple motions to transfer and to stay, among others. While defendants will no doubt include new arguments when they file their Motions to Dismiss the Second Amended Complaint on June 11, 2026, to address the new state law claims, the Montana Court's rulings on the first motions to dismiss will not be subject to re-adjudication. Moreover, the amended complaint in the *City of Peabody* action removed several defendants and did not add any plaintiffs. In contrast, the two amended complaints in the Montana Action have added fifteen additional Plaintiffs from eleven States in addition to the original plaintiff from Montana.

3.   **The District of Montana has the necessary capacity and resources, and it is preferable as the transferee court.**

The District of Montana has the capacity and ability to oversee this litigation. Eight MDL cases are pending in Minnesota.[21] In Montana, there is only one.[22] The District of Montana had 689 pending cases as of December 31, 2025 overseen by three Article III judges (*i.e.,* fewer than 230 cases per Article III judge).[23] The District of Minnesota had 11,337 as of that time, overseen

---

[21] *See* https://www.mnd.uscourts.gov/mdl-cases (last visited June 2, 2026).

[22] *See* https://www.mtd.uscourts.gov/mdl-cases (last visited June 2, 2026). The sole case is *In re Snowflake, Inc., Data Security Breach Litig.*, MDL No. 3126 (D. Mont.).

[23] https://www.mtd.uscourts.gov/district-montana-profile (last visited June 2, 2026).

- 14 -

by seven Article III judges (effectively more than 1,600 cases per Article III judge).[24] Moreover, the District of Minnesota has seen a 10.5% increase in its caseload between 2024 and 2025.[25]

The Movant argues that the Related Cases should be heard in the District of Minnesota because Judge Bryan is not presiding over an MDL, while Judge Morris is presiding over the *Snowflake* MDL. But the Panel frequently appoints judges to two MDL actions at the same time. For example, two judges in the District of Minnesota currently preside over two MDLs. Judge John Tunheim of the District of Minnesota is presiding over two MDL cases: (1) *In re Pork Antitrust Litigation*, MDL No. 02998; and (2) *In re Fluoroquinolone Prods. Liab. Litig.*, MDL No. 2642.[26] Similarly, Judge Jerry W. Blackwell of the District of Minnesota is currently presiding over two MDL cases: (1) *In re Granulated Sugar Antitrust Litig.*, MDL No. 3110; and (2) *In re Air Crash at Toronto Pearson International Airport on February 17, 2025*, MDL No. 3155.[27] Further still, Judge Morris's efficient management of the *Snowflake* MDL is strong evidence that the Related Cases should be consolidated in his Court.

**4.    The purported convenience of Minnesota does not favor the District of Minnesota as the transferee court.**

The Movant argues that the District of Minnesota should be the transferee Court because Minnesota is "a convenient location for all parties and counsel." Movant Br. at 5. But this Panel has explained that "[c]entralization under Section 1407 is for pretrial proceedings only, and there

---

[24] https://www.mnd.uscourts.gov/judges (last visited June 2, 2026).

[25] *See* https://www.uscourts.gov/data-news/data-tables/2025/12/31/statistical-tables-federal-judiciary/c ("Table C, U.S. District Courts—Civil Cases Commenced, Terminated, and Pending During the 12-Month Periods Ending December 31, 2024 and 2025") (last visited June 2, 2026).

[26] *See* https://www.mnd.uscourts.gov/mdl-cases (last visited June 2, 2026). Judge Tunheim was also assigned another MDL in 2022. *See In re Direct Purchaser Plaintiff Beef Antitrust Litig.*, 609 F. Supp. 3d 1412 (J.P.M.L. 2022).

[27] *See* https://www.mnd.uscourts.gov/mdl-cases (last visited June 2. 2026).

011292-11/3601314 V1

usually is no need for parties or witnesses to travel to the transferee court for depositions or court hearings." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. MDL 2873, 2021 WL 755083, at *2 (J.P.M.L. Feb. 4, 2021). Based on this standard, the Panel rejected the plaintiffs' insistence that "transfer will cause them inconvenience and prejudice, as many of the firefighter plaintiffs are retired and elderly, and many, if not most, of plaintiffs' witnesses are located in California and Missouri." *Id.* And "transfer of an action is appropriate if it furthers the expeditious resolution of the litigation taken as a whole, even if some parties to the action might experience inconvenience or delay." *Id.* Under those standards, the District of Montana should be named the transferee court.

Moreover, counsel for the plaintiff in the lead Minnesota case has already demonstrated that these matters can be conveniently heard in Montana. On May 1, 2026, counsel for the plaintiff in *City of Peabody* wrote an email to counsel for the Montana Plaintiffs, stating: "Now that other cases have been filed in Fire Suits (and MDL papers are coming), I wanted to see if you want to revisit the leadership issues. I am confident I can get the Minnesota and California cases to agree to refile in Montana if we have a leadership issue along the Fire Trucks line. Three colead (you, Connecticut and my firm) and your local as liaison. Plus a small psc as needed."[28] Counsel for the Montana Plaintiffs did not agree, but this email demonstrates that the District of Montana is well-suited as the transferee court.

