**BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: FIREFIGHTER TURNOUT GEAR MARKETING, SALES PRACTICES, AND PRODUCT LIABILITY LITIGATION | MDL No. 3191 |

**RESPONSE OF W. L. GORE & ASSOCIATES, INC., EIDP, INC., DUPONT DE
NEMOURS, INC., THE CHEMOURS COMPANY, THE CHEMOURS COMPANY FC,
LLC, CORTEVA, INC., AND STEDFAST USA, INC. IN OPPOSITION
TO CITY OF ROCHESTER'S MOTION FOR CENTRALIZATION AND
TRANSFER OF RELATED ACTIONS FOR CONSOLIDATED
OR COORDINATED PRETRIAL PROCEEDINGS**

**TABLE OF CONTENTS**

                                                                                          **Page**

PRELIMINARY STATEMENT.................................................................................... 1

BACKGROUND ..................................................................................................... 3

    I.       THE FIRST-FILED CASE IS IN THE DISTRICT OF CONNECTICUT............. 3

    II.      ONLY FIVE SIMILAR ACTIONS HAVE FOLLOWED ..................................... 4

    III.   THESE CASES ARE PROGRESSING WITH INFORMAL
          COORDINATION .................................................................................................. 4

LEGAL STANDARD ............................................................................................... 5

ARGUMENT ........................................................................................................ 6

    I.       ROCHESTER IDENTIFIES FEW ACTIONS WITH NO EXPECTATION
          OF SUBSTANTIAL OTHERS TO FOLLOW ......................................................... 6

    II.      INFORMAL COORDINATION IS CURRENTLY FUNCTIONING ................... 7

    III.   IF CASES ARE CENTRALIZED, THEN THE DISTRICT OF
          MINNESOTA IS APT.......................................................................................... 9

CONCLUSION...........................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aqueous Film-Forming Foams (AFFF) Prods. Liab. Litig.*,
    MDL No. 2873 (D.S.C.) ........................................................................................1, 10

*In re AT&T Inc. Cellular Customer Data Sec. Breach Litig.*,
    753 F. Supp. 3d 1368 (J.P.M.L. 2024).............................................................10

*In re Atrium Med. Corp. ProLite & ProLoop Hernia Mesh Prods. Liab. Litig.*,
    600 F. Supp. 3d 1340 (J.P.M.L. 2022)............................................................7–9

*In re Baby Food Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    544 F. Supp. 3d 1375 (J.P.M.L. 2021)................................................................8

*In re Best Buy Co., Inc. Cal. Song-Beverly Credit Card Act Litig.*,
    804 F. Supp. 2d 1376 (J.P.M.L. 2011)............................................................2, 6

*In re Cable Tie Patent Litig.*,
    487 F. Supp. 1351 (J.P.M.L. 1980)......................................................................6

*City and Cnty. of Butte-Silver Bow v. 3M Co.*,
    No. 2:25-cv-00036 (D. Mont.)........................................................4–5, 7, 11

*City of Rochester v. 3M Co.*,
    No. 26-cv-2329 (D. Minn.)...............................................................................4–5

*In re Covidien Hernia Mesh Prods. Liab. Litig.*,
    481 F. Supp. 3d 1348 (J.P.M.L. 2020).................................................................7

*In re Dickey's Barbecue Rests., Inc., Customer Data Sec. Breach Litig.*,
    521 F. Supp. 3d 1355 (J.P.M.L. 2021).................................................................6

*In re Domestic Airline Travel Antitrust Litig.*,
    140 F. Supp. 3d 1344 (J.P.M.L. 2015).................................................................9

*Earlville Cmty. Fire Prot. Dist. v. 3M Co.*,
    No. 26-cv-2388 (D. Minn.)...............................................................................4–5

*In re GEICO Customer Data Sec. Breach Litig.*,
    568 F. Supp. 3d 1406 (J.P.M.L. 2021).................................................................6

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
    398 F. Supp. 2d 1371 (J.P.M.L. 2005)...........................................................9–10

ii

*In re Hyundai & Kia GDI Engine Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    412 F. Supp. 3d 1341 (J.P.M.L. 2019)......................................................................6

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*,
    997 F. Supp. 2d 1354 (J.P.M.L. 2014).....................................................................9

*In re Maybelline New York & L'Oréal Paris Cosmetic Prods. Mktg. & Sales
    Pracs. Litig.*,
    949 F. Supp. 2d 1367 (J.P.M.L. 2013).....................................................................8

*In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*,
    249 F. Supp. 3d 1357 (J.P.M.L. 2017).....................................................................9

*In re Nat'l Prescription Opiate Litig.*,
    290 F. Supp. 3d 1375 (J.P.M.L. 2017)....................................................................11

*In re Nat'l Rifle Ass'n Bus. Expenditures Litig.*,
    521 F. Supp. 3d 1353 (J.P.M.L. 2021).....................................................................8

*City of Peabody v. 3M Co.*,
    No. 25-cv-2083 (D. Minn.) ..............................................................................4–5, 9

*Peterson v. 3M Co.*,
    No. 24-cv-03497 (D. Minn.) .....................................................................................9

*Cnty. of San Mateo v. EIDP, Inc.*,
    No. 26-cv-02380 (N.D. Cal.) .................................................................................4–5

*In re Sorin 3T Heater-Cooler Sys. Prod. Liab. Litig.*,
    273 F. Supp. 3d 1357 (J.P.M.L. 2017).....................................................................7

*Uniformed Prof'l Fire Fighters Ass'n of Conn. v. 3M Co.*,
    No. 24-cv-1101 (D. Conn.) ....................................................................................3–4

*In re Varsity Spirit Athlete Abuse Litig.*,
    677 F. Supp. 3d 1376 (J.P.M.L. 2023).....................................................................7

**Statutes**

28 U.S.C. § 1407...........................................................................................................2, 5–6

iii

## PRELIMINARY STATEMENT

The City of Rochester's ("Rochester") case and the few others it identified are not ripe for centralization in a new MDL for many reasons. Rochester seeks centralization of five cases after a period of nearly two years of litigation. And the record shows that informal coordination is working and more efficient at this stage than creating a new MDL. This Panel has declined centralization in situations more sprawling than this one, and this Panel should likewise decline Rochester's motion here.

Unlike most other MDL contexts, the general subject matter of firefighter PFAS litigation is already dominated by an ongoing MDL proceeding: *In re Aqueous Film-Forming Foams (AFFF) Prods. Liab. Litig.*, MDL No. 2873 (D.S.C.) ("*AFFF MDL*"). Thousands of cases in the AFFF MDL already involve claims regarding the same subject matter that Rochester raises here: claims involving PFAS exposure from using firefighter turnout gear. Since a firefighter's use of turnout gear typically overlaps with the use of firefighting foam, the *AFFF MDL* has long been the parties' forum for litigating those cases. Rochester does not seek to disrupt that status quo.

The Panel has diligently monitored the boundaries of the *AFFF MDL*, and that proceeding has drawn the overwhelming majority of PFAS-related litigation nationwide involving turnout gear. Rochester's petition points to only a handful of cases that have not fit the Panel's parameters for the *AFFF MDL*. The few cases of this type have been proceeding and progressing on their own: advancing through motion practice on the pleadings and drawing substantive rulings by district judges, developing and deploying coordinated discovery pretrial orders, serving and responding to discovery requests, and producing discovery. Three of the cases are before the same judge in the District of Minnesota. And two other cases are represented by overlapping counsel who are coordinating informally.

1

The Panel instructs that "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Best Buy Co., Inc. Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). Rochester has not met that standard here.

If, however, the Panel concludes that centralization is warranted—and Respondents respectfully submit that centralization is premature—Respondents agree with Rochester that the proper venue is the District of Minnesota. Three of the cases are already before Judge Bryan, he brings recent PFAS judicial experience from another multi-defendant litigation in his own district, and the District of Minnesota offers a geographically accessible forum in proximity to a defendant, 3M Co., who is named in every case. Second to the District of Minnesota, the District of South Carolina presents a compelling alternative. There, Judge Gergel has presided over and well managed the *AFFF MDL* since its inception, acquiring expertise in PFAS toxicology and complex PFAS litigation that may well exceed any other jurist, and that knowledge would translate directly to the common questions Rochester identifies here.

While the District of Montana is also a competent court and able to manage complex matters, Respondents respectfully submit that the Panel should not send these cases there, if it centralizes at all. Unlike here, the MDL recently assigned there (and still pending) had a direct connection to the forum: it arose from a hub-and-spoke data breach in which the hub was a Montana company, and many plaintiffs and the central defendant identified Montana as their preferred venue. This litigation has no such anchor. Not a single defendant is headquartered or based in Montana, and of the twenty named plaintiffs across the five actions identified by Rochester, only one is located there. Unlike the data breach MDL with a focal point in Bozeman, this is a geographically dispersed products liability litigation.

2

Respondents respectfully ask the Panel to deny Rochester's motion. If the Panel disagrees, then it should transfer these actions to the District of Minnesota.

## **BACKGROUND**

### I.      THE FIRST-FILED CASE IS IN THE DISTRICT OF CONNECTICUT

The first-filed action of the kind identified in the petition was filed nearly two years ago, on June 25, 2024, in the District of Connecticut. *Uniformed Prof'l Fire Fighters Ass'n of Conn. v. 3M Co.*, No. 24-cv-1101 (D. Conn.) ("*UPFFA*"). *UPFFA* plaintiffs brought product liability claims involving PFAS and turnout gear and sought to represent a class of Connecticut firefighters for claims stemming from the use of PFAS in their turnout gear. *Id.*, ECF No. 1 at 47. Within weeks of filing, they added product liability claims for a putative nationwide class of turnout gear purchasers related to PFAS as well as Connecticut-specific subclasses. *Id.*, ECF No. 9, at 50–51.

Since 2024, the parties engaged in extensive motion practice on the pleadings and amendments to the complaint. *See, e.g.*, *id.*, ECF No. 110. The Connecticut district court ordered that discovery should start, beginning with jurisdictional discovery, and entered a discovery schedule. *Id.*, ECF Nos. 343, 385. After more than a year and a half of litigation, certain *UPFFA* plaintiffs dismissed some claims, refiled them in the District of Montana, and joined with Montana counsel there to coordinate their claims. *Id.*, ECF Nos. 360, 375; *see infra* Argument Section II.

The remaining *UPFFA* plaintiffs continue to pursue product liability claims for a putative firefighter class, advancing claims for strict liability design defect, negligence, failure to warn, negligent design and manufacture, and medical monitoring. *UPFFA*, ECF No. 206 at 94–111. Discovery has begun, including judicial conferences and discovery motion practice.

## II.    ONLY FIVE SIMILAR ACTIONS HAVE FOLLOWED

For nearly a year after *UPFFA*, plaintiffs did not file any similar class actions. Plaintiffs have since filed five additional cases, each purporting to represent a nationwide class of turnout gear purchasers:

| Court | Cases Pending |
|---|---|
| District of Minnesota | *Peabody v. 3M Co.* (25-2083) <br> *Rochester v. 3M Co.* (26-2329) <br> *Earlville v. 3M Co.* (26-2388) |
| District of Montana | *Butte-Silver Bow v. 3M Co.* (25-00036) |
| Northern District of California | *San Mateo v. EIDP, Inc.* (26-02380) |

That is the whole of it over two years: six cases in four districts. Three are before the same judge in the District of Minnesota. And across all six, Defendants have common counsel, and some plaintiffs' counsel are already coordinating their efforts.

## III.    THESE CASES ARE PROGRESSING WITH INFORMAL COORDINATION

These cases have thus far been moving forward in parallel across their respective districts without any of the coordination difficulties that might warrant centralization. Each docket has reached a comparable procedural posture, and each court is actively managing its case.

Connecticut is the furthest along. *UPFFA* has undergone multiple rounds of motion-to-dismiss briefing, rulings, and judicial conferences; jurisdictional discovery is also underway. *UPFFA*, ECF No. 345. Pretrial orders regarding discovery were entered after extensive negotiation between the parties and judicial supervision. *Id.*, ECF Nos. 386, 392. Some parties are briefing a discovery dispute, and the court held a hearing on it. Other briefing and activity is also underway.

In Montana, the plaintiffs in *Butte* have repeatedly amended the complaint to change their claims and parties. The court there ruled on one set of motions to dismiss, after which the plaintiffs made more amendments to add parties and claims. *City and Cnty. of Butte-Silver Bow v. 3M Co.*, No. 2:25-cv-00036 (D. Mont.) ("*Butte*") at ECF Nos. 159, 190. And just last month, rather than opposing Defendants' motion to dismiss the first amended complaint, Plaintiffs amended yet again—adding still more parties and claims—mooting all pending dispositive motions. *Butte*, ECF No. 234. Defendants' current responsive pleading deadline is June 11, 2026. *Id.*, ECF No. 254. Some discovery requests have been served and addressed.

In California, the parties in *San Mateo* are proceeding on a parallel track. *Cnty. of San Mateo v. EIDP, Inc.*, No. 26-cv-02380 (N.D. Cal.) ("*San Mateo*"). The defendants' responses to the complaint are due June 5, 2026. *San Mateo*, ECF No. 20. The parties have conferred regarding a discovery plan and will soon start discovery pursuant to local practice.

Among the three Minnesota cases, *Peabody* has been the most active. *City of Peabody v. 3M Co.*, No. 25-cv-2083 (D. Minn.) ("*Peabody*"). *Peabody* defendants moved to dismiss in October 2025, *see e.g.*, *Peabody*, ECF No. 102, and the plaintiffs amended the complaint shortly thereafter, dropping some claims and parties and changing the scope of the putative class. *Id.*, ECF No. 156 at 41. The court will hear argument on the motion to dismiss on June 23, 2026. *Id.*, ECF No. 159. The two remaining Minnesota actions, *Rochester* and *Earlville*, were filed recently and are pending before the same judge. *City of Rochester v. 3M Co.*, No. 26-cv-2329 (D. Minn.); *Earlville Cmty. Fire Prot. Dist. v. 3M Co.*, No. 26-cv-2388 (D. Minn.).

## **LEGAL STANDARD**

The Panel may centralize civil cases for pretrial proceedings when: (a) transfer "will promote the just and efficient conduct of such actions," (b) the cases "involv[e] one or more common questions of fact," and (c) transfer will further "the convenience of parties and witnesses."

28 U.S.C. § 1407(a). The party seeking centralization bears the burden of showing Section 1407's requirements have been met. *In re Cable Tie Patent Litig.*, 487 F. Supp. 1351, 1354 (J.P.M.L. 1980). Moreover, "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Best Buy Co., Inc. Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d at 1378.

## ARGUMENT

I.    **ROCHESTER IDENTIFIES FEW ACTIONS WITH NO EXPECTATION OF SUBSTANTIAL OTHERS TO FOLLOW**

Rochester has not met its burden to show that the cases need to be centralized for formal MDL coordination. There are few cases, and Rochester does not allege that more are coming. Several cases are before the same judge, there is overlapping counsel among cases, and informal coordination is working thus far. When those conditions are present, the Panel has consistently declined to centralize.

"Where only a minimal number of actions is involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate." *In re GEICO Customer Data Sec. Breach Litig.*, 568 F. Supp. 3d 1406, 1407 (J.P.M.L. 2021) (denying centralization of five actions, three in the same district); *In re Hyundai & Kia GDI Engine Mktg., Sales Pracs., & Prods. Liab. Litig.*, 412 F. Supp. 3d 1341, 1344 (J.P.M.L. 2019) (denying centralization of ten class actions in four districts). The existence of overlapping putative class actions does not change the calculus. Even where proponents of centralization have urged that "putative class actions share factual questions," the Panel has declined to centralize a small number of actions where informal coordination "appears eminently feasible." *In re Dickey's Barbecue Rests., Inc., Customer Data Sec. Breach Litig.*, 521 F. Supp. 3d 1355, 1356 (J.P.M.L. 2021).

As applied here, formal coordination is not warranted on the present record. This litigation consists of six cases—half of which are assigned to a single judge. Nearly two years have passed since the first complaint was filed, and there have been few more. Rochester does not point to case filings to be made in the future to support their request. Even if it did, however, any such speculation about future filings could not tip the balance, as the Panel is "disinclined to take into account the mere possibility of future filings in [its] centralization calculus." *In re Atrium Med. Corp. ProLite & ProLoop Hernia Mesh Prods. Liab. Litig.*, 600 F. Supp. 3d 1340, 1342 (J.P.M.L. 2022) (declining to centralize where eleven actions were filed over five years) (internal citations omitted); *In re Covidien Hernia Mesh Prods. Liab. Litig.*, 481 F. Supp. 3d 1348, 1349 (J.P.M.L. 2020) (declining to centralize where twelve cases were filed over three years).

## II.    INFORMAL COORDINATION IS CURRENTLY FUNCTIONING

Centralization is unnecessary when "[t]he parties and the involved courts already have demonstrated they are willing to informally coordinate," *In re Varsity Spirit Athlete Abuse Litig.*, 677 F. Supp. 3d 1376, 1378 (J.P.M.L. 2023), particularly where "any overlapping pretrial proceedings have been and can continue to be handled through informal coordination," *In re Sorin 3T Heater-Cooler Sys. Prod. Liab. Litig.*, 273 F. Supp. 3d 1357, 1358 (J.P.M.L. 2017).  Functioning informal coordination "weigh[s] heavily against centralization." *In re Varsity Spirit Athlete Abuse Litig.*, 677 F. Supp. 3d at 1378.

Indeed, the plaintiffs' counsel in Connecticut and Montana have acknowledged their "coordination and cooperation" between themselves. *Butte*, ECF No. 221 at 4. They worked together to oppose motions to dismiss and to consolidate certain claims "consistent with the principles of the Manual for Complex Litigation." *Id.*, ECF No. 221 at 4, 11. And they stated that their informal coordination has "contributed to a consolidation that will vastly reduce the cost, procedural complexity, and potential conflicts for all parties." *Id.*, ECF No. 235 at 6.

Defendants have similarly coordinated informally.  For example, in the cases subject to this petition in which they have entered an appearance, 3M, DuPont, Chemours, Corteva, Globe, Gore, and Lion are each represented by the same counsel across multiple cases. This alignment of counsel, combined with the modest number of dockets, will assist with informal coordination without the need for any centralized direction. The Panel has recognized that common counsel of defendants in actions in which they are parties "should facilitate informal coordination of this relatively small number of actions." *In re Nat'l Rifle Ass'n Bus. Expenditures Litig.*, 521 F. Supp. 3d 1353, 1354–55 (J.P.M.L. 2021) (internal quotations omitted).

The parties' coordination extends to pretrial orders. The Connecticut parties negotiated and entered pretrial discovery orders regarding confidentiality and electronic discovery, modeled on similar orders entered in the *AFFF MDL*. Since plaintiffs in Connecticut are coordinated with those in Montana, the informal coordination carried over there, as the Montana parties developed their own versions modeled on those same frameworks. And those frameworks are likely to serve as precedent for analogous pretrial orders in the Minnesota and California actions in the near term.

The Panel has held that "voluntary cooperation and coordination among the parties and the involved courts" can "minimize[]" "the risk of duplicative discovery and inconsistent pretrial rulings." *In re Maybelline New York & L'Oréal Paris Cosmetic Prods. Mktg. & Sales Pracs. Litig.*, 949 F. Supp. 2d 1367, 1367–68 (J.P.M.L. 2013).

The Panel should allow this process to continue: "it is better to allow the parties' attempts to self-organize play out before centralizing any part of this litigation." *In re Baby Food Mktg., Sales Pracs. & Prod. Liab. Litig.*, 544 F. Supp. 3d 1375, 1378 (J.P.M.L. 2021); *In re Atrium Med. Corp. ProLite & ProLoop Hernia Mesh Prods. Liab. Litig.*, 600 F. Supp. 3d at 1342 (J.P.M.L. 2022) (denying centralization of "small number of actions" where "alternatives to centralization

[were] available to minimize any duplication in pretrial proceedings, including informal cooperation and coordination"). Based on the current record, it would be unnecessary and premature to form an MDL, and Rochester does not meet its burden to show otherwise.[1]

## III.    IF CASES ARE CENTRALIZED, THEN THE DISTRICT OF MINNESOTA IS APT

If the Panel concludes that centralization is warranted, over the within objections, then Respondents agree with Rochester that the District of Minnesota is an appropriate forum. Half of the pending cases are before Judge Bryan, and a hearing on motions to dismiss in one of them—*Peabody*—is weeks away. Judge Bryan brings experience managing complex, multi-defendant matters. This experience includes PFAS litigation, *Peterson v. 3M Co.*, No. 24-cv-03497 (D. Minn.), which involved multiple defendants and advanced many of the same types of claims—including product liability and consumer protection, among others—arising from PFAS in carpets. Assigning this MDL to Judge Bryan would also "provide [the Panel] the opportunity to assign the litigation to . . . an able and experienced jurist who has not yet had the opportunity to preside over a multidistrict litigation." *In re Domestic Airline Travel Antitrust Litig.*, 140 F. Supp. 3d 1344, 1346 (J.P.M.L. 2015).

The District of Minnesota is also geographically well suited. It is home to 3M Company's headquarters, a defendant that is named in each case at issue. The Minneapolis courthouse is proximate to a major airport and other facilities for all counsel of various geographies. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 398 F. Supp. 2d 1371, 1372 (J.P.M.L.

---

[1] Respondents do not suggest that centralization could never be appropriate should circumstances materially change—only that it is not warranted presently. *See In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 249 F. Supp. 3d 1357, 1359 (J.P.M.L. 2017) (granting centralization on second motion after more actions filed, noting "earlier denial of centralization does not preclude [the Panel] from reaching a different result" when circumstances change); *see also In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 997 F. Supp. 2d 1354, 1356 (J.P.M.L. 2014) (granting centralization on second motion after "the number of involved actions, districts, and judges ha[d] grown considerably").

2005) (transferring actions to District of Minnesota "[g]iven the varied locations of parties and witnesses" and because it "is a geographically central, metropolitan district").

If the Panel decides to centralize the cases and disagrees with the District of Minnesota, then Respondents would respectfully suggest the District of South Carolina. Judge Gergel's experience managing PFAS litigation is a compelling factor, and the overlap between these cases and the *AFFF MDL* enhances judicial and party efficiencies. No other judge in the country has supervised PFAS litigation at anything approaching this scale or duration. Indeed, Judge Gergel has convened dedicated Science Days to receive expert-mediated education on topics like PFAS toxicology. *See AFFF MDL*, ECF No. 3393 at 15 (describing topics including "the scientific bases for regulatory limits on PFAS" and "whether a testing protocol can determine the potential toxic effects of human exposure"). And this knowledge would translate directly to these cases. That accumulated expertise would allow the judiciary to conserve resources and progress efficiently.

In contrast, if the Panel determines that centralization is warranted notwithstanding Respondents' opposition, the District of Montana should not be the transferee forum. This is not a reflection on Judge Morris, who has already been selected to manage a different MDL that remains ongoing. *In re AT&T Inc. Cellular Customer Data Sec. Breach Litig.*, 753 F. Supp. 3d 1368, 1373 (J.P.M.L. 2024). That assignment, however, made sense because of the litigation's connection to Montana. The MDL centered on a "'hub-and-spoke' data breach" where "[t]he 'hub' at the center" was Snowflake, Inc., a "Bozeman, Montana-based cloud computing software company." *See* MDL No. 3126 (J.P.M.L.), ECF No. 1-1 at 1 (July 29, 2024). The forum also had support on both sides: "Plaintiffs in 21 actions request[ed] the District of Montana" and Snowflake itself identified it as its "preferred venue." *In re AT&T Inc. Cellular Customer Data Sec. Breach Litig.*, 753 F. Supp. 3d at 1370, 1372. This litigation shares none of those characteristics.

10

Nor does Montana offer geographic convenience to compensate. Transferee courts should offer a "geographically central and accessible forum." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017) (transferring to Northern District of Ohio because it "present[ed] a geographically central and accessible forum that [was] relatively close to defendants' various headquarters"). Montana brings neither. Most Defendants have their principal places of business on the East Coast, and neither Montana courthouse where proceedings have been held offers meaningful access from those locations. Specifically, proceedings in the Montana case have been held at two courthouses: one in Helena and one in Butte. *Butte*, ECF Nos. 49, 134, 240. Physical access by direct flight is not available from major east coast locations.[2, 3] In short, Montana is not a "geographically central and accessible forum" for this litigation. *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d at 1379.

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Panel deny Rochester's motion for centralization and transfer. If the Panel decides to centralize the cases, then Respondents request that they be centralized in the District of Minnesota or the District of South Carolina.

Dated: June 3, 2026

Respectfully submitted,

/s/ Mark S. Cheffo
Mark S. Cheffo
**DECHERT LLP**
Three Bryant Park
1095 Avenue of Americas
New York, NY 10019

---

[2] *See* Helena Reg'l Airport, *United Airlines*, https://helenaairport.com/united-airlines/ (last visited June 2, 2026); Helena Reg'l Airport, *Delta Air Lines*, https://helenaairport.com/delta-airlines/ (last visited June 2, 2026); Helena Reg'l Airport, *Alaska Airlines*, https://helenaairport.com/alaska-airlines/ (last visited June 2, 2026).
[3] *See* Bert Mooney Airport, *Airport Information*, https://www.butteairport.com/ (last visited June 2, 2026).

Telephone: (212) 689-3814
Fax: (212) 689-3590
mark.cheffo@dechert.com

*Counsel for W. L. Gore & Associates, Inc.*


/s/ Brent Dwerlkotte
Brent Dwerlkotte
**SHOOK, HARDY & BACON LLP**
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: 816-474-6550
Fax: 8186-421-5547
dbdwerlkotte@shb.com

*Counsel for Defendants EIDP, Inc., DuPont De Nemours, Inc., The Chemours Company, The Chemours Company FC, LLC, and Corteva, Inc.*


/s/ Geoffrey M. Coan
Geoffrey M. Coan, BBO #641998
**HINSHAW & CULBERTSON LLP**
53 State Street, 27th Floor
Boston, MA 02109
Telephone: 617-213-7000
Fax: 617-213-7001
gcoan@hinshawlaw.com

*Counsel for Defendant Stedfast USA, Inc.*

12