**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: FIREFIGHTER TURNOUT GEAR MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No: 3191<br>This Document Relates To:<br><br>*City of Rochester v. 3M Co.*,<br>No. 0:26-cv-2329 (D. Minn.)<br><br>*City of Peabody v. 3M Co.*,<br>No. 0:25-cv-2083 (D. Minn.)<br><br>*Earlville Cmty. Fire Protection Dist. v. 3M Co.*,<br>No. 0:26-cv-2388 (D. Minn.)<br><br>*County of San Mateo v. 3M Co.*,<br>No. 3:26-cv-2380 (N.D. Cal.)<br><br>*City and County of Butte-Silver Bow v. 3M Co.*,<br>No. 2:25-cv-00036 (D. Mont.) |

**JOINT RESPONSE TO MOTION FOR CENTRALIZATION
AND TRANSFER BY DEFENDANTS**

**(1) HONEYWELL SAFETY PRODUCTS USA, INC.,**

**(2) MORNING PRIDE MANUFACTURING, LLC,**

**(3) LION GROUP, INC.,**

**(4) FIRE-DEX, LLP, AND**

**(5) SOUTHERN MILLS, INC.
d/b/a TENCATE PROTECTIVE FABRICS**

**TABLE OF CONTENTS**

Page

TABLE OF CASES AND AUTHORITIES ................................................................. ii

INTRODUCTION .................................................................................................1

RELEVANT BACKGROUND AND HISTORY .........................................................4

    I.    Summary of substantive allegations .......................................................4

    II.    Evolution of the turnout-gear class actions...........................................5

        A.    The first turnout-gear class action was filed in the District of Connecticut. ........................................................................5

        B.    Nearly one year later, TOG purchaser class actions were filed in the Districts of Montana and Minnesota...........................6

        C.    Nearly two years after the first TOG purchaser class action in Connecticut, the party lineups changed. .......................7

        D.    More TOG purchaser class actions are filed in California and Minnesota.................................................................8

        E.    The TOG purchaser cases are immersed in Rule 12 practice. ....................8

ARGUMENT........................................................................................................10

    I.    The TOG purchaser cases involve the same core allegations and legal theories...10

    II.    Consolidation would mitigate the likelihood of extreme inefficiencies. ...............11

    III.    Consolidation is superior to voluntary coordination.............................................13

    IV.    The District of Minnesota is an appropriate forum for consolidation. ..................14

        A.    Minneapolis is convenient. ........................................................14

        B.    The District of Minnesota is well-versed in MDLs. ..................................16

        C.    Judge Bryan is an appropriate fit for the proposed MDL. .........................16

        D.    The District of Minnesota has the most filed turnout-gear purchaser class actions. ...................................................17

        E.    3M is headquartered in the Twin Cities.....................................................17

    V.    The District of South Carolina would also be an appropriate forum for consolidation. ...............................................................................18

    VI.    Neither California nor Montana offers the convenience of Minnesota or South Carolina...........................................................................19

CONCLUSION.....................................................................................................20

## TABLE OF CASES AND AUTHORITIES

**Cases**                                                                     **Page(s)**

*In re Abbott Lab'ys, et al., Preterm Infant Nutrition Prods. Liab. Litig.*,
    600 F. Supp. 3d 1345 (U.S. Jud. Pan. Mult. Lit. 2022) ...........................................13

*In re Acetaminophen - ASD/ADHD Prods. Liab. Litig.*,
    637 F. Supp. 3d 1372 (U.S. Jud. Pan. Mult. Lit. 2022) ...........................................11

*In re Apple Inc. Smartphone Antitrust Litig.*,
    737 F. Supp. 3d 1361 (U.S. Jud. Pan. Mult. Lit. 2024) ...........................................12

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
    765 F. Supp. 3d 1379 (U.S. Jud. Pan. Mult. Lit. 2024) ....................................6, 18

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
    MDL No. 2873, 2021 WL 755083 (U.S. Jud. Pan. Mult. Lit. Feb. 4, 2021)...........................18

*In re ARC Airbag Inflators Prods. Liab. Litig.*,
    648 F. Supp. 3d 1378 (U.S. Jud. Pan. Mult. Lit. 2022) ...........................................11

*In re AT&T Inc. Cellular Customer Data Sec. Breach Litig. &*
    *In re Snowflake, Inc., Data Sec. Breach Litig.*,
    753 F. Supp. 3d 1368 (U.S. Jud. Pan. Mult. Lit. 2024) ...........................................19

*In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*,
    730 F. Supp. 3d 1371 (U.S. Jud. Pan. Mult. Lit. 2024) ...........................................12

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*,
    148 F. Supp. 3d 1383 (U.S. Jud. Pan. Mult. Lit. 2015) ...........................................17

*In re CCell Closed Cannabis Oil Vaporization Sys. & Components Prods. Litig.*,
    808 F. Supp. 3d 1410 (U.S. Jud. Pan. Mult. Lit. 2025) ...........................................14

*In re Deere & Co. Repair Servs. Antitrust Litig.*,
    607 F. Supp. 3d 1350 (U.S. Jud. Pan. Mult. Lit. 2022) ..............................13, 15, 17

*In re Folgers Coffee Mktg. & Sales Pracs. Litig.*,
    532 F. Supp. 3d 1416 (U.S. Jud. Pan. Mult. Lit. 2021) ...........................................12

*In re FTX Cryptocurrency Exch. Collapse Litig.*,
    677 F. Supp. 3d 1379 (U.S. Jud. Pan. Mult. Lit. 2023) ...........................................11

*In re Gardasil Prods. Liab. Litig.*,
    724 F. Supp. 3d 474 (W.D.N.C. 2024) ...............................................................12

*In re Generac Solar Power Sys. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
     677 F. Supp. 3d 1370 (U.S. Jud. Pan. Mult. Lit. 2023) ..........................................................17

*In re Granulated Sugar Antitrust Litig.*,
     737 F. Supp. 3d 1370 (U.S. Jud. Pan. Mult. Lit. 2024) ....................................................13, 17

*In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. &*
     *Prods. Liab. Litig.*,
     568 F. Supp. 3d 1412 (U.S. Jud. Pan. Mult. Lit. 2021) ..........................................................10

*In re Keffer Dev. Servs., LLC, Data Sec. Breach Litig.*,
     796 F. Supp. 3d 1379 (U.S. Jud. Pan. Mult. Lit. 2025) ..........................................................11

*In re OpenAI, Inc., Copyright Infringement Litig.*,
     776 F. Supp. 3d 1352 (U.S. Jud. Pan. Mult. Lit. 2025) ..........................................................17

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
     637 F. Supp. 3d 1377 (U.S. Jud. Pan. Mult. Lit. 2022) ..........................................................12

*In re Toys "R" Us-Delaware, Inc., Fair & Accurate Credit*
     *Transactions Act (FACTA) Litig.*,
     581 F. Supp. 2d 1377 (U.S. Jud. Pan. Mult. Lit. 2008) ..........................................................11

## Other Authorities

*Flights*, Metro. Airports Comm'n, https://www. mspairport.com/flights-and-
     airlines/ flights (June 1, 2026) ................................................................................................15

*Questions for the Record from U.S. Senate Comm. on the Judiciary, Judge Jeffrey*
     *M. Bryan* (Sept. 6, 2023), https://www.judiciary.senate.gov/imo/media/
     doc/09-06-2023_-_qfr_responses_-_bryan.pdf........................................................................17

Manual for Complex Litigation § 20.14 (4th ed. 2025)..........................................................11, 13

**INTRODUCTION**

The instant motion requests consolidation of five overlapping putative class actions brought by municipalities and fire districts that purchased firefighter personal protective equipment, known as turnout gear ("TOG"). In all five cases, the plaintiffs allege that the gear they purchased unreasonably endangers firefighters because the gear is made with per- and polyfluoroalkyl substances ("PFAS"). They claim that they did not know the gear contained PFAS when they bought it and that they sustained economic injuries based on the purchases.

All defendants in these cases agree that, if the cases are consolidated, they should be consolidated either in Minnesota, where three of the five cases are pending and which is a convenient location for the dozens of parties and witnesses, or in South Carolina before the Honorable Richard M. Gergel, who is overseeing the AFFF MDL.

Defendants Honeywell Safety Products USA, Inc., Morning Pride Manufacturing, LLC (together, "Honeywell"), Lion Group, Inc., Fire-Dex LLP, and Southern Mills, Inc. d/b/a TenCate Protective Fabrics (collectively, the "Turnout Gear Assemblers") are leading sellers of turnout gear and turnout gear components.[1] The Turnout Gear Assemblers, like the other defendants, dispute the veracity of the plaintiffs' allegations, the legal soundness of the plaintiffs' claims, and the notion that those claims qualify for class treatment.

On the present motion, however, the Turnout Gear Assemblers agree that transfer of the five overlapping cases to a single district for consolidated proceedings would be convenient for parties and witnesses and promote the just and efficient conduct of the cases.[2] The fact pattern

---

[1]    Although referred to in this brief as a Turnout Gear Assembler, Southern Mills, Inc. d/b/a TenCate Protective Fabrics is a textile manufacturer.

[2]    An additional turnout gear assembler, Globe Manufacturing Company, LLC, filed a

here presents a classic case for consolidation. The five cases seek certification of four identical

nationwide classes and one state-specific class that would be subsumed if a nationwide class

were certified. They raise similar and often identical legal claims and factual narratives, with

many paragraphs of allegations copied and pasted from one complaint to the next. The risk of

inconsistent rulings is substantial. Duplicative discovery is certain. Indeed, the inefficiencies of

duplicative, parallel litigation are already acute.

The location for consolidated proceedings should be a district that, in these

circumstances, offers geographic proximity and convenience for most parties. Both the District

of Minnesota and the District of South Carolina achieve this goal, as shown in the following

map:



The plaintiffs and defendants across the five cases are almost all located in the eastern

_____

separate brief supporting consolidation in the District of South Carolina or the District of
Minnesota.

half of the United States, making both Minnesota and South Carolina logical choices for consolidation, without favoring the convenience of one set of parties over the other.

The District of Minnesota offers a central and accessible location for all parties and their key witnesses. The Minneapolis-St. Paul airport is a Delta hub, with more than nine-hundred flights each day. 3M, a defendant in all five cases, is headquartered in Minnesota. The District of Minnesota is already home to three of the five cases, which are all before the Honorable Jeffrey M. Bryan. Judge Bryan is an experienced jurist, has presided over complex cases (including cases involving PFAS), and is well-equipped to manage his first multidistrict litigation.

Another appropriate forum for consolidated proceedings is the District of South Carolina, where the AFFF MDL is located. Although the TOG purchaser cases do not raise allegations about the effects of firefighting foam, the cases do present significant overlaps with parties and issues being litigated in the AFFF MDL. For example, at least half of the twenty plaintiffs across the TOG purchaser cases also assert claims in the AFFF MDL, and sixteen of those twenty plaintiffs provided TOG to individual personal-injury plaintiffs who have filed cases in the AFFF MDL. The TOG purchaser cases raise similar factual and legal issues as the TOG cases in the AFFF MDL, including issues related to alleged health effects from exposure to PFAS. Thus, whether the Panel creates a new MDL before Judge Gergel or consolidates the TOG purchaser cases into the existing AFFF MDL, efficiencies will be gained and the chance of inconsistent rulings will be reduced.

The locations of the other pending cases—in northern California and Montana—are geographically distant from all but three parties. No defendants are in or near either state. Only two plaintiffs are in California, and only one plaintiff is in Montana.

Again, the Turnout Gear Assemblers vigorously dispute the merits of the plaintiffs'

claims and the proposition that any class—nationwide or not—warrants certification. But the significant inefficiencies of proceeding without consolidation and coordination in a mutually accessible location are already tangible. Now is a proper time to establish an MDL for the TOG purchaser cases in a geographically convenient forum.

## RELEVANT BACKGROUND AND HISTORY

### I.    Summary of substantive allegations

Firefighters wear specialized equipment to protect themselves from the heat, fire, moisture, and chemicals that they encounter on the job. *See, e.g.*, *City of Rochester v. 3M Co.*, No. 26-02329, ECF No. 1, ¶¶ 110-11 (D. Minn. Apr. 22, 2026). This specialized equipment is called turnout gear, or TOG for short. *Id.*

The plaintiffs in the five overlapping cases at issue here are municipalities and fire districts. *See id.*; *City & Cnty. of Butte-Silver Bow v. 3M Co.*, No. 25-cv-00036, ECF No. 234 (D. Mont. May 5, 2026); *City of Peabody v. 3M Co.*, No. 25-cv-2083, ECF No. 156 (D. Minn. Feb. 10, 2026); *County of San Mateo v. EIDP, Inc.*, No. 26-02380, ECF No. 1 (N.D. Cal. Mar. 18, 2026); *Earlville Cmty. Fire Prot. Dist. v. 3M Co.*, No. 26-cv-02388, ECF No. 1 (D. Minn. Apr. 27, 2026). They allege that they have purchased turnout gear for their firefighters that contains unsafe levels of PFAS. *See, e.g.*, *Rochester*, ECF No. 1, ¶ 2. PFAS is a general term encompassing a family of thousands of chemicals. *See, e.g.*, *id.* ¶ 3. The plaintiffs claim that firefighters' exposure to PFAS in turnout gear creates health risks. *See, e.g.*, *id.* ¶ 6.

Based on these allegations, the plaintiffs claim economic injuries. *See, e.g.*, *id.* ¶ 19. They seek primarily to recover the amounts they have paid for their turnout gear and the cost of replacing that gear with gear that does not contain PFAS. *See, e.g.*, *id.*

The plaintiffs allege that the defendants across these cases fall into three groups. The first

encompasses defendants who make PFAS (*e.g.*, 3M). *See, e.g.*, *id.* ¶¶ 22-34. The second includes

defendants who make or made components of turnout gear, such as fabrics or other textiles (*e.g.*,

Elevate Textiles, Southern Mills, and W. L. Gore). *See, e.g.*, *id.* ¶¶ 35-42. The third is composed

of defendants who assemble turnout gear (*e.g.*, Globe, Lion, and Honeywell). *See, e.g.*, *id.*

¶¶ 43-54. Together, these three groups comprise the turnout-gear supply chain.

The plaintiffs' theory is that the defendants, whether individually or as part of an

industry-wide conspiracy, concealed the existence and misrepresented the safety of PFAS in

turnout gear. *See, e.g.*, *id.* ¶ 169. Based on this theory, the plaintiffs bring various claims against

the defendants, including contract claims under the Uniform Commercial Code (such as breach

of the implied warranties of merchantability and fitness for a particular purpose), tort claims

(such as design defect, failure to warn, and fraudulent misrepresentation), state

consumer-protection claims (such as claims under state unfair-trade-practices statutes), and, in

four of the five cases, federal RICO claims. A chart showing the claims asserted in each case is

attached as Exhibit 1.

## II.    Evolution of the turnout-gear class actions

A.    <u>The first turnout-gear class action was filed in the District of Connecticut.</u>

The first putative class action about PFAS in turnout gear was filed in June 2024 in the

District of Connecticut. The plaintiffs were individual Connecticut firefighters and Connecticut

firefighter unions. *Unif. Prof'l Fire Fighters Ass'n of Conn. v. 3M Co.*, No. 3:24-cv-01101, ECF

No. 1 (D. Conn. June 25, 2024).[3] One month later, Connecticut buyers of turnout gear (like the

City of Stamford), joined *UPFFA* as plaintiffs. *Id.*, ECF No. 9. The *UPFFA* defendants included

---

[3]    Because the first name in the case caption is Uniformed Professional Fire Fighters
Association of Connecticut, this response refers to the case as *UPFFA*.

turnout-gear assemblers, component makers, and chemical manufacturers. *Id.*

The *UPFFA* plaintiffs raised claims for breach of warranty, violation of Connecticut's unfair-trade-practices statute, and product liability. *Id.* The amended complaint sought certification of multiple classes, including a nationwide class of turnout-gear buyers. *Id.*

Early in the case, the *UPFFA* plaintiffs successfully resisted a motion to transfer the case to the AFFF MDL. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 765 F. Supp. 3d 1379, 1381 (U.S. Jud. Pan. Mult. Lit. 2024). They also successfully opposed a stay in the *UPFFA* proceedings while this Panel considered the transfer motion. *UPFFA*, ECF Nos. 43, 71, 72. In those oppositions, the *UPFFA* plaintiffs emphasized that they intentionally selected Connecticut as their forum. *See id.*, ECF No. 43; *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873, ECF No. 2872 (U.S. Jud. Pan. Mult. Lit. Sept 9, 2024).

>B.      Nearly one year later, TOG purchaser class actions were filed in the Districts of Montana and Minnesota.

In the spring of 2025, two new plaintiffs filed putative nationwide class actions that parroted the *UPFFA* complaint. One of the new cases was filed by the City and County of Butte-Silver Bow, Montana, in the District of Montana. *Butte*, ECF No. 1 (Apr. 3, 2025). The second new case was filed by the City of Peabody, Massachusetts, in the District of Minnesota. *Peabody*, ECF No. 1 (May 13, 2025).

The complaints in *Butte* and *Peabody* copied verbatim sections of the *UPFFA* complaint. Both asked for certification of multiple classes, including nationwide classes of TOG purchasers.

Notably, Butte-Silver Bow successfully opposed an early motion by the initial, smaller group of defendants (most of whom were located on the East Coast, with a concentration in Delaware and Maryland) to transfer the case to the District of Delaware. *Butte*, ECF Nos. 46, 85. Butte-Silver Bow also opposed a later motion to transfer its case to Connecticut under the

first-to-file rule. *Id.*, ECF No. 130, at 32-35.

      C.      <u>Nearly two years after the first TOG purchaser class action in Connecticut, the party lineups changed.</u>

In early 2026, the three TOG purchaser cases remained in similar procedural postures. Amended complaints had been filed in each case. Rule 12 motions challenging subject-matter jurisdiction, personal jurisdiction, and the plausibility of state-law claims were pending or were soon due to be filed. No comprehensive scheduling order had been entered.

The cases underwent significant change, however, when it comes to party lineup.

First, in February 2026, the purchaser plaintiffs in *UPFFA* voluntarily dismissed their claims and, one month later, refiled them in *Butte*. *UPFFA*, ECF No. 360 (Feb. 19, 2026); *Butte*, ECF No. 190 (Mar. 13, 2026). This occurred after the lawyers that represented the *UPFFA* and *Butte* plaintiffs publicly accused each other of copying the other's lawsuit. *See Butte*, ECF No. 89, at 3 (Sept. 30, 2025); *UPFFA*, ECF No. 323, at 2 (Oct. 15, 2025). Those lawyers then reconciled and became co-counsel in *UPFFA* and *Butte*. As part of that reconciliation, the *UPFFA* purchaser plaintiffs moved their claims across the country to Montana. *Butte*, ECF No. 190.

Second, after the District of Montana denied the original *Butte* defendants' Rule 12 motions in January 2026, the *Butte* plaintiffs' lawyers filed two amended complaints that added nineteen new parties (fifteen new plaintiffs and four new defendants). They filed their first amended complaint on March 13, 2026. *Butte*, ECF No. 190 (Mar. 13, 2026). The plaintiffs added through the first amendment are mostly from the East Coast: two Connecticut purchasers from *UPFFA*, plus the Mayor and City Council of Baltimore, Maryland, and Charles County, Maryland. *Id.* The other two new plaintiffs were Santa Monica, California, and the City of St. Louis, Missouri. *Id.* The first amended complaint also added as new defendants two turnout-gear assemblers not named in the initial complaint: Fire-Dex and Morning Pride. *Id.*

- 7 -

The *Butte* lawyers filed a second amended complaint two months later, on May 5, 2026. *Id.*, ECF No. 234 (May 5, 2026). The plaintiff lineup again expanded. It now includes two more East Coast plaintiffs: Worcester, Massachusetts, and the Borough of Emmaus, Pennsylvania. *Id.* It also adds plaintiffs concentrated in the Midwest, including Kansas City, Missouri; two Chicago-area municipalities (Markham, Illinois and Gary, Indiana); a suburb of Milwaukee (Oak Creek, Wisconsin); two cities in Arkansas (Little Rock and Pine Bluff); and Anniston, Alabama. *Id.*

Neither amended complaint alleges any nexus among any of these municipalities, the conduct of any defendant, and Montana. The defendants' deadline to respond to the most recent amended complaint is June 11, 2026, *see id.* ECF No. 296, at 9 (May 27, 2026), and jurisdictional challenges to the claims of these new, non-Montana plaintiffs whose claims do not allege any nexus to Montana are anticipated.

D.      More TOG purchaser class actions are filed in California and Minnesota.

Around the same time that the party lineups in *UPFFA* and *Butte* began to change, additional turnout-gear buyers filed three more putative class actions.

The first was filed on March 18, 2026, in the Northern District of California. *San Mateo*, ECF No. 1 (Mar. 18, 2026). The plaintiff is the County of San Mateo, located in the Bay Area. The responsive-pleading deadline in *San Mateo* is June 5, 2026. *Id.*, ECF No. 18 (Apr. 9, 2026).

The second and third were filed on April 22 and 27, 2026, in the District of Minnesota. *Rochester*, ECF No. 1 (Apr. 22, 2026); *Earlville*, ECF No. 1 (Apr. 27, 2026).

E.      The TOG purchaser cases are immersed in Rule 12 practice.

Although filed at various times in 2024, 2025, and 2026, the TOG purchaser cases remain in similar procedural stages, with most cases currently centered on Rule 12 motions.

The *Rochester* and *Earlville* complaints have not yet been served on all defendants.

In *UPFFA*:

- Motions to dismiss the second amended complaint have been fully briefed since October 2025. No decision has been entered on those motions.

- An ESI protocol and protective order have been entered. ECF Nos. 388, 392.

- Jurisdictional discovery as to a subset of defendants is ongoing. The District of Connecticut has declined to permit class or merits discovery while personal-jurisdiction issues remain pending. ECF No. 385. No comprehensive discovery schedule has been entered.

- Outside of jurisdictional discovery, no documents have been produced.

In *Butte*:

- Briefing on motions to dismiss the second amended complaint is ongoing, with defendants' motions due June 11, 2026. ECF No. 296. This will be the first substantive filing for the newly added defendants, including TOG assemblers Morning Pride and Fire-Dex.

- No discovery schedule has been entered. The Parties have agreed to an ESI protocol and protective order. ECF Nos. 298, 299. Some of the original parties to the case have served initial written discovery responses and objections. Newly added

- Plaintiffs' counsel filed a motion for appointment as interim class counsel, which was granted. ECF No. 301.

In *Peabody*:

- Briefing on motions to dismiss the amended complaint is ongoing.

- A hearing on the motions to dismiss is scheduled for June 23, 2026. ECF Nos. 157, 159, 161.

- No discovery schedule has been entered.

- No ESI protocol or protective order has been entered.

- No discovery requests have been served.

In *San Mateo*:

- Briefing on motions to dismiss the complaint is ongoing, with defendants' motions due June 5, 2026. ECF No. 20. A hearing on those motions is scheduled for October 8, 2026. *Id.*

- No discovery schedule has been entered, but the parties have held an initial meet and confer, have a June 10, 2026, deadline to submit their Rule 26(f) report, and will participate in an initial pretrial conference on June 17, 2026. ECF No. 15.

- No ESI protocol or protective order has been entered.

- No discovery requests have been served.

## ARGUMENT

### I.    The TOG purchaser cases involve the same core allegations and legal theories.

There is no dispute that the putative class actions at issue here are materially similar.

For one, the cases rest on the same narrative: municipalities and fire districts allege that they unwittingly bought turnout gear with PFAS, that the gear has exposed their firefighters to a risk of negative health outcomes, and that they have suffered economic injuries from their purchases of the gear. The operative complaints repeat dozens of the same factual allegations verbatim.[4] Cases that share common factual allegations are prime candidates for consolidated proceedings. *See, e.g.*, *In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prods. Liab. Litig.*, 568 F. Supp. 3d 1412, 1413 (U.S. Jud. Pan. Mult. Lit. 2021).

In addition, four of the five cases seek to certify identical nationwide classes of turnout-gear buyers. The fifth seeks to certify a Massachusetts-only purchaser class, which

---

[4]    *Compare Rochester*, ECF No. 1, ¶¶ 125-28, 144-67, 191-92, 194-96, *with Butte*, ECF No. 234, ¶¶ 197-206, 235-55, 262-64, 273; *Peabody*, ECF No. 156, ¶¶ 68-71, 89-110, 134-37; *San Mateo*, ECF No. 1, ¶¶ 127-30, 147-68, 191-92, 196; *Earlville*, ECF No. 1, ¶¶ 177-83, 201-36, 260-61, 265, 267-68.

.

- 10 -

would be subsumed by any nationwide class. Under this Panel's teachings, the consolidation of cases that seek to certify the same putative nationwide class "will streamline proceedings on class-related issues and prevent inconsistent rulings on class certification." *In re Keffer Dev. Servs., LLC, Data Sec. Breach Litig.*, 796 F. Supp. 3d 1379, 1380 (U.S. Jud. Pan. Mult. Lit. 2025); *see also In re ARC Airbag Inflators Prods. Liab. Litig.*, 648 F. Supp. 3d 1378, 1380 (U.S. Jud. Pan. Mult. Lit. 2022); *In re Toys "R" Us-Delaware, Inc., Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 581 F. Supp. 2d 1377, 1377-78 (U.S. Jud. Pan. Mult. Lit. 2008); Manual for Complex Litigation § 20.14 (4th ed. 2025).

Finally, the cases here share the same types of legal claims: civil RICO claims, contract claims, product-liability claims, and claims for violation of state consumer-protection statutes. Commonality among legal theories and claims is another factor that tilts in favor of consolidation. *See, e.g.*, *In re FTX Cryptocurrency Exch. Collapse Litig.*, 677 F. Supp. 3d 1379, 1381 (U.S. Jud. Pan. Mult. Lit. 2023); *In re Acetaminophen - ASD/ADHD Prods. Liab. Litig.*, 637 F. Supp. 3d 1372, 1374 (U.S. Jud. Pan. Mult. Lit. 2022).

## II. Consolidation would mitigate the likelihood of extreme inefficiencies.

There is a near certainty of inefficient and duplicative proceedings without consolidation. Absent consolidation, the same factual and legal issues will be litigated at least five different times. The inefficiencies are being borne out already in Rule 12 briefing: There have been nine independent Rule 12 briefing cycles across materially similar purchaser class actions.

Importantly, the Rule 12 motions filed in each case raise threshold issues of subject-matter jurisdiction and personal jurisdiction. They also raise the same significant questions about the legal soundness of the plaintiffs' claims, including (1) what alleged representations any defendant made that were part of any purchaser's buying decision,

- 11 -

(2) whether the plaintiffs' allegations fit any cognizable breach-of-warranty theory, (3) whether any complaint raises sufficient allegations to support the plaintiffs' civil RICO theory, and (4) whether the plaintiffs' contract and tort theories apply equally to each type of defendant (assembler, component manufacturer, and chemical manufacturer).

As the Panel has recognized, consolidation conserves party and judicial resources when it eliminates duplicative Rule 12 briefing. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 637 F. Supp. 3d 1377, 1378 (U.S. Jud. Pan. Mult. Lit. 2022). And when Rule 12 motions are decided in a consolidated proceeding, the streamlining effect can be substantial. *See, e.g.*, *In re Gardasil Prods. Liab. Litig.*, 724 F. Supp. 3d 474 (W.D.N.C. 2024) (granting motion to dismiss design-defect, failure-to-warn, manufacturing-defect, and fraud claims). The sheer quantity of Rule 12 briefing that has occurred and will occur absent consolidation is a significant point in favor of consolidation.

The same streamlining effect would occur with centralized case management and discovery. Written discovery, document production, and depositions across the cases will involve many of the same witnesses, documents, and information. Expert testimony on the same topics will be necessary in each action. *See In re Folgers Coffee Mktg. & Sales Pracs. Litig.*, 532 F. Supp. 3d 1416, 1417 (U.S. Jud. Pan. Mult. Lit. 2021); *see also In re Apple Inc. Smartphone Antitrust Litig.*, 737 F. Supp. 3d 1361, 1363 (U.S. Jud. Pan. Mult. Lit. 2024); *In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 730 F. Supp. 3d 1371, 1373 (U.S. Jud. Pan. Mult. Lit. 2024).

Lastly, consolidation would eliminate the high risk of inconsistent rulings on similar legal issues, especially on key issues of jurisdiction, class certification, reliance and other merits issues, and *Daubert* motions. Guarding against this risk is another critical feature of

consolidation. *See In re Granulated Sugar Antitrust Litig.*, 737 F. Supp. 3d 1370, 1371 (U.S. Jud. Pan. Mult. Lit. 2024); *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d 1350, 1351 (U.S. Jud. Pan. Mult. Lit. 2022); *In re Abbott Lab'ys, et al., Preterm Infant Nutrition Prods. Liab. Litig.*, 600 F. Supp. 3d 1345, 1346 (U.S. Jud. Pan. Mult. Lit. 2022); *see also* Manual for Complex Litigation § 20.14.

Again, the parties have sharply different views of the merits of the claims in these cases and the propriety of class certification. The overlap among the complaints, however, is an objective fact. Considering this overlap, having a single judge preside over consolidated proceedings would be far more efficient than individually litigating each case.

### III.    Consolidation is superior to voluntary coordination.

The Panel often considers whether the parties and the courts can coordinate informally rather than seeking consolidation through section 1407(a). The circumstances here, unfortunately, render informal coordination impracticable.

Take, for example, an agreement across cases that discovery in one case would apply to all cases. That concept is not unreasonable in the abstract, but it is challenging here. Absent consolidation, each case could move to a different track after Rule 12 motions are filed (consider, for example, the precedence of jurisdictional discovery over class and merits discovery in *UPFFA*, versus the early service of written discovery in *Butte*), and the timing of Rule 12 decisions may differ across cases. The same is true of the substance of the Rule 12 decisions. Different claims against different defendants on different theories could exist in each case following Rule 12 decisions, with discovery beginning and ending on different dates in different cases. Coordinating discovery in that environment would be an extraordinary challenge, particularly given the lack of identity of plaintiffs and their counsel across the cases.

- 13 -

Voluntary coordination would also be difficult because each case will require substantial discovery on plaintiff-specific product identification, purchasing decisions, and PFAS exposure dose, frequency, and methods. Disputes about the discovery of these issues could turn on similar legal principles, but they will arise at different times and in case-specific, party-specific contexts. It would be more efficient for a single judge to decide these issues in a coordinated fashion, gaining familiarity with the key principles, than to litigate each issue across five or more cases.

Next, consider class certification. Four of the five cases seek to certify the same nationwide class of turnout-gear buyers. In the absence of consolidation, one court could quickly decide certification, with arguments to follow about the effect of that decision on other cases. No voluntary means of coordination can resolve this issue. The more efficient protocol would be for a single court to deliberately resolve jurisdictional issues, oversee discovery of remaining claims and remaining parties, and assess class-certification motions at a single juncture.

Finally, voluntary coordination can be a challenge when the cases to be coordinated involve different plaintiffs' counsel. *See In re CCell Closed Cannabis Oil Vaporization Sys. & Components Prods. Litig.*, 808 F. Supp. 3d 1410, 1411 (U.S. Jud. Pan. Mult. Lit. 2025). That is the case here. The plaintiffs in each of the five cases have a different set (or multiple sets) of attorneys. Those attorneys so far have not pursued voluntary coordination across cases and, in some instances, have resisted motions to transfer under section 1404. *See supra* pp. 6-7.

**IV.     The District of Minnesota is an appropriate forum for consolidation.**

A.      <u>Minneapolis is convenient.</u>

Of the districts in which the related cases are pending, the District of Minnesota is the most central and convenient forum for all parties. Here, again, is the map of locations of each

party:[5]



Minneapolis is also a convenient forum for transit. The Minneapolis-St. Paul airport is a Delta hub, with over nine-hundred daily flights.[6] Direct flights include multiple daily options to New York, Los Angeles, San Francisco, Washington, D.C., St. Louis, Kansas City, Chicago, Boston, Philadelphia, Indianapolis, Charlotte, and Atlanta—convenient airports for nearly every party.[7]

    In sum, Minnesota is a geographically central and readily accessible forum given the party locations in this case. This point supports the District of Minnesota as the MDL forum here. *See In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d at 1351.

---

[5]    Exhibit 2 to this brief contains a list of each party, its location (for each defendant, its corporate headquarters), and the TOG purchaser cases in which the party is named.

[6]    *Flights*, Metro. Airports Comm'n, https://www. mspairport.com/flights-and-airlines/ flights (June 1, 2026).

[7]    *Id.*

B.    The District of Minnesota is well-versed in MDLs.

The District of Minnesota also has substantial experience with MDLs, including MDLs

concerning allegedly defective products and involving class actions. The District of Minnesota

currently has three product-liability MDLs: *Fluoroquinolone Products Liability Litigation*, MDL

No. 2642; *Bair Hugger Forced Air Warming Devices Products Liability Litigation*, MDL No.

2666; and *Stryker Rejuvenate and ABG II Hip Implant Products Liability Litigation*, MDL No.

2441. Prior product-liability MDLs in this district include *Baycol Products Liability Litigation*,

MDL No. 1431; *HardiePlank Fiber Cement Siding Litigation*, MDL No. 2359; and *Mirapex*

*Products Liability Litigation*, MDL No. 1836. The District of Minnesota also has several

class-action MDLs, including *Pork Antitrust Litigation*, MDL No. 2998; *Cattle and Beef*

*Antitrust Litigation*, MDL No. 3031; *Change Healthcare, Inc. Customer Data Security Breach*

*Litigation*, MDL No. 3108; *Granulated Sugar Antitrust Litigation*, MDL No. 3110; and *Dividend*

*Solar Finance, LLC, & Fifth Third Bank Sales & Lending Practices Litigation*, MDL No. 3128.

C.    Judge Bryan is an appropriate fit for the proposed MDL.

The Honorable Jeffrey M. Bryan—the presiding judge in three of the five cases

(*Peabody*, *Rochester*, and *Earlville*)—is a compelling choice to oversee an MDL.

In his time on the federal bench, Judge Bryan has presided over multiple product-liability

cases, including a recent matter involving allegations about exposure to PFAS. *See Peterson v.*

*3M Co.*, No. 24-CV-03497 (JMB/DLM); *see also Rouse v. H.B. Fuller Co.*, No. 22-CV-02173

(JMB/JFD); *Harris v. Medtronic Inc.*, No. 23-CV-2273 (JMB/DLM). He has presided over

multiple class actions as well, including *Rouse*. *See also Bennett v. Ecolab, Inc.*, No. 24-CV-

0546 (JMB/SGE); *Fritton v. Taylor Corp.*, No. 22-CV-415 (JMB/TNL).

In addition, Judge Bryan's tenure on the federal bench was preceded by a lengthy period

- 16 -

as a state trial-court and appellate judge in Minnesota. He authored nearly two-hundred opinions as an appellate judge.[8] His substantial judicial experience makes him well-suited to manage a complex matter like this one, including the high volume of motion practice to which the plaintiffs' complaints have given rise (and will continue to give rise).

> D.    The District of Minnesota has the most filed turnout-gear purchaser class actions.

More TOG purchaser cases (three) have been filed in the District of Minnesota than any other district. The Panel has given weight to the number of cases filed in a judicial district when selecting the MDL forum. *See In re Granulated Sugar Antitrust Litig.*, 737 F. Supp. 3d 1370, 1371-72 (U.S. Jud. Pan. Mult. Lit. 2024); *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d at 1351; *In re OpenAI, Inc., Copyright Infringement Litig.*, 776 F. Supp. 3d 1352, 1355 (U.S. Jud. Pan. Mult. Lit. 2025).

> E.    3M is headquartered in the Twin Cities.

Another factor supports the District of Minnesota: 3M, a defendant in each TOG purchaser case, is headquartered there. The complaints in all five cases contain extensive allegations about 3M's role in manufacturing PFAS. Discovery in these cases will involve a significant number of 3M witnesses. The Panel has considered the location of key defendants when selecting MDL forums. *See, e.g.*, *In re Generac Solar Power Sys. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 677 F. Supp. 3d 1370, 1371 (U.S. Jud. Pan. Mult. Lit. 2023); *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 148 F. Supp. 3d 1383, 1386 (U.S. Jud. Pan. Mult. Lit. 2015).

---

[8]    *See Questions for the Record from U.S. Senate Comm. on the Judiciary, Judge Jeffrey M. Bryan* (Sept. 6, 2023), https://www.judiciary.senate.gov/imo/media/doc/09-06-2023_-_qfr_responses_-_bryan.pdf.

**V.    The District of South Carolina would also be an appropriate forum for consolidation.**

If the Panel were to consider a forum in which one of the related class actions is not pending, the District of South Carolina would be a logical choice. On this issue, the Turnout Gear Assemblers agree with the points raised in the briefs filed with the Panel by 3M and Globe.

The primary reason is that the District of South Carolina is the forum for the AFFF MDL. As the Panel is aware, a significant number of firefighter plaintiffs in that MDL have alleged that they suffered adverse health outcomes because of exposure to PFAS in turnout gear. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873, 2021 WL 755083, at *2 (U.S. Jud. Pan. Mult. Lit. Feb. 4, 2021).

For this reason, the TOG purchaser cases raise significant overlaps with parties and issues being litigated in the AFFF MDL. In total, tens of thousands of plaintiffs with claims pending in the AFFF MDL have asserted exposure to PFAS from TOG. For example, at least half of the plaintiffs across these five cases also assert claims in the AFFF MDL, and sixteen of the twenty plaintiffs provided TOG to personal injury plaintiffs in the AFFF MDL. Indeed, every defendant in the five-above captioned TOG cases is already a party in the AFFF MDL.

To be clear, the plaintiffs here do not allege injury from AFFF exposure. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 765 F. Supp. 3d 1379, 1380-81 (U.S. Jud. Pan. Mult. Lit. 2024). But whether the cases are consolidated into the existing AFFF MDL or as part of a new MDL before Judge Gergel, there could be significant efficiencies given that both sets of cases—the personal-injury cases in the AFFF MDL and the putative class actions that are the subject of the instant motion—turn on similar questions about the health effects of alleged exposure to PFAS from turnout gear and each defendant's knowledge of any such alleged effects. Assigning these five cases to Judge Gergel would allow him to structure motion practice

and other case-management procedures in the AFFF MDL or across the MDLs in a manner that promotes efficiency for the parties and the court.

The District of South Carolina offers fewer and less frequent transit options than Minneapolis-St. Paul, but because most parties are either on the East Coast or in the eastern half of the United States, the district presents a geographic fit, just as it does for the AFFF MDL.

## VI.    Neither California nor Montana offers the convenience of Minnesota or South Carolina.

Either Minnesota or South Carolina is a more convenient and appropriate forum for consolidation than the jurisdictions in which the other two TOG purchaser cases have been filed.

The Northern District of California, the forum for *San Mateo*, is close to the San Franscisco airport. The Bay Area, however, is geographically remote from every defendant, and from every plaintiff other than San Mateo and Santa Monica (a *Butte* plaintiff).

The District of Montana, the forum for *Butte*, has greater geographic challenges than the Northern District of California. Given the limited number of flights into Montana, it takes almost a full day to get to Butte from anywhere in the eastern United States, which is where almost all parties are located. Even larger airports, like in Bozeman, offer limited direct flight options.

More importantly, only one plaintiff is in Montana. No defendant is in Montana. Indeed, many defendants have no connection at all to Montana. Although the Panel placed an MDL relating to the Snowflake data breach in the District of Montana in 2024, the circumstances there were distinct. Snowflake's principal executive office is in Montana and Snowflake stated that Montana was an appropriate venue for pretrial proceedings. *In re AT&T Inc. Cellular Customer Data Sec. Breach Litig. & In re Snowflake, Inc., Data Sec. Breach Litig.*, 753 F. Supp. 3d 1368, 1373 (U.S. Jud. Pan. Mult. Lit. 2024). That fact pattern made the District of Montana a logical forum for centralization. Here, no defendant is in Montana. No defendant supports centralization

in Montana. Almost all parties are in the eastern half of the country.

Finally, a word is also in order regarding the number of plaintiffs who have recently assembled in *Butte*. Until March 2026, *Butte* was a single-plaintiff case. Butte-Silver Bow's counsel used that fact to defeat earlier transfer efforts. *See supra* pp. 6-7. Only after defeating initial Rule 12 motions did the plaintiffs' counsel in *Butte* recruit fifteen new plaintiffs, all (except Santa Monica) from the eastern half of the United States. These new plaintiffs have no connection to Montana. Nor do their claims have any nexus to Montana. For these and related reasons, their claims will soon be subject to personal-jurisdiction scrutiny under Rule 12(b)(2). In sum, the addition of these new plaintiffs to *Butte* has no bearing on the convenience and efficiency analysis under section 1407(a).

## CONCLUSION

The defendants ask the Panel to grant Rochester's motion for centralization and transfer the five Related Actions to the District of Minnesota, or in the alternative to the District of South Carolina, for coordinated pretrial proceedings.

DATED: June 3, 2026                    Respectfully submitted,

*/s/ Gregory L. Skidmore*
Gregory L. Skidmore
N.C. State Bar No. 35571
gskidmore@rbh.com
ROBINSON, BRADSHAW & HINSON, P.A.
600 S. Tryon Street, Suite 2300
Charlotte, North Carolina 28202
Telephone: (704) 377-2536
Facsimile: (704) 378-4000

*Attorney for Honeywell Safety Products USA, Inc.*
*and Morning Pride Manufacturing, LLC*

*/s/ Kevin M. Ringel*
Kevin M. Ringel
Kevin.Ringel@fmglaw.com
FREEMAN MATHIS & GARY, LLP
33 North Dearborn Street, Suite 1400
Chicago, IL 60602
Telephone: (773) 389-4068

*Attorney for Fire-Dex LLP*


*/s/ Emily Suhr*
Emily Suhr
MN State Bar No. 0403064
emily.suhr@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
Wells Fargo Center
90 S 7th Street, Suite 2800
Minneapolis, MN 55402
Telephone: 612.428.5000
Facsimile: 612.428.5001

*Attorney for Lion Group, Inc.*


*/s/ James F. Bogan III*
James F. Bogan III
Georgia Bar No. 065220
jbogan@ktslaw.com
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

*Attorney for Southern Mills d/b/a TenCate
Protective Fabrics*

- 21 -