**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **In re:** Firefighter Turnout Gear Marketing, Sales Practices, & Products Liability Litigation | MDL No. 3191<br>This Document Relates To:<br><br>*City of Rochester v. 3M Company et al.*, No. 0:26-cv-2329 (D. Minn.)<br><br>*City of Peabody v. 3M Company et al.*, No. 0:25-cv-2083 (D. Minn.)<br><br>*Earlville Committee Fire Protection District v. 3M Company et al.*, No. 0:26-cv-2388 (D. Minn.)<br><br>*County of San Mateo v. 3M Company et al.*, No. 3:26-cv-2380 (N.D. Cal.)<br><br>*City of Butte-Silver Bow et al. v. 3M Company et al.*, No. 2:25-cv-00036 (D. Mont.) |

<u>**3M COMPANY'S RESPONSE TO MOTION FOR CENTRALIZATION AND TRANSFER**</u>

3M Company ("3M"), a defendant in each of the above-captioned actions, respectfully submits this response to the City of Rochester's motion to transfer these actions to a multidistrict litigation pursuant to 28 U.S.C. § 1407(a). (*See* ECF No. 1.)[1] The Panel should transfer these cases to the District of South Carolina where the Honorable Richard M. Gergel is already efficiently overseeing an MDL that overlaps significantly with the one proposed here. An alternative venue would undermine the benefits of centralization and the existing MDL.

The City of Rochester seeks to create a new MDL for five turnout gear cases, noting that they each turn on the same basic allegation: that the protective turnout gear ("TOG") the plaintiff

---

[1] Unless otherwise noted, ECF citations refer to the JPML docket for proposed MDL No. 3191.

municipalities purchased for their firefighters contained certain per- and polyfluoroalkyl substances ("PFAS") that exposed the firefighters to health risks and required or will require plaintiffs to incur replacement and remediation costs. The existing MDL—*In re Aqueous Film-Forming Foams Products Liability Litigation* ("*In re AFFF*") (No. 2873)—already involves *tens of thousands* of claims, including putative class actions, where plaintiffs similarly allege they were harmed by PFAS exposure from TOG. Those plaintiffs seek recourse from all the same defendants at issue in the above-captioned cases. And those same defendants have already produced *millions* of pages of TOG-related discovery in the *In re AFFF* MDL—the same discovery that is likely to be sought from them again in these cases. In other words, TOG-specific litigation and discovery is already proceeding apace in the *In re AFFF* MDL, where Judge Gergel is actively managing thousands of cases that raise the same issues presented in these above-captioned cases.

Given this clear overlap, the most efficient course would be to transfer these cases to Judge Gergel. The alternatives—allowing these cases to proceed individually or centralizing them in a different district court—would require two or more courts to oversee the same discovery involving the same parties, and to resolve the same legal and factual questions related to TOG. This overlap would significantly increase the risk of inconsistent pretrial rulings. And it would undermine Judge Gergel's ongoing management of the *In re AFFF* MDL, as well as his ability to effectively oversee the resolution of the thousands of TOG claims already consolidated before him. Moreover, none of the courts in the above-captioned cases has the same level of experience with the common discovery and factual issues that Judge Gergel does; those cases are still at relatively early stages, with pleadings-based motion practice in progress and other procedural issues still in play.

If, however, these actions are not transferred to the District of South Carolina, centralization in the District of Minnesota would be the most suitable of the alternate venues for

2

any new MDL. Minnesota (where 3M is headquartered) is centrally located, and three of the five above-captioned actions are already proceeding there. Although 3M expects one plaintiff group to propose the District of Montana as a transferee court, that would be a particularly inconvenient venue. Of all the parties to these cases, only a single plaintiff in one action has any material connection to Montana. Rather, the parties are located overwhelmingly in the eastern or midwestern United States, and travel to Montana would be considerably more difficult, time-consuming, and expensive for the parties and counsel involved. And that burden would only increase if the litigation expanded to include additional parties.

For the following reasons, 3M respectfully asks the Panel to transfer these actions to the *In re AFFF* MDL. If the Panel is not inclined to transfer these cases to the *In re AFFF* MDL, the Panel could achieve some of the same benefits of centralization by establishing a companion MDL in the District of South Carolina, which would position Judge Gergel to efficiently manage them in coordination with the *In re AFFF* MDL docket. If the Panel does not consolidate the above-captioned actions before Judge Gergel, it should transfer them to the District of Minnesota.

## BACKGROUND

The five above-captioned cases are putative class actions filed in 2025 and 2026 by municipalities and fire districts that purchased TOG for use by their fire departments. The plaintiffs allege that PFAS-containing TOG exposed their firefighters to harmful substances, in turn requiring the municipalities and fire districts to incur replacement and remediation costs. (*See generally* ECF Nos. 1-4, 1-5, 1-6, 1-7, 1-8.) They bring claims against PFAS manufacturers, including 3M, alleging that those manufacturers supplied the PFAS ultimately used by other companies in assembling the TOG. They also bring claims against companies that produced and sold the TOG. Four out of five of the actions propose nearly identical nationwide classes of TOG purchasers (*see* ECF No. 1-4; Compl. ¶ 217; ECF No. 1-6; Compl. ¶ 331; ECF No. 1-7; Compl.

¶ 217; ECF No. 1-8; Compl. ¶ 289), and the fifth proposes a class of Massachusetts TOG purchasers (*see* ECF No. 1-5; Compl. ¶ 150). As further detailed in the brief of Honeywell and Morning Pride, the actions all remain in relatively early stages, with briefing on motions to dismiss still underway and almost no discovery produced.

In 2018, this Panel established an MDL for claims involving AFFF, which, like TOG, is a PFAS-containing firefighting product. *In re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391 (J.P.M.L. 2018). Over time, the *In re AFFF* MDL has come to include tens of thousands of claims involving TOG. These include personal injury cases brought by firefighters that were filed directly in the *In re AFFF* MDL or were transferred to it by this Panel. *See In re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873, 2021 WL 755083, at *1 (J.P.M.L. Feb. 4, 2021). The overlap is unsurprising because both products enable effective firefighting, and firefighters frequently allege being exposed to PFAS from both AFFF and TOG. *See id*. ("Plaintiffs allege that they are or were firefighters who were exposed to [PFAS] through use of [AFFFs], which are used to extinguish fires, and by wearing certain protective clothing and gear that allegedly contained PFAS."). As a result, the *In re AFFF* MDL court has for five years now actively managed TOG-related litigation and discovery involving the same parties at issue in these cases. Indeed, Judge Gergel has recommended to this Panel that TOG-related cases be transferred to the *In re AFFF* MDL. *See* Case Management Order No. 36, *In re AFFF*, No. 2:18-mn-02873 (D.S.C. Aug. 22, 2025), ECF No. 7891.

Although this Panel has previously declined to transfer certain claims  described as "turnout gear-only" claims to the *In re AFFF* MDL, *see* Order Denying Transfer at 2, *In re: Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2873 (J.P.M.L. Dec. 11, 2025), ECF No. 4062 (citing *In re: Aqueous Film-Forming Foams Products Liability Litigation*, 765 F. Supp. 3d

1379, 1380–81 (J.P.M.L. 2024)), it has continued to transfer cases that involve both TOG and AFFF. Until recently, there had been relatively few TOG putative class actions that did not also raise AFFF-related allegations. As the litigation continues to evolve, the City of Rochester's motion therefore presents the first opportunity for the Panel to consider a request for an additional TOG MDL and how such an MDL would interact with, and undermine the work of, the existing *In re AFFF* MDL.

## ARGUMENT

I.  **Because These Actions Overlap Significantly With the *In re AFFF* MDL, They Should Be Transferred to the District of South Carolina Before Judge Gergel.**

A. *The* In re AFFF *MDL Is Already Effectively Managing TOG Litigation and Discovery.*

3M agrees that the five above-captioned actions as currently pled "involve common questions of fact" for purposes of § 1407. *See In re: Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*, 84 F. Supp. 3d 1383, 1384 (J.P.M.L. 2015). That is, the actions should be heard together before a single district court to avoid inconsistent rulings, duplicative discovery, and inefficient proceedings across multiple courts. Because each case rests on the same core allegation and names almost all the same defendants, there will inevitably be common discovery and similar motion practice across the actions. The common questions include, for example, the marketing and sales practices for TOG, the potential release of PFAS from TOG, the alleged risks of harm caused by exposure to PFAS from TOG, any warnings or instructions related to such alleged risks, any available methods for remediation, the potential availability of replacements for use of PFAS in TOG, and defendants' knowledge of these issues over time. *See In re: BP Prods. N. Am., Inc., Antitrust Litig. (No. II)*, 560 F. Supp. 2d 1377, 1379 (J.P.M.L. 2008) (centralizing actions making "overlapping and, in many instances, nearly identical factual allegations that will likely require

duplicative discovery and motion practice").[2]

The *In re AFFF* MDL, however, is already addressing these questions, which is markedly more advanced in discovery than any of the above-captioned actions. Given the prevalence of these issues in the *In re AFFF* MDL, Judge Gergel has been managing years of extensive discovery on the same TOG questions at issue in these cases. That makes the pre-existing MDL in South Carolina the most appropriate candidate for consolidation of the above-captioned cases.

As noted above, there is already considerable overlap between the MDL proposed here and the *In re AFFF* MDL. Because TOG and AFFF are both PFAS-containing products commonly used by fire departments, the *In re AFFF* MDL has long included "direct exposure actions [filed] by firefighters . . . directly in [that] court,"[3] and the JPML has transferred in many other cases involving alleged PFAS-related injuries from both AFFF and TOG. *See In re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 WL 755083, at *2. As a result, tens of thousands of plaintiffs with claims pending in the *In re AFFF* MDL have asserted exposure to PFAS from TOG. Every defendant in the five above-captioned TOG cases is already a party in the *In re AFFF* MDL. And 16 of the 20 plaintiffs across those five cases have been identified as TOG providers by personal injury plaintiffs in the MDL.

As a result of this overlap, TOG-related discovery is already well underway in the MDL. This discovery has been proceeding efficiently for years, well ahead of any of the proceedings in the more recently filed putative class actions. As far back as 2022, TOG plaintiffs in the *In re*

---

[2] To be sure, 3M disputes that these actions can or should be certified as nationwide class actions, but that is not a question before the Panel as this time. Even as alleged on behalf of multiple individual named plaintiffs, the allegations plainly involve various common elements that will call for overlapping and duplicative discovery, motion practice, and pretrial rulings across the cases.

[3] *See, e.g.*, Compl. ¶ 6, *Ain v. 3M Co.*, No. 2:23-cv-01520-RMG (D.S.C.), ECF No. 1 (bringing claims based on PFAS exposure both from "protective clothing specifically designed for firefighters ('turnouts')" and from "firefighting foams").

*AFFF* MDL have sought discovery from defendants in that MDL who manufactured or distributed TOG or its components. *See, e.g.*, Ex. A to Mot. to Compel, *In re AFFF*, No. 2:18-mn-02873-RMG (D.S.C. Sept. 16, 2022), ECF No. 2604-2 (compilation of interrogatories and requests for production seeking broad categories of information and documents relating to TOG). TOG plaintiffs in the *In re AFFF* MDL have issued hundreds of requests for production and interrogatories across multiple rounds of requests to dozens of defendants; the most recent requests were issued just weeks ago. Judge Gergel has been actively managing this discovery as well as other discovery touching on many of the core underlying issues related to PFAS, such as the science of PFAS and their potential associated risks. Judge Gergel has provided ample guidance in multiple case management conferences over years as to discovery and has also resolved at least one TOG-specific motion to compel. *See In re AFFF*, No. 2:18-mn-2873-RMG, 2023 WL 11000714, at *1 (D.S.C. June 29, 2023).

Because of this process, the TOG-specific defendants in the five above-captioned actions have already collectively produced more than half a million documents (totaling nearly three million pages) of TOG-related discovery in the *In re AFFF* MDL.[4] These numbers do not include the millions of pages produced by defendants such as 3M and DuPont that have been subject to both AFFF- and TOG-related discovery in the *In re AFFF* MDL. *See, e.g.*, Ex. A (TOG Pls.' First Set of Reqs. for Produc. to 3M Co., Apr. 15, 2025). In addition, the plaintiffs and putative class members in the above-captioned actions are likely targets for discovery in the *In re AFFF* MDL because claims brought by firefighters will require discovery of their employers and the entities

---

[4] The TOG-specific defendants are Fire-Dex, LLC; Globe Manufacturing Company LLC; Honeywell Safety Products USA, Inc.; Lion Group, Inc.; PBI Performance Products, Inc.; Southern Mills Inc. d/b/a TenCate Protective Fabrics; Stedfast USA Inc.; W. L. Gore & Associates Inc.; and Innotex Corp.

7

that supplied them with TOG in the course of their employment. Moreover, given the broad scope of the alleged classes in the above-captioned actions, those cases include municipalities and fire districts that already are parties to cases pending in the *In re AFFF* MDL.

In addition, as this Panel has recognized, Judge Gergel has already "taken steps to manage" TOG claims. *See In re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, 765 F. Supp. 3d at 1381. That includes the issuance of TOG-specific case management orders, demonstrating his familiarity with TOG-related litigation and discovery. *See, e.g.*, Case Management Order No. 4.C, *In re AFFF*, No. 2:18-mn-2873 (D.S.C. Aug. 24, 2023), ECF No. 3611 (amending protective order to "address the need for additional confidentiality protections related to discovery of turnout gear defendants who are market competitors"); Case Management Order No. 5.F, *In re AFFF*, No. 2:18-mn-2873 (D.S.C. Feb. 26, 2024), ECF No. 4542 (creating specific plaintiff fact sheet for TOG plaintiffs). In sum, long before any of the above-captioned cases were filed, the *In re AFFF* MDL court has been effectively managing TOG-related discovery and pretrial management.

   B. *Centralization of These Cases Before a Different Court Would Undermine Management of the* In re AFFF *MDL.*

Under these circumstances, declining to centralize the above-captioned cases before Judge Gergel would risk undermining his effective management of the *In re AFFF* MDL. It would result in multiple federal courts examining the same factual and legal questions, as well as overlapping and possibly competing discovery. This would all but guarantee duplicative litigation and potentially inconsistent decisions. Multiple courts, for example, would be tasked with deciding similar class-certification motions regarding putative TOG-purchaser classes—an outcome this Panel has long sought to avoid. *See, e.g.*, *In re Afr.-Am. Slave Descendants Litig.*, 231 F. Supp. 2d 1357, 1358 (J.P.M.L. 2002) (centralizing action to "prevent inconsistent pretrial rulings, including with respect to class certification"); *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs.*

& *Prods. Liab. Litig.*, 278 F. Supp. 3d 1376, 1377 (J.P.M.L. 2017) (centralizing actions with "substantial overlap in the putative nationwide and statewide classes"). Multiple courts would also be tasked with addressing common questions at the heart of both MDLs, including questions about the alleged harms of PFAS exposure, defendants' knowledge of those alleged harms, and defendants' representations about those alleged harms.

Indeed, if this Panel created two wholly distinct MDLs regarding PFAS-containing firefighting products, a number of lawsuits could conceivably belong in either MDL. A suit by a fire department, municipality, or other entity claiming damages from the purchase of TOG and AFFF could fall into this category, inviting forum shopping, potential claim splitting, and confusion. All in all, the same benefits of centralization that caused this Panel to establish the *In re AFFF* MDL (and that may prompt a consolidation of the cases at issue here) would be challenged, undermining rather than advancing the goals of § 1407.

Informal coordination between the litigants in these actions is not a workable substitute to consolidation before Judge Gergel. The five actions that are the subject of the transfer motion are all putative class actions, and they intersect significantly with complex and ongoing litigation and discovery around the country, including in the *In re AFFF* MDL. Informal coordination would therefore be insufficient to address the "unusually complex issues" implicated in these cases. *In re Insulin Pricing Litig.*, 688 F. Supp. 3d 1372, 1375 (J.P.M.L. 2023) (rejecting proposal for informal coordination). And it would not "address the risk of inconsistent rulings" that would follow from multiple courts endeavoring to resolve the same or similar issues regarding discovery, class certification, and pretrial motions. *Id.*[5]

---

[5] In addition, the plaintiffs are not only "represented by different counsel," *In re Folgers Coffee Marketing & Sales Practices Litigation*, 532 F. Supp. 3d 1416, 1417 (J.P.M.L. 2021), but those different counsel do not appear aligned (*see, e.g.*, Plaintiffs' Opposition to Motion to Stay at 1,

**II.    Alternatively, the District of Minnesota Would Be an Appropriate Venue, but the District of Montana Would Not Be.**

If these actions are not centralized in the District of South Carolina, consolidating these cases before Judge Bryan in the District of Minnesota would be the most sensible alternative, even though it would not realize the additional benefits of centralization in South Carolina. As the City of Rochester notes (ECF No. 1-1 at 5-7), Judge Bryan is already overseeing three of the five above-captioned cases. *See In re Med. Informatics Eng'g, Inc., Customer Data Sec. Breach Litig.*, 148 F. Supp. 3d 1381, 1382 (J.P.M.L. 2015) (centralizing actions in the district where the "majority of the actions [to be centralized were] pending"). In addition to managing these three putative class actions, Judge Bryan has also recently resolved a separate PFAS case involving several of the defendants in these cases. *See Peterson et al. v. 3M Co. et al.*, No. 0:24-cv-03497-JMB-DLM (D. Minn.).[6]

The District of Minnesota is also an "accessible and geographically central forum." *In re Stryker Rejuvenate, ABG II Hip Implant Prods. Liab. Litig.*, 949 F. Supp. 2d 1378, 1380 (J.P.M.L. 2013). The majority of the plaintiffs and defendants in these actions are located in the midwestern or eastern United States, and Minneapolis is widely recognized as an easily accessible venue home to a major international airport and a Delta Airlines hub. *See In re Granulated Sugar Antitrust*

---

*City of Butte-Silver Bow v. 3M Co. et al.*, No. 2:25-cv-00036-BMM (D. Mont. May 21, 2026), ECF No. 291 (filing from the plaintiffs in one of the above-captioned actions that characterizes the movants here as "competing plaintiffs' counsel")).

[6] In their response, the *Butte-Silver Bow* plaintiffs suggest that the District of Minnesota lacks the capacity to oversee the litigation because 11,337 cases were pending in that district as of December 31, 2025. *See* ECF No. 51 at 14-15. However, plaintiffs fail to note that 8,998 of those cases were coordinated within the MDLs in that district assigned to judges other than Judge Bryan. *See* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-January-5-2026.pdf. Outside of those MDLs, the district had just 2,339 cases pending in a district where the judicial bench is "composed of seven authorized district judges, six senior district judges, seven magistrate judges and one part-time magistrate judge." *See* https://www.mnd.uscourts.gov/judges.

*Litig.*, 737 F. Supp. 3d 1370, 1372 (J.P.M.L. 2024). Additionally, Minnesota is home to 3M's corporate headquarters, making it the only venue in the above-captioned cases where any defendant is located. *See In re Loc. TV Advert. Antitrust Litig.*, 338 F. Supp. 3d 1341, 1343 (J.P.M.L. 2018) (where a defendant who was "sued in all actions . . . ha[d] its headquarters in [a] district," consolidating case because "common evidence is likely located there").

By contrast, the District of Montana—which the plaintiffs in *Butte-Silver Bow* have proposed, *see* ECF No. 51—would be a particularly inconvenient venue for any TOG MDL. That action is proceeding in the Butte Division of the District of Montana, and has involved hearings at the courthouses in Butte and Helena. (*See* No. 2:25-cv-00036-BMM (D. Mont.).) Although the original named plaintiff in that case is a Montana municipality, every other plaintiff in that action is from outside of Montana, most from the eastern half of the country. None of the dozens of other parties in any of the other four above-captioned actions is located in Montana.

Butte and Helena are particularly difficult venues for most of the current (and likely any future) parties to access. Butte sits approximately eighty miles from Montana's largest airport, in Bozeman, and Butte's own airport has just two commercial flights each day, neither from cities where any defendant (or their primary counsel) is based. The Helena courthouse is similarly around 90 miles away from the Bozeman airport, and its own airport connects to only three nonstop destinations. In a case such as this one with parties, counsel, and witnesses spread across the country, a Montana-based MDL would impose significant burdens. *See In re: Nutramax Cosamin Mktg. & Sales Pracs. Litig.*, 988 F. Supp. 2d 1371, 1372 (J.P.M.L. 2013) (emphasizing need for a "convenient and accessible" forum in "nationwide litigation").

The plaintiffs in *Butte-Silver Bow* have nonetheless suggested that all "turnout gear PFAS cases" should be transferred to the District of Montana, arguing that the district court there is "the

11

most advanced forum handling turnout gear PFAS claims," and has "the deepest familiarity with the underlying factual, scientific, and legal issues" relating to TOG litigation. (*See* Pls.' Opp'n to Mot. to Stay at 12, *City of Butte-Silver Bow v. 3M Co.*, No. 2:25-cv-00036-BMM (D. Mont. May 21, 2026), ECF No. 291; *see also* ECF No. 51 at 12-13.) But that is inaccurate: as discussed, Judge Gergel has been handling TOG PFAS claims, with extensive discovery, since at least 2021, well before the *Butte-Silver Bow* case was filed (just 14 months ago). *See In re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 WL 755083, at *1. And Judge Gergel is also deeply familiar with the underlying factual, scientific, and legal issues relating to PFAS exposure from firefighting products, including both TOG and AFFF. The District of Montana, by contrast, has resolved a single round of motion-to-dismiss briefing against a single plaintiff; the court's procedural rulings have had little connection to the underlying PFAS issues; there is no scheduling order in place; and the remaining plaintiffs joined the *Butte-Silver Bow* litigation only in the last two months, meaning that the bulk of the motions to dismiss have yet to be filed.

## CONCLUSION

For the reasons discussed above, the Panel should transfer the above-captioned cases to the District of South Carolina before Judge Gergel as part of the *In re AFFF* MDL.

12

Dated: June 3, 2026                     Respectfully submitted,

                                        */s/ Daniel L. Ring*
                                        Daniel L. Ring
                                        JENNER & BLOCK LLP
                                        353 N. Clark Street
                                        Chicago, Illinois 60654
                                        Tel: (312) 923-2625
                                        Fax: (312) 527-0484
                                        dring@jenner.com

                                        *Counsel for Defendant 3M Company*