**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE FIREFIGHTER TURNOUT GEAR MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 3191<br><br>This Document Relates To:<br><br><br>*City of Rochester v. 3M Co.*,<br>No. 0:26-cv-2329 (D. Minn.)<br><br>*City of Peabody v. 3M Co.*,<br>No. 0:25-cv-2083 (D. Minn.)<br><br>*Earlville Comm. Fire Prot. Dist. v. 3M Co.*,<br>No. 0:26-cv-2388 (D. Minn.)<br><br>*County of San Mateo v. 3M Co.*,<br>No. 3:26-cv-2380 (N.D. Cal.)<br><br>*City and County of Butte-Silver Bow v. 3M Co.*, No. 2:25-cv-00036 (D. Mont.) |

**GLOBE MANUFACTURING COMPANY, LLC'S RESPONSE TO MOVANT CITY OF
ROCHESTER'S MOTION FOR CENTRALIZATION AND TRANSFER PURSUANT TO
28 U.S.C. § 1407**

**TABLE OF CONTENTS**

**Page**

I.      Introduction .................................................................................................... 1

II.     Background ..................................................................................................... 4

        A.      The Scope of MDL 2873 ...................................................................... 4

        B.      The Overlapping Litigation in MDL 2873 and the Related Actions ..................... 6

III.    Legal Standard ................................................................................................ 9

IV.     Argument ...................................................................................................... 10

        A.      The Related Actions and Thousands of Cases in MDL 2873 Share Legal,
                Factual, and Scientific Issues—and the *Same* Plaintiffs, *Same* Defendants,
                *Same* Firefighters, and *Same* Turnout Gear ........................................ 10

        B.      Adjudication of the Issues in the Related Actions is Well Underway in
                MDL 2873 ...................................................................................... 16

        C.      The Related Actions Should Be Consolidated Before Judge Gergel
                Because He Has "Unparalleled Familiarity" with the Core Issues ........................ 17

        D.      In the Alternative, the District of Minnesota is the Second Most
                Appropriate Forum for Coordination of the Related Actions ............................ 19

V.      Conclusion .................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 7-Eleven Franchise Antitrust Litig.*,
   358 F. Supp. 286 (J.P.M.L. 1973)..................................................................................2

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
   357 F. Supp. 3d 1391 (J.P.M.L. 2018)...........................................................................4, 5

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
   765 F. Supp. 3d 1379 (J.P.M.L. 2024)...........................................................................5

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
   No. MDL 2873, 2021 WL 755083 (J.P.M.L. Feb. 4, 2021) ...........................................1, 5, 10

*In re Broiler Chicken Grower Antitrust Litig.*,
   509 F. Supp. 3d 1359 (J.P.M.L. 2020)...........................................................................9

*In re Broiler Chicken Grower Antitrust Litig. (No. III)*,
   813 F. Supp. 3d 1363 (J.P.M.L. 2025)...........................................................................18

*In re Class Action Settlement Admin. Litig.*,
   812 F. Supp. 3d 1359 (J.P.M.L. 2025)...........................................................................9

*In re: Gaiam, Inc., Water Bottle Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   672 F. Supp. 2d 1373 (J.P.M.L. 2010)...........................................................................9

*In re Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Non-Arteritic
   Anterior Ischemic Optic Neuropathy Prods. Liab. Litig.*,
   813 F. Supp. 3d 1353 (J.P.M.L. 2025)...........................................................................18

*In re Philips Recalled Cpap, Bi-Level Pap, & Mech. Ventilator Prods. Liab.
   Litig.*,
   568 F. Supp. 3d 1408 (J.P.M.L. 2021)...........................................................................10

*Uber Techs., Inc. v. United States Jud. Panel on Multidistrict Litig.*,
   131 F.4th 661 (9th Cir. 2025) ........................................................................................2

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab.
   Litig.*,
   363 F. Supp. 3d 1378 (J.P.M.L. 2019)...........................................................................10, 16

**Statutes**

28 U.S.C. § 1407....................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 23...............................................................................................................2

Globe Manufacturing Company, LLC ("Globe") respectfully submits this response to Movant City of Rochester's Motion for Centralization and Transfer of Related Actions to the District of Minnesota Pursuant to 28 U.S.C. § 1407 For Consolidated or Coordinated Pretrial Proceedings. Globe supports centralization by the Panel of the five Related Actions[1] in the Aqueous Film-Forming Foam ("AFFF") Multi-District Litigation ("MDL") before the Honorable Judge Richard M. Gergel in the District of South Carolina ("MDL 2873"), or in a new MDL before Judge Gergel. In the alternative, if the proceedings are not coordinated before Judge Gergel, the District of Minnesota is the second most appropriate forum.

## I.      Introduction

Movant the City of Rochester ("Movant") asks the Judicial Panel on Multi-District Litigation to transfer and centralize five putative class actions, pending in three district courts ("Related Actions") in the District of Minnesota. While Globe agrees that the District of Minnesota may be a convenient and appropriate forum, there is a far superior home for the Related Actions: before the Honorable Judge Richard M. Gergel in the District of South Carolina, the judge presiding over MDL 2873.

MDL 2873, like this proposed MDL, is about PFAS in firefighting equipment. MDL 2873 was created initially to address claims that AFFF, or foams firefighters use to extinguish liquid fuel fires, contaminated surrounding groundwater with specific types of PFAS (PFOS and PFOA). This Panel later expanded MDL 2873 to include claims of alleged PFAS exposure from both AFFF and turnout gear. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig*., No. MDL 2873,

---

[1] *City of Rochester, New York v. 3M Company, et al*., No. 26-cv-02329 (D. Minn.); *City of Peabody, Massachusetts v. 3M Company, et al*., No. 25-cv-2083 (D. Minn.); *Earlville Community Fire Protection District v. 3M Company, et al*., No. 26-cv-02388 (D. Minn.); *County of San Mateo v. 3M Company, et al*., No. 26-cv-02380 (N.D. Cal.); *City and County of Butte-Silver Bow, Montana, et al. v. 3M Company, et al*., No. 25:cv-00036 (D. Mont.).

2021 WL 755083, at \*4 (J.P.M.L. Feb. 4, 2021). Consequently, a meaningful portion of the pending claims in MDL 2873 now necessarily arise from allegations about PFAS in turnout gear. The turnout gear claims in MDL 2873 generally allege that turnout gear is defective for containing PFAS, exposure to which is allegedly toxic to firefighters and others, and that defendants concealed and failed to warn about those risks—the same claims on which the Related Actions are premised.

This proposed MDL undeniably overlaps with MDL 2873. The Related Actions, brought by a total of 20 municipal plaintiffs, allege that PFAS-containing turnout gear causes "ongoing toxic exposure to firefighters and others." MDL 3191 Dkt. No. 1 at 2. Of those 20 municipal plaintiffs, at least 16 municipalities, and/or the individual firefighters serving them, have alleged in litigation already pending in MDL 2873 that the alleged "ongoing toxic exposure to firefighters and others" arises from PFAS-containing AFFF and/or turnout gear.

In other words, these 16 municipalities and/or the individual firefighters serving them allege PFAS exposure to the *same firefighters* within the *same municipalities* from the *same products* made by the *same defendants* in both MDL 2873 and in the Related Actions. It is no surprise, then, that this proposed MDL shares more than one common question of fact with MDL 2873 for Section 1407 transfer.[2] In order to resolve the claims in both litigations, the same core

---

[2] Section 1407 requires that one or more common questions of fact exist to support transfer. That requirement differs from class certification requirements under Fed. R. Civ. P. 23. *See In re 7-Eleven Franchise Antitrust Litig.,* 358 F. Supp. 286, 287 (J.P.M.L. 1973) ("The criteria for a class determination pursuant to Rule 23 of the Federal Rules of Civil Procedure are different from the criteria for transfer pursuant to 28 U.S.C. § 1407."). In particular, commonality is defined differently: Rule 23(a)'s commonality requirement "require[s] proof that class proceedings are capable of generating common *answers* across the class." *See, e.g.*, *Uber Techs., Inc. v. United States Jud. Panel on Multidistrict Litig.*, 131 F.4th 661, 669-70 (9th Cir. 2025). By supporting Section 1407 transfer here, Globe does not concede or otherwise support that nationwide or statewide class certification is appropriate in any of the Related Actions.

factual questions may be more efficiently addressed before one centralized forum for streamlined discovery and pretrial motions practice, including:

- Is turnout gear defective because some of it includes or has included a type of PFAS? Is it fit for its intended purpose?

- Does the type and amount of PFAS in components of turnout gear pose a risk to human health?

- Can PFAS migrate from turnout gear textiles during normal use in firefighting work?

- Do methods of storage and cleaning turnout gear affect any PFAS exposure?

- Can dermal exposure to PFAS in textiles cause bodily injury?

- Was each defendant aware that PFAS was in certain components of turnout gear?

- Did each defendant know of the alleged toxicity of PFAS in turnout gear? If so, did each defendant conceal that knowledge?

- Did each defendant fail to warn of the alleged dangers of PFAS in turnout gear to each plaintiff?

- Did each defendant misrepresent the safety of PFAS in turnout gear to each plaintiff?

- Were PFAS-free alternatives in turnout gear available in the market? Did plaintiffs choose to purchase them?

- What other sources of PFAS are firefighters exposed to? What other sources of PFAS were plaintiffs exposed to?

To be clear, many of the same municipalities (and firefighters serving them) that brought the Related Actions, as well as their law firms, raised these same questions in multiple cases pending in MDL 2873, in addition to now raising these questions in the Related Actions. Discovery in MDL 2873 is well underway, including on related general causation issues regarding PFAS and alleged diseases. Centralizing the Related Actions before Judge Gergel will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation, including by precluding duplicative litigation, inconsistent pretrial rulings, and other judicial inefficiencies, as Section 1407 was designed to do.

Globe understands that the Panel has been careful not to create an unwieldy PFAS MDL. Globe's request to transfer the Related Actions to MDL 2873 does not do that. Instead, Globe seeks to promote just and efficient management of the Related Actions, recognizing that the current scope of MDL 2873 includes turnout gear claims like those at issue in this proposed MDL. Because the alleged exposure of firefighters to PFAS in turnout gear (and AFFF) is already a central issue in MDL 2873, Globe believes transfer of the Related Actions to MDL 2873 in the District of South Carolina, or otherwise to Judge Gergel in a companion MDL proceeding, is most appropriate under Section 1407. Alternatively, centralization of the Related Actions before The Honorable Jeffrey M. Bryan in the District of Minnesota is otherwise appropriate, as Judge Bryan is already presiding over three of the five Related Actions and will hear motions to dismiss in one of those cases later this month.

## II.    Background

### A.    The Scope of MDL 2873

On December 7, 2018, the Panel centralized for pretrial proceedings 75 actions involving allegations that AFFF contaminated groundwater with allegedly toxic perfluorooctane sulfonate (PFOS) and/or perfluorooctanoic acid (PFOA). *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1392 (J.P.M.L. 2018). At the time, the Panel declined transferring other actions with the same defendant, 3M Company, if the case related to the "sale of PFAS or other PFAS-containing products," but not AFFF products. *Id.* The Panel found that the AFFF cases "share[d] factual questions concerning the toxicity of PFOA and PFOS and their effects on human health," and "to what extent, if any, defendants conspired or cooperated to conceal the dangers of PFOA and PFOS in their products," among other common questions. *Id.* at 1394. The Panel declined to include cases that involved "more varied defendants," "different modes of PFAS contamination, and different PFAS chemicals (whereas the AFFF actions are limited to PFOA and

PFOS contamination)." *Id.* at 1396. The Panel noted that "[s]uch an MDL could quickly become unwieldy." *Id.* An MDL focused on AFFF in groundwater alone would "undoubtedly . . . be a complex litigation from a judicial management perspective." *Id.* at 1396.

In 2021, the Panel expanded the scope of the AFFF MDL to include allegations that firefighters were "exposed to per- or polyfluoroalkyl substances (PFAS) through use of aqueous film-forming foams (AFFFs), which are used to extinguish fires, **and by wearing certain protective clothing and gear that allegedly contained PFAS**." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 WL 755083, at *1 (emphasis added). At this point, MDL 2873 was broadened to include claims about PFAS in turnout gear that also alleged AFFF contact, which the Panel called "direct exposure" cases. *Id.* at *2.

On December 12, 2024, the Panel denied transfer of claims brought by plaintiffs in one of the Related Actions, which were originally filed and subsequently voluntarily dismissed from the District of Connecticut. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig*., 765 F. Supp. 3d 1379 (J.P.M.L. 2024). The Panel made clear that an action alleging "claims solely for PFAS exposure through the use of TOG," would not be transferred to MDL 2873 if it did not also involve claims about direct exposure to AFFF. *Id.* at 1380.

On August 22, 2025, Judge Gergel entered Case Management Order ("CMO") 36 to address claims by "plaintiffs alleging PFAS-related injuries have sought to avoid the MDL and/or federal jurisdiction by denying, disclaiming, or omitting allegations concerning exposure to AFFF." *Id.* Judge Gergel explained that CMO 36 was part of the Court's "effort to manage its docket" by confirming that plaintiffs could not avoid MDL 2873 by alleging harm caused by non-AFFF PFAS. Judge Gergel recommended that the Panel transfer to MDL 2873 all cases alleging PFAS-related injuries that could involve AFFF exposure, including turnout gear-only claims. In

so ordering, Judge Gergel explained that "the record in this MDL and its related discovery has demonstrated that plaintiffs cannot, at the pleading stage, easily isolate personal injuries allegedly caused by AFFF as opposed to personal injuries allegedly caused by non-AFFF PFAS." *Id.*

On December 11, 2025, after the Panel "gave careful consideration to [Judge Gergel's] suggestions . . . that expanding [MDL 2873] to include . . . turnout gear-only actions, will enhance the efficiency of the litigation," it denied transfer of four actions to MDL 2873 involving allegations of exposure to PFAS in turnout gear. *See* MDL 2873 Dkt. No. 4062. The Panel explained that it "remain[ed] unconvinced that such expansion is prudent or necessary **at this time**." *Id.* at 2. (emphasis added).

### B.  <u>The Overlapping Litigation in MDL 2873 and the Related Actions</u>

There are currently thousands of cases, including at least one putative class action, within MDL 2873 alleging that PFAS in turnout gear causes harm. Among those actions are claims brought by the very municipalities, or firefighters that serve them, that now bring the Related Actions. These same municipalities and their firefighters (and their counsel) also have pending AFFF litigation in MDL 2873.

*Overlapping AFFF MDL Municipal Claims of Named Plaintiffs in Related Actions*

- The City of Santa Monica has a pending action in MDL 2873 alleging PFAS contamination from AFFF and turnout gear. *People of California v. 3M*, 24cv05975 (MDL 2873).

- The City & County of Butte-Silver Bow has a pending action in MDL 2873 alleging PFAS contamination from AFFF. *City-County of Butte-Silver Bow v. 3M*, 25cv12591 (MDL 2873).

- The Mayor & City Council of Baltimore has a pending action in MDL 2873 alleging PFAS contamination from AFFF. *Mayor & City Council of Baltimore v. 3M*, 22cv04312 (MDL 2873).

- Charles County, Maryland has a pending action in MDL 2873 alleging PFAS contamination from AFFF. *Charles County, MD v. 3M*, 25cv00882 (MDL 2873).

- The City of St. Louis has a pending action in MDL 2873 alleging PFAS contamination from AFFF. *City of St. Louis v. 3M*, 23cv02209 (MDL 2873).

- Kansas City, Missouri has a pending action in MDL 2873 alleging PFAS contamination from AFFF. *Kansas City, MO v. 3M*, 25cv09845 (MDL 2873).

- The City of Worcester has a pending action in MDL 2873 alleging PFAS contamination from AFFF. *City of Worcester v. 3M*, 24cv01911 (MDL 2873).

- The Borough of Emmaus has a pending action in MDL 2873 alleging PFAS contamination from AFFF. *Borough of Emmaus v. 3M*, 22cv01487 (MDL 2873).

- The City of Peabody has a pending action in MDL 2873 alleging PFAS contamination from AFFF. *City of Peabody v. 3M*, 23cv1168 (MDL 2873).

- The County of Monroe, which is where named Plaintiff the City of Rochester and the Rochester Fire Department are located, also has a pending action in MDL 2873 alleging PFAS contamination from AFFF. *Monroe County, NY v. 3M*, 25cv12549 (MDL 2873).

- Sixteen of the twenty municipalities were identified by plaintiffs in MDL 2873 as "contaminated sites" due to PFAS contamination from AFFF.

*Overlapping AFFF MDL Claims of Firefighters Located in Related Action Named Plaintiff Municipalities*

- A firefighter from the Rochester Fire Department in the City of Rochester, Ralph Evert, has personal injury claims alleging exposure to PFAS in the same defendants' turnout gear products in MDL 2873. *See Evert v. 3M*, 25cv9750 (MDL 2873).

- A firefighter from the Anniston Fire Department in Anniston, Alabama, David Eugene Randle II, has personal injury claims alleging exposure to PFAS in the same defendants' turnout gear products in MDL 2873. *Randle v. 3M*, 25cv00241 (MDL 2873).

- At least 69 additional firefighters serving the municipalities of Related Action plaintiffs Worcester, MA, Kansas City, MO, Baltimore, MD, Pine Bluff, AR, Stamford, CT, St. Louis, MO, San Mateo, CA (city & county), Anniston, AL, Markham, IL, Rochester, NY, Santa Monica, CA, Little Rock, AR, and Peabody, MA have personal injury claims pending in MDL 2873 alleging that their turnout gear was defective for allegedly containing PFAS. *See* Exhibit A. At least 68 more firefighters serving these municipalities and Related Action plaintiff Gary, IN have had their turnout gear claims dismissed from MDL 2873. *See* Exhibit B.

- A firefighter from the Santa Monica Fire Department in Santa Monica, California, Matthew Bailey, has personal injury claims in MDL 2873 alleging exposure to PFAS from AFFF, against many of the same defendants, connected with his work as a firefighter. *Bailey v.3M*, 22cv04654 (MDL 2873).

- Three firefighters from the Kansas City Fire Department in Kansas City, Missouri (Robert Bailey, Ryan Beasley, and Christopher DuPaul) have personal injury claims in MDL 2873 alleging exposure to PFAS from AFFF, against many of the same defendants, connected with their work as firefighters. *Bailey v. 3M*, 25cv07672 (MDL 2873); *Beasley v. 3M*, 23cv04399 (MDL 2873); *DuPaul v. 3M*, 22cv04032 (MDL 2873).

- Two firefighters from the Little Rock Fire Department in Little Rock, Arkansas (James Bramblett and Louis Hawley) have personal injury claims in MDL 2873 alleging exposure to PFAS from AFFF, against many of the same defendants, connected with their work as firefighters. *Bramblett v. 3M*, 22cv00089 (MDL 2873); *Hawley v. 3M*, 23cv03490 (MDL 2873).

*Overlapping Law Firms*

Several of the law firms representing plaintiffs in the Related Actions also represent plaintiffs in MDL 2873. For example, Grant & Eisenhofer has filed 33 complaints in MDL 2873, including one on behalf of the same named plaintiff in *City and County of Butte-Silver Bow*, Santa Monica, for turnout gear claims; Bliven Law Firm has two complaints, Cotchett, Pitre & McCarthy, LLP has one complaint, and Silver Golub & Teitell LLP has two complaints pending in MDL 2873.

In sum, four of the five Related Actions have parallel litigation pending in MDL 2873:

| Related Action | Parallel MDL 2873 Litigation |
|---|---|
| *City of Peabody, Massachusetts v. 3M Company, et al.*, No. 25-cv-2083 (D. Minn.) | • Peabody brought PFAS AFFF groundwater contamination claim<br>• Peabody was identified by plaintiffs in MDL 2873 as a "contaminated site" due to PFAS from AFFF in groundwater<br>• At least two individual firefighters in Peabody, Massachusetts have brought turnout gear claims in MDL 2873 |
| *City of Rochester, New York v. 3M Company, et al.*, No. 26-cv-02329 (D. Minn.) | • Individual firefighter brought turnout gear and AFFF direct exposure claim<br>• Monroe County (where Rochester sits) brought PFAS AFFF groundwater contamination claim<br>• Rochester was identified by plaintiffs in MDL 2873 as a "contaminated site" due to PFAS from AFFF in groundwater<br>• At least thirteen individual firefighters in Rochester, New York have brought turnout gear claims in MDL 2873 |
| *City and County of Butte-Silver Bow, Montana, et al. v.* | • Santa Monica brought turnout gear and AFFF claims |

| *3M Company, et al.*, No. 25:cv-00036 (D. Mont.). | • Butte-Silver Bow, Baltimore, Charles County, St. Louis, Kansas City, Worcester, and Emmaus each brought a PFAS AFFF groundwater contamination claim<br>• Individual firefighter from Anniston brought turnout gear and AFFF direct exposure claim<br>• Individual firefighters from Santa Monica, Kansas City, Anniston, and Little Rock brought AFFF direct exposure claims<br>• Emmaus, St. Louis, Anniston, Worcester, Kansas City, Baltimore, Little Rock, Butte, Gary, Pine Bluff, Oak Creek, Charles County, Santa Monica were all identified by plaintiffs in MDL 2873 as "contaminated sites" due to PFAS from AFFF in groundwater<br>• At least 119 individual firefighters from the municipality-plaintiffs have brought turnout gear claims in MDL 2873 |
|---|---|
| *County of San Mateo v. 3M Company, et al.*, No. 26-cv-02380 (N.D. Cal.) | • San Mateo was identified by plaintiffs in MDL 2873 as a "contaminated site" due to PFAS from AFFF in groundwater<br>• At least four individual firefighters in San Mateo, California have brought turnout gear claims in MDL 2873 |

### III.  <u>Legal Standard</u>

Centralization is appropriate when it will "eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary." *In re Class Action Settlement Admin. Litig.*, 812 F. Supp. 3d 1359, 1361 (J.P.M.L. 2025).

The Panel may consolidate new actions within existing multidistrict litigation that involve a common issue of fact. *See In re: Gaiam, Inc., Water Bottle Mktg., Sales Pracs. & Prods. Liab. Litig.*, 672 F. Supp. 2d 1373, 1375 (J.P.M.L. 2010) (noting that the most "vigorous" argument for an alternate to Section 1407 consolidation was inclusion in an existing MDL, but denying inclusion in the existing MDL because the claims involve different parties, facts, and theories.). Alternatives to consolidation become less feasible as the complexity of the litigation grows. *See, e.g. In re*

*Broiler Chicken Grower Antitrust Litig.,* 509 F. Supp. 3d 1359, 1360 (J.P.M.L. 2020). For example, where numerous state-law personal injury claims and consumer class actions overlap, consolidation under Section 1407 may be appropriate. *See In re Philips Recalled Cpap, Bi-Level Pap, & Mech. Ventilator Prods. Liab. Litig.*, 568 F. Supp. 3d 1408, 1410 (J.P.M.L. 2021); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 363 F. Supp. 3d 1378, 1381-82 (J.P.M.L. 2019) (centralizing consumer claims for economic damages with personal injury claims).

## IV.     Argument

"MDLs can naturally expand to encompass other claims involving the products at issue and presenting similar factual questions." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 WL 755083, at *1. Globe recognizes and respects that the Panel previously declined to expand MDL 2873 to include turnout gear-only claims. Globe respectfully petitions the Panel now to either define MDL 2873 as an MDL about PFAS in AFFF and Turnout Gear, which it has already grown to be, and transfer the Related Actions there, or create MDL 3191 and send it to MDL 2873's presiding judge, Judge Gergel. Doing so will best avoid duplicative discovery and inconsistent pretrial rulings about PFAS in AFFF and Turnout Gear, and conserve judicial and party resources. Alternatively, the District of Minnesota is the second most appropriate forum.

### A.     The Related Actions and Thousands of Cases in MDL 2873 Share Legal, Factual, and Scientific Issues—and the *Same* Plaintiffs, *Same* Defendants, *Same* Firefighters, and *Same* Turnout Gear

The Related Actions share numerous core factual and scientific issues with those pending before Judge Gergel in MDL 2873, including questions related to PFAS content in turnout gear and general PFAS causation questions, among others, as noted above. *See supra* at 3. Answering these questions will require the same fact discovery, expert discovery, causation analysis, and legal briefing. And the same parties on both sides will be answering these questions. Declining

centralization of the Related Actions in MDL 2873 or otherwise before Judge Gergel therefore would leave multiple lawsuits about the *same* turnout gear, the *same* alleged misrepresentations, and the *same* alleged conspiracy involving the *same* discovery and the *same* pretrial motions practice proceeding in separate courts across the country.

*The City of Rochester Brings a Related Action About PFAS in Turnout Gear – As Does a Rochester Fire Fighter in a Case Pending in MDL 2873.*

To illustrate, in one of the Related Actions, the City of Rochester has sued Globe and other turnout gear manufacturers, seeking costs to replace turnout gear because, they allege, turnout gear contains PFAS that is toxic to the Rochester firefighters who wear the gear. *See City of Rochester v. 3M*, 26-cv-2329 (D. Minn.). Pending within MDL 2873 is a case brought by Ralph Evert, who alleges exposure to the *same defendants'* turnout gear products which he allegedly wore as a firefighter for the City of Rochester. *Evert v. 3M*, 25cv9750 (MDL 2873), Compl. ¶ 13. Plaintiffs in *City of Rochester* and *Evert* cite to the same (and only) study in support of their allegations that Globe's turnout gear contains "high levels of PFAS." *Id*. ¶ 183. Both complaints allege that the turnout gear worn by firefighters in the City of Rochester was not labeled appropriately and "does not warn Plaintiff of the health risks associated with exposure to PFAS." *Id*. ¶ 207. Litigating *City of Rochester* and *Evert* will require substantially overlapping fact and expert discovery. Thus, permitting the two actions to proceed in separate courts creates judicial inefficiency and risks inconsistent pretrial rulings—precisely what Section 1407 was enacted to avoid.

*Anniston, Alabama Brings a Related Action About PFAS in Turnout Gear – As Does an Anniston Fire Fighter in a Case Pending in MDL 2873.*

Likewise, Anniston, Alabama is a named plaintiff in the Related Action pending in the District of Montana against Globe and other turnout gear manufacturers, seeking costs to replace turnout gear because, they allege, turnout gear contains PFAS that is toxic to the Anniston

firefighters who wear the gear.  *City and County of Butte-Silver Bow v. 3M*, 25-cv-2083 (D. Mont.). Pending within MDL 2873, is a case brought by David Eugene Randle II, who alleges exposure to PFAS through wearing the *same defendants'* turnout gear products as a firefighter for the Anniston Fire Department.  *Randle v. 3M*, 25cv00241 (MDL 2873), Compl. ¶¶ 171, 177.   Both complaints include causes of action for negligence, failure to warn, design defect, strict liability, breach of implied warranties, and punitive damages; allegations involving the risks of PFAS-containing firefighting turnout gear and other products; and the same defendants.  *Id.* ¶¶ 183-269.  Permitting Anniston's putative class action about the very turnout gear that Mr. Randle wore, which is at issue in his lawsuit in MDL 2873, to proceed in separate courts will require substantially overlapping fact and expert discovery, will create inefficiencies, and will risk inconsistent pretrial rulings.

*The City of Santa Monica Brings a Related Action About PFAS in Turnout Gear – And Has a Turnout Gear and AFFF Case Pending in MDL 2873, Brought by the Same Counsel.*

Furthermore, the City of Santa Monica, through the same counsel, has brought two lawsuits about alleged PFAS contamination from AFFF and turnout gear:  one pending in MDL 2873 about turnout gear and AFFF, *People of California v. 3M*, 24cv05975 (MDL 2873), and one in a Related Action about turnout gear only, *City and County of Butte-Silver Bow v. 3M*, 25-cv-2083 (D. Mont.). Both actions name Defendants 3M Corporation and the DuPont entities.  Absent centralization before Judge Gergel, both MDL 2873 and the District of Montana will hear precisely the same issue about the alleged harms of PFAS in Santa Monica's turnout gear, whether Santa Monica's turnout gear is defective for including PFAS, whether Santa Monica firefighters were at risk from this turnout gear, and whether Defendants 3M and DuPont failed to warn or misrepresented PFAS in turnout gear to Santa Monica.  The same discovery, fact issues, and expert causation issues are in play because the *same parties*, *same product*, and *same claims* are at issue, risking inconsistent pretrial rulings, judicial inefficiency, and even duplicative recovery.  It is neither just nor efficient

for Santa Monica to bring the same claims against the same defendants in two different courtrooms.

*Many More Firefighters Serving the Plaintiff-Municipalities in the Related Actions Have Claims Pending in MDL 2873 About the Very Same Turnout Gear.*

As noted above, at least an additional 69 firefighters serving the municipalities of Related Action plaintiffs Worcester, MA, Kansas City, MO, Baltimore, MD, Pine Bluff, AR, Stamford, CT, St. Louis, MO, San Mateo, CA (city & county), Anniston, AL, Markham, IL, Rochester, NY, Santa Monica, CA, Little Rock, AR, and Peabody, MA have personal injury claims pending in MDL 2873 alleging that their turnout gear was defective for allegedly containing PFAS. *See* Exhibit A. These cases are about the very same core legal and factual issues, and most notably, about the *very same sets of turnout gear* as at issue in the Related Actions. Dividing these claims across jurisdictions is not efficient, will almost certainly lead to duplicative pretrial efforts, and risks inconsistent pretrial rulings.

*Several Firefighters from the Municipalities that Brought the Related Actions Alleging that their Firefighters were Exposed to PFAS through Turnout Gear Have MDL 2873 Claims Alleging that PFAS in AFFF Caused Those Injuries.*

There are also several more personal injury filings in MDL 2873 that involve allegations from firefighters from the *exact same* fire departments at the heart of the Related Actions regarding PFAS contamination from only foam products, including the Santa Monica Fire Department, Kansas City Fire Department, Anniston Fire Department, and Little Rock Fire Department. *See Bailey v.3M*, 22cv04654 (MDL 2873); *Bailey v. 3M*, 25cv07672 (MDL 2873); *Beasley v. 3M*, 23cv04399 (MDL 2873); *DuPaul v. 3M*, 22cv04032 (MDL 2873); *Bramblett v. 3M*, 22cv00089 (MDL 2873); *Hawley v. 3M*, 23cv03490 (MDL 2873). These cases inherently involve overlapping fact and expert discovery because they involve the very same firefighters alleging the same PFAS-related injuries—albeit allegedly from different firefighter equipment—while working for the

same fire department, creating judicial inefficiency and risk of inconsistent rulings if the actions proceed separately.

*Given the Overlap in Plaintiffs, Not Transferring the Related Actions to Judge Gergel Could Allow Plaintiffs to Circumvent MDL 2873 Case Management Orders.*

Also worth noting, at least 68 firefighter plaintiffs from the fire departments at issue in the Related Actions had their turnout gear claims dismissed from MDL 2873 under Judge Gergel's rulings and plaintiffs' representations about which diseases are eligible for inclusion in MDL 2873 based on existing scientific literature. *See* Exhibit B. While the municipalities where those fire departments are located are not directly reasserting the firefighter plaintiffs' claims in the Related Actions, the Related Actions nonetheless involve closely related issues (*whether allegedly PFAS-containing turnout gear can cause bodily injury*), individuals (*the very same firefighters serving the municipalities*), and products (*the very same turnout gear allegedly purchased and worn*) If the Related Actions proceed outside of the District of South Carolina, Judge Gergel's prior rulings and existing case management orders in MDL 2873, designed to justly and efficiently manage the litigation, will be undermined.

*The Same Municipalities Leading the Related Actions Allege in MDL 2873 that AFFF in Groundwater Caused the Alleged Risk of PFAS Exposure*

Many of the municipalities in the Related Actions have also brought claims alleging that their populations risk exposure to PFAS from AFFF in groundwater. *See City-County of Butte-Silver Bow v. 3M*, 25cv12591 (MDL 2873); *People of California and The City of Santa Monica v. 3M*, 24cv05975 (MDL 2873); *Mayor & City Council of Baltimore v. 3M*, 22cv04312 (MDL 2873); *Charles County, MD v. 3M*, 25cv00882 (MDL 2873); *City of St. Louis v. 3M*, 23cv02209 (MDL 2873); *Kansas City, MO v. 3M*, 25cv09845 (MDL 2873); *City of Worcester v. 3M*, 24cv01911 (MDL 2873); *Borough of Emmaus v. 3M*, 22cv 01487 (MDL 2873); *City of Peabody v. 3M*,

23cv1168 (MDL 2873). *Cf. Monroe County, NY v. 3M*, 25cv12549 (includes City of Rochester Fire Department, which sits within Monroe County). Moreover, fourteen of the twenty municipalities that brought the Related Actions were identified by plaintiffs in MDL 2873 as "contaminated sites" due to PFAS from AFFF in groundwater. At issue in the Related Actions will be the various sources of PFAS to which the firefighters serving these municipalities were exposed, including allegedly contaminated groundwater and AFFF at issue in the municipalities' parallel litigation in MDL 2873, necessitating the same expert and factual discovery in the Related Actions as in those municipalities' parallel cases pending in MDL 2873.

Significantly, the municipal plaintiffs' RICO claims in the Related Actions are based upon the same alleged conduct at issue in MDL 2873. For example, in one of the Related Actions, *Earlville Community Fire Protection District*, Plaintiff alleges Defendants made false and misleading representations to federal agencies which obstructed the agencies from identifying the harm or exposure limits for "PFAS-laden Aqueous Film Forming Foam ("AFFF") and Turnout Gear." *Earlville Community Fire Protection District v. 3M*, 26cv02388 (MDL 2873), Compl. ¶ 273. Plaintiff also alleges, in support of its RICO claims, that Defendants "conceal[ed] the dangers caused by their PFAS products" generally—not just in turnout gear. *Id.* ¶ 114. Because the RICO claims in the Related Actions encompass all of Defendants' "PFAS products," they involve the same conspiracy allegations about AFFF (and turnout gear) at issue in MDL 2873. *Id.* ¶¶ 114, 129, 140.

*A Putative Class Action Alleging that Defendants' Turnout Gear is Defective Is Already Pending in MDL 2873.*

Finally, a putative class action alleging that the same defendants as those named in the Related Actions produced "defective" and "inherently dangerous" turnout gear products has been pending in MDL 2873 since 2023. *See Frank Ogden v. 3M, et al.*, 23cv4631 (MDL 2873). As in

the Related Actions, *Ogden* alleges that PFAS is in turnout gear, that turnout gear exposes firefighters to PFAS, that PFAS in turnout gear causes adverse human health effects, that defendants concealed the dangers of PFAS in turnout gear, and that alternatives to PFAS in turnout gear were feasible, citing to the *same* purportedly supporting studies and sources. *Id.* The Related Actions and *Ogden* will address the exact same issues, and the proposed class definitions in the Related Actions encompass the claims in *Ogden*.

In light of the above overlapping and duplicative parallel litigation between the Related Actions and those pending in MDL 2873, "centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification and *Daubert* motions; and conserve the resources of the parties, their counsel, and the judiciary." *In re Valsartan,* 363 F. Supp. 3d at 1381.

### B.       Adjudication of the Issues in the Related Actions is Well Underway in MDL 2873

Turnout gear cases have been pending in MDL 2873 for several years. During that time, Judge Gergel has entered numerous CMOs and other orders setting forth processes to litigate the turnout gear claims, including how to manage fact sheets, discovery, case timelines, proof requirements, and dismissals.

Naturally, because MDL 2873 already includes a multitude of cases involving the same parties and issues as the Related Actions, the discovery requests are already duplicative. A set of document requests served in *City and County of Butte-Silver Bow*, for example, sought nearly the same information from Globe and other defendants that those defendants already produced in MDL 2873, including communications among defendants about PFAS and alleged health effects, communications with firefighter unions and fire departments about PFAS in turnout gear, information about alternatives to PFAS in turnout gear, turnout gear sales information, turnout

gear marketing materials, and supplier and distribution agreements, among others. Plaintiffs in MDL 2873 have served four sets of discovery requests on the turnout gear defendants. Defendants have produced thousands of documents in response. To restart that discovery in the Related Actions is duplicative, inefficient, and overly burdensome.

Plaintiff discovery is also underway in the turnout gear claims. To date, over 15,000 plaintiffs have filed turnout gear plaintiff fact sheets in MDL 2873, including firefighters from fire departments at issue in the Related Actions. These plaintiff fact sheets provide information about the fire departments in the Related Actions, including the frequency with which firefighters in the Related Action municipalities used their gear, how they cleaned their gear, and what brands of gear were used – precisely what will be the subject of discovery in the Related Actions.

Moreover, Judge Gergel is addressing scientific causation issues for the AFFF allegations in MDL 2873. AFFF personal injury causation challenges are relevant to the turnout gear claims because, if plaintiffs are unable to advance valid scientific evidence that the types of PFAS in AFFF can cause harm through ingestion, then they certainly cannot do so for claims based on alleged risks of PFAS in turnout gear, as turnout gear claims involve a different type of PFAS, different dose, and different exposure vector. These scientific causation issues are incredibly complex, particularly where they involve a class of thousands of chemicals and multiple alleged disease associations, and Judge Gergel's familiarity with overseeing related scientific issues further promotes the just and efficient conduct of the Related Actions.

### C.    The Related Actions Should Be Consolidated Before Judge Gergel Because He Has "Unparalleled Familiarity" with the Core Issues

Judge Gergel is undoubtedly the most experienced federal district judge in overseeing claims about PFAS in turnout gear. Over the past several years, Judge Gergel has developed immense knowledge and experience in the issues that predominate in both the AFFF and turnout

- 17 -

gear cases, including foundational causation issues.

Even when a set of cases is not appropriate for inclusion in an MDL, the Panel may still consolidate and transfer those cases to the judge that presided over a similar MDL, recognizing the judge's "unparalleled familiarity" with the central issues in the litigation.  *See In re Broiler Chicken Grower Antitrust Litig. (No. III*), 813 F. Supp. 3d 1363, 1365 (J.P.M.L. 2025) (consolidating a new MDL before the judge who presided over a recently-resolved and substantially similar MDL because he had "unparalleled familiarity  with the claims and issues in this litigation, as he presided over the related actions . . . for nearly eight years."); *In re Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Non-Arteritic Anterior Ischemic Optic Neuropathy Prods. Liab. Litig.,* 813 F. Supp. 3d 1353, 1354 (J.P.M.L. 2025) (consolidating a new MDL before the judge overseeing an existing MDL with "substantial overlap" between pretrial proceedings because the judge "is uniquely well-positioned to advance [the new MDL] efficiently.").

Based on his "unparalleled familiarity" with litigation involving claims of PFAS in turnout gear, Judge Gergel has concluded that AFFF and turnout gear claims belong together.  In CMO 36 in MDL 2873, Judge Gergel sought to prevent plaintiffs from circumventing MDL 2873 by alleging harm caused by non-AFFF PFAS, such as PFAS in turnout gear, and consequently recommended that the Panel transfer to MDL 2873 all cases alleging PFAS-related injuries that could involve AFFF exposure, including turnout gear-only claims.  In so ordering, Judge Gergel reasoned that personal injuries allegedly caused by AFFF and personal injuries allegedly caused by non-AFFF PFAS like turnout gear could not be "easily isolate[d]" at the pleading stage.  So too here:  isolating PFAS in turnout gear claims from cases alleging injury from PFAS in both turnout gear *and* AFFF is untenable.

**D.**     **In the Alternative, the District of Minnesota is the Second Most Appropriate Forum for Coordination of the Related Actions**

If the Panel does not transfer the Related Actions for pretrial proceedings in the District of South Carolina before Judge Gergel, the District of Minnesota is the second most appropriate forum.   As a threshold matter, Minneapolis offers a geographically central and convenient location for all parties and witnesses, the majority of whom are situated in the eastern half of the United States. The Minneapolis-St. Paul airport is a Delta Airlines hub with over nine hundred daily flights, including direct service to and from most plaintiff locations and defendant headquarters, with multiple daily nonstop options to major cities.  Moreover, 3M, a defendant in every case and the subject of extensive allegations regarding its role in manufacturing PFAS, is headquartered in St. Paul, Minnesota.  Any discovery in these cases will necessarily involve a significant number of 3M witnesses located in the District.

Minnesota is also an appropriate home for this litigation because more turnout gear class actions—three of the five—have been filed in the District of Minnesota than in any other district. All three cases are before Judge Bryan, who has presided over numerous products liability and other complex civil cases, including a recent matter involving allegations about exposure to PFAS. The *Peabody* action will have fully briefed motions to dismiss and be heard by Judge Bryan on June 23, 2026.  Judge Bryan's experience with PFAS-related litigation makes him well-suited to manage the Related Actions in what would be his first MDL.

In contrast, the remaining forums in which related actions are pending—the Northern District of California and the District of Montana—are geographically distant from the vast majority of parties.  Montana is particularly remote as it requires nearly a full day of travel from the eastern United States to and from, for any court appearance, and offers limited flights per day to and from the East Coast.

For these reasons, the District of Minnesota is the second most logical and efficient forum for centralization of the Related Actions in an MDL.

## V.      <u>Conclusion</u>

For the reasons outlined above, Globe supports the Panel's centralization of the five Related Actions in MDL 2873 before Judge Gergel in the District of South Carolina, or in a new MDL before Judge Gergel.  In the alternative, if the Related Actions are not consolidated before Judge Gergel, centralization before Judge Bryan in the District of Minnesota is the second most appropriate forum.

Dated: June 3, 2026

Respectfully,

/s/ *James L. Stengel*
James L. Stengel
ORRICK, HERRINGTON
& SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
jstengel@orrick.com

*Attorney for Globe Manufacturing
Company, LLC*