5. **The location of Defendant 3M in Minnesota does not favor transfer to the District of Minnesota.**

The Movant erroneously argues the Related Cases should be coordinated in Minnesota because Defendant 3M is "alleged to have long known about, and conducted studies on, the

---

[28] *See* Exhibit A to this Response.

011292-11/3601314 V1

dangers of PFAS… . It is therefore exceedingly likely that many witnesses and evidence are located in Minnesota." Movant Br. at 6. But those documents are decades old and readily available to any litigant or court. As the Office of the Attorney General for the State of Minnesota explains, in "December 2010, the State of Minnesota filed a lawsuit against 3M Company seeking payment for natural resource damages caused by 3M's disposal of perfluorochemicals, or PFCs, in the East Metropolitan Area of the Twin Cities in Minnesota."[29] A settlement agreement "required 3M Company to pay $850 million to the State of Minnesota in the form of a restricted grant, which will be administered and implemented by MPCA and DNR."[30]

The Minnesota lawsuit "lasted over seven years and involved the production of 27 million pages of documents, about 200 witness depositions, testimony of world-renowned expert scientists, and over 1,500 court filings."[31] Minnesota's Attorney General has made available online hundreds of exhibits from the lawsuit.[32] These exhibits reveal that 3M's internal studies from the 1950s and 1970s already demonstrated PFAS toxicity in lab animals and showed a complete resistance to biodegradation.

Because of the ready availability of those documents, there is no reason for the Related Actions to be consolidated in the District of Minnesota. The Movant does not identify a single relevant document that is located in Minnesota and has not yet been produced in other PFAS cases.

---

[29] *See* https://www.ag.state.mn.us/Office/Cases/3M/ (last visited June 2, 2026).

[30] *Id.*

[31] *See* Testimony of Lori Swanson, Former Minnesota Attorney General, Before the Committee on Oversight and Reform, Subcommittee on Environment, United States House of Representatives (Sept. 10, 2019), at 1, https://docs.house.gov/meetings/GO/GO28/20190910/109902/HHRG-116-GO28-Wstate-SwansonL-20190910.pdf (last visited June 2, 2026).

[32] *See* https://www.ag.state.mn.us/Office/Cases/3M/StatesExhibits.asp (last visited June 2, 2026)

- 17 -

011292-11/3601314 V1

Key witnesses have already testified about those documents, and the Movant provides no basis to believe that any relevant witness currently resides in Minnesota.

The only case cited by the Movant for consolidation in Minnesota is inapposite. In *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 148 F. Supp. 3d 1383 (J.P.M.L. 2015), the plaintiffs in numerous actions claimed that a medical device was defective. The only two defendants were "headquartered in Minnesota," so that "many witnesses and relevant documents are likely to be found there." *Id*. at 1386. Here, in contrast, Defendants' documents are scattered across the country. And unlike the 3M PFAS documents, the 3M documents in the *Bair Hugger* case had not been disclosed decades before the litigation began.

## IV. CONCLUSION

The Motion should be denied. There are only five cases pending before only three judges in three judicial districts. The Movant has failed to take any informal steps to coordinate those actions, despite the Panel's repeated admonition that centralization should be the last solution after considered review of all other options. If, however, the Panel grants the motion for coordination, the transferee court should be the District of Montana, in which Judge Morris has efficiently presided over the first-filed and most advanced of the Related Cases, which includes sixteen of the twenty named plaintiffs (80%) among all five actions.

DATED: June 3, 2026

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*
Steve W. Berman
Craig R. Spiegel
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
craig@hbsslaw.com

- 18 -

John Heenan
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Telephone: (406) 839-9091
Facsimile:  (406) 839-9092
john@lawmontana.com

Michael A. Bliven
BLIVEN LAW FIRM
704 South Main Street
Kalispell, MT 59901
Telephone: (406) 625-0100
mike@blivenlawfirm.com

Ian W. Sloss
Jennifer Sclar
Kate Sayed
Samantha Blend
SILVER GOLUB & TEITELL LLP
One Landmark Square, 15th Floor
Stamford, CT 06901
Telephone: (203) 325-4491
isloss@sgtlaw.com
jsclar@sgtlaw.com
ksayed@sgtlaw.com

Kyle J. McGee
Viola Vetter
Suzanne Sangree
Kyle Landis Marinello
GRANT & EISENHOFER P.A.
123 S Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7000
kmcgee@gelaw.com
vvetter@gelaw.com
ssangree@gelaw.com
kmarinello@gelaw.com

*Attorneys for Plaintiffs City and County of Butte-Silver Bow, Montana, City of Santa Monica, California; City of Stamford, Connecticut; Old Mystic Fire District, Connecticut; Mayor and City Council of Baltimore, Maryland; Charles County, Maryland; City of St. Louis, Missouri; Kansas City, Missouri; Anniston, Alabama; Little Rock, Arkansas; Pine Bluff, Arkansas; Worcester, Massachusetts; Markham, Illinois; Gary, Indiana; Borough of Emmaus, Pennsylvania; and City of Oak Creek, Wisconsin*, Case No. 2:25-cv-00036-BMM (D. Mont.)

- 19 -

011292-11/3601314 V1