**BEFORE THE**
**UNITED STATES JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: FIREFIGHTER TURNOUT GEAR MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION** | **MDL DOCKET NO. 3191**<br><br>**This Document Relates To:**<br><br>*City of Rochester v. 3M Company et al.*, No. 0:26-cv-2329 (D. Minn.)<br><br>*City of Peabody v. 3M Company et al.*, No. 0:25-cv-2083 (D. Minn.)<br><br>*Earlville Committee Fire Protection District v. 3M Company et al.*, No. 0:26-cv-2388 (D. Minn.)<br><br>*County of San Mateo v. 3M Company et al.*, No. 3:26-cv-2380 (N.D. Cal.)<br><br>*City of Butte-Silver Bow et al. v. 3M Company et al.*, No. 2:25-cv-00036 (D. Mont.) |

**Table of Contents**

I.     INTRODUCTION ........................................................................................................... 1

II.    FACTUAL BACKGROUND.......................................................................................... 3

    A.   Background of the Related Actions ................................................................. 3

    B.   Scope of the AFFF MDL .................................................................................. 4

III.   ARGUMENT.................................................................................................................. 5

    A.   Movant and the Related Actions Present Common Questions of Fact that Are Already Being Litigated in the AFFF MDL And Thus Will Result in Duplicative Discovery Efforts and Have the Potential to Result in Inconsistent Rulings. ............................................................. 5

    B.   The AFFF MDL Involves the Same Defendants, Same Plaintiffs, Same Legal Issues and Same Damages Already at Issue in the AFFF MDL. ................................................................. 7

    C.   Deference Is Owed to the Defendants Who Do Not Oppose Transfer of the Related Actions to the AFFF MDL Should the Panel Determine Consolidation is Warranted. ............ 11

    D.   Movant's Argument that the District of South Carolina is Not an Appropriate Transferee Forum is Without Merit. ....................................................................... 11

    E.   Creating a Separate Turnout Gear MDL Could Result in Forum Shopping and Potential Claim-Splitting Problems. ................................................................. 14

    F.   Now Is the Time to Transfer Turnout Gear-Only Cases to the AFFF MDL. ................... 16

    G.   Counsel for the Related Actions Can Have a Role in the AFFF MDL............................. 17

IV.    CONCLUSION.............................................................................................................. 17

## Table of Authorities

**Cases**

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 U.S. Dist. 21511 (J.PM.L. Feb. 4, 2021). ...................................................................................................................... 4, 5, 9, 14

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2026 U.S. Dist. LEXIS 73301 (J.P.M.L. Apr. 2, 2026)............................................................................................................... 8

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391 (J.P.M.L. 2018) 2, 4

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 765 F. Supp. 3d 1379 (J.P.M.L. 2024) . 5

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, Order Denying Transfer (J.P.M.L. Dec. 11, 2025)...................................................................................................................... 5

*In re Soclean, Inc.*, 585 F. Supp. 3d 1355 (J.P.M.L. 2022) ........................................................... 10

**Statutes**

28 U.S.C. § 1407................................................................................................................... 7

**Rules**

Fed. R. Civ. P. 23(b)(3)............................................................................................................ 11

J.P.M.L. R. 6.2(e)..................................................................................................................... 1

**INTERESTED PARTY RESPONSE OF PLAINTIFFS' CO-LEAD COUNSEL OF THE
IN RE AQUEOUS FILM FORMING FOAMS MULTIDISTRICT LITIGATION**

Pursuant to Rule 6.2(e) of the Rules of Procedure for the United States Judicial Panel on

Multidistrict Litigation ("JPML" and/or "Panel"), Plaintiffs' Co-Lead Counsel ("Plaintiffs' Lead

Counsel") in the *Aqueous Film Forming Foams Prods. Liab. Litig.*, MDL No. 2873 ("AFFF

MDL"), submit this Interested Party Response as *Amicus Curiae*, and join in the aspect of

Defendants' respective Responses[1] to the City of Rochester's Motion for Centralization and

Transfer of Related Actions to the District of Minnesota for Consolidated and Coordinated Pretrial

Proceedings ("Motion to Transfer") to the extent that each Defendant supports transfer of these

actions to the District of South Carolina to become part of the AFFF MDL pending before the

Honorable Richard M. Gergel.[2]

## I. INTRODUCTION

Movant, the City of Rochester ("Movant"), asks the Panel to transfer its case and four other

similar actions[3] to the District of Minnesota and specifically to Judge Bryan.[4] In the Related

Actions, the Plaintiffs all operate fire departments and allege that they purchased toxic per- and

---

[1] These Responses include: (a) Response of W.L. Gore & Associates, Inc., EIDP, INC., DuPont de Nemours, Inc., The Chemours Company, the Chemours Company FC, LLC, Corteva, Inc., and Stedfast USA, Inc. in Opposition to the City of Rochester's Motion for Centralization (opposing consolidation but finding the District of South Carolina a "compelling alternative") [ECF No. 53 at 2]; (b) Joint Response by Defendants Honeywell Safety Products USA, Inc., Morning Pride Manufacturing, LLC, Lion Group, Inc., Fire-Dex, LLP, and Southern Mills, Inc. d/b/a Tencate Protective Fabrics (arguing the District of South Carolina is an "appropriate forum") [ECF No. 56 at 3]; (c) 3M Company's Response (finding transfer to the AFFF MDL to be "the most efficient course") [ECF No. 57 at 2]; (d) Globe Manufacturing Company, LLC's Response (arguing the District of South Carolina is the "far superior home for the Related Actions") [ECF No. 59 at 1]; (e) Elevate Textiles, Inc. and Safety Components Fabric Technologies, Inc., Joinder of Globe Manufacturing's Response [ECF No. 61]; (f) Milliken & Company's Joinder in Gore's Response (opposing new MDL but supporting transfer to the AFFF MDL if consolidation is warranted) [ECF No. 58].

[2] Importantly, to the extent that the JPML decides that consolidation of these cases is warranted, none of the Defendants have opposed transfer and consolidation of these cases to the AFFF MDL.

[3] *City of Peabody, Massachusetts v. 3M Co., et al.*, No. 25-cv-2083 (D. Minn.)("Peabody"); *Earlville Cmty. Fire Prot. Dist. v. 3M Co., et al.*, No. 26-cv-02388 (D. Minn.)("Earlville"); *Cnty. of San Mateo v. 3M Co., et al.*, No. 26-cv-02380 (N.D. Cal.)("San Mateo"); *City and Cnty. of Butte- Silver Bow, Montana, et al. v. 3M Co., et al.*, No. 25:cv-00036 (D. Mont.)("Montana Plaintiffs")("Related Actions.").

[4] Motion to Transfer, at 2.

polyfluoroalkyl substances ("PFAS")-containing turnout gear for their fire departments and seek to recover the costs of purchasing the turnout gear, and replacement of property contaminated by PFAS, including, but not limited to, the costs of replacing the PFAS-laden turnout gear with a PFAS-free alternative.[5]

Movant argues that consolidation and centralization of the Related Actions would benefit the Related Actions because they involve common questions of fact and centralization will serve the convenience of the parties and witnesses, and promote the just and efficient adjudication of the Related Actions.[6] However, the common questions identified by Movant[7] are central questions that have already been raised and litigated in the AFFF MDL, and significant discovery, both written and testimonial, has already been conducted on the exact topics that Movant claims are central to the Related Actions.

Respectfully, creating a parallel MDL to relitigate the precise matters at issue in the AFFF MDL, not only undermines the efficient administration of MDL 2873 but also creates a very real chance of inconsistent rulings on nearly identical topics, including, for example, the central issue of PFAS toxicity, and results in significant duplicative discovery efforts in two separate venues. When this Panel ordered consolidation of the AFFF MDL, it cited "[s]ignificant common discovery and pretrial motion practice pertaining to liability and general causation," as a basis that all AFFF actions should be transferred. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1395 (J.P.M.L 2018). The same rationale applies now, and is arguably even stronger, for transferring the Related Actions to the AFFF MDL.

---

[5] Movant Compl. at ¶¶ at 1-4, 19-20 [ECF No. 1-4]; *Earlville* Compl., at ¶¶ 2, 23-25, 27-28 [ECF No. 2-4]; *San Mateo* Compl., at ¶¶ 1-2, 5-6, 15 [ECF No. 1-7]; Montana Plaintiffs, at ¶¶ 9, 19-20, 21-137[ECF No. 2-5]; *Peabody* Compl., at ¶¶ 1-3, 14-16 [ECF No. 1-5].

[6] Motion to Transfer, at 4-5.

[7] *Id*. at 4.

The litigants and AFFF MDL Transferee Court, now in its eighth year, have significant institutional knowledge in the legal, scientific, and factual issues central to the Related Actions. The Court, counsel, and the parties have collectively invested years of effort and tens upon tens of millions of dollars in discovery, motion practice, and case management, all of which directly bears on the claims asserted in the Related Actions. Transferring the Related Actions to the AFFF MDL will promote judicial efficiency, eliminate the risk of duplicative and inconsistent rulings, protect the integrity of ongoing proceedings, and serve the convenience of the parties and witnesses. By contrast, creating a separate MDL would fracture related litigation, require courts and litigants to retrace the same ground already covered in the AFFF MDL, and potentially expose plaintiffs with claims in both MDLs to the real risk of conflicting orders, duplicative discovery obligations, potential allegations of claim-splitting and forum shopping, and would unnecessarily complicate potential resolution of those cases already pending in the AFFF MDL that seek damages related to turnout gear. All matters that the MDL system was designed to prevent.

## II.    FACTUAL BACKGROUND

### A.    Background of the Related Actions

Turnout gear is a type of personal protective equipment ("PPE") that is worn by firefighters to protect them from heat, flames, and hazardous substances encountered during firefighting operations, and typically includes a jacket, pants, helmet, gloves, boots, and a hood. The Related Actions allege that, for decades, turnout gear has been laden with PFAS, and that the PFAS migrates out of the turnout gear during its use and storage, causing dangerous exposure to PFAS and property contamination.[8]

---

[8] *See e.g.*, Movant Compl., at ¶ 4.

The Plaintiffs in the Related Actions are municipalities, counties, and fire departments that purchased and provided PFAS-containing turnout gear to their firefighters. The Related Actions involve the same group of Defendants, all but one of which is also a Defendant in the AFFF MDL,[9] and allege that Defendants knew about but concealed the dangers associated with PFAS, and seek to recover, as noted above, the costs associated with the purchase of the PFAS-laden turnout gear, and costs associated with the remediation of property contaminated with PFAS, including in fire stations and training facilities, replacement turnout gear and other economic damages flowing from Defendants' alleged misconduct.

### B.        Scope of the AFFF MDL

As the Panel is aware, the AFFF MDL was established in December 2018 to coordinate and consolidate actions involving aqueous film-forming foam ("AFFF") to "serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018). Since that time, the Panel has transferred cases involving turnout gear to the AFFF MDL. *See, e.g.*, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873, 2021 U.S. Dist. LEXIS 21511, at *4, *9 (J.P.M.L. Feb. 4, 2021) (noting that hundreds of firefighter actions alleging exposure to AFFF and turnout gear have been directly filed into MDL No. 2873 and holding that personal injury cases on behalf of firefighters alleging exposure to both turnout gear and AFFF should be transferred to the AFFF MDL.).

While the Panel has, to date, declined to transfer certain turnout gear-only cases to the AFFF MDL, *e.g.*, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 765 F. Supp. 3d 1379,

---

[9] Furthermore, the one Defendant named in the Related Actions which is not a current litigant in the AFFF MDL, Intertech Group, Inc., has a  subsidiary PBI Performance Products, Inc., that is a current Defendant in the MDL No. 2873.

1381 (J.P.M.L. 2024), the Panel's most recent ruling on the issue reserved the question explicitly for a future date. In denying a request to transfer a turnout gear-only case, the Panel stated that it was not convinced that transferring the turnout gear-only cases was "prudent or necessary *at this time.*" *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, Order Denying Transfer (J.P.M.L. Dec. 11, 2025) [AFFF MDL ECF No. 4062] (emphasis added). That "at this time" qualification is significant: the Panel expressly left open the possibility that circumstances might change to make transfer appropriate. Those circumstances have now materially changed and thus the Related Actions should be transferred to the AFFF MDL. And, importantly, "MDLs can naturally expand to encompass other claims involving the products at issue and presenting similar factual questions. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 U.S. Dist. 21511, at *3 (J.PM.L. Feb. 4, 2021).

### III.    <u>ARGUMENT</u>

**A.    Movant and the Related Actions Present Common Questions of Fact that Are Already Being Litigated in the AFFF MDL And Thus Will Result in Duplicative Discovery Efforts and Have the Potential to Result in Inconsistent Rulings.**

The key common questions of fact identified by the Movant, City of Rochester, as driving the putative need for an additional MDL are the *same* issues of fact that have been, and continue to be, litigated in the AFFF MDL. Specifically, the Movant identifies the following as among the central common questions in the proposed MDL:[10]

- PFAS toxicity;
- The degree to which PFAS poses a contamination risk to individuals wearing or otherwise handling PFAS turnout gear;
- The degree to which PFAS turnout gear contaminates areas in which it is used, stored, and cleaned; and
- Defendants' knowledge and concealment of, and collusion regarding, the risks associated with PFAS turnout gear.

---

[10] Motion to Transfer, at 4.

Importantly, each of these issues is already the subject of active, extensive discovery in the AFFF MDL (much of which is completed). As to the question of PFAS toxicity generally, the AFFF MDL Court has overseen years of fact and expert discovery on PFAS toxicology, epidemiology, exposure pathways, and Defendants' corporate knowledge regarding same. As it pertains to DuPont and 3M specifically, over 25 depositions of these two Defendants have been taken in the AFFF MDL covering the range of specific topics related directly to PFAS toxicity. Moreover, there have been multiple rounds of expert reports on the topic of PFAS toxicity served by both plaintiffs and defendants, *Daubert* briefing on these topics, and AFFF MDL rulings on *Daubert* challenges on these very issues. Beginning this process again would not only undoubtedly result in duplicative discovery efforts but likewise could result in inconsistent rulings insofar as these and many other *Daubert* rulings have already been issued in the AFFF MDL.

There are nearly twenty thousand cases alleging personal injury and/or property damage resulting from exposure to the PFAS in turnout gear that are already pending in the AFFF MDL.[11] Not surprisingly, therefore, discovery of the turnout gear cases has already occurred, including on the other three questions Movant asserts are common with respect to the proposed new MDL, *i.e.*, "[t]he degree to which PFAS poses a contamination risk to individuals wearing or otherwise handling PFAS turnout gear; [t]he degree to which PFAS turnout gear contaminates areas in which it is used, stored, and cleaned; and Defendants' knowledge and concealment of, and collusion regarding, the risks associated with PFAS turnout gear. These discovery efforts include service of turnout gear specific discovery as follows:

---

[11] To date, 19,784 plaintiffs have served Plaintiff Fact Sheets alleging exposure to turnout gear.

- Over 750 Requests for Production on Defendants 3M, DuPont, Elevate Textiles,[12] Fire-Dex, Globe Manufacturing Company, LLC, Honeywell Safety Products USA,[13] Innotex Corp., Lakeland Industries, Lion Group, Inc., Milliken & Company, PBI Performance Products, Stedfast USA, Inc., Southern Mills d/b/a Tencate Protective Fabrics USA, and W.L. Gore Associates.[14]

- In response to this discovery, these Defendants have produced over 2 million pages of documents. In addition, 3M and DuPont have produced tens of millions of pages of documents related to PFAS more generally.

- Two motions to compel were filed against turnout gear Defendants to assist in ensuring full productions of documents from these Defendants.

- A total of 416 interrogatories have been served on the turnout gear defendants.[15]

In short, turnout gear cases were not an afterthought in the AFFF MDL—they have been a significant and carefully managed component of that litigation for years.

Permitting a separate MDL to proceed on the same matter would subject Defendants to massive duplication of discovery efforts, likely require the retention of overlapping expert witnesses on identical scientific questions, and impose needless burdens on courts and counsel alike. Of course, as noted below, the likely problem of claims splitting is also very real. Squandering judicial and party resources in this fashion is antithetical to the purposes of 28 U.S.C. § 1407.

**B.    The AFFF MDL Involves the Same Defendants, Same Plaintiffs, Same Legal Issues and Same Damages Already at Issue in the AFFF MDL**.

---

[12] Safety Components Fabric Technologies, Inc. (SCI), a subsidiary of Elevate Textiles, is likewise named as an AFFF MDL defendant.

[13] Of note, Honeywell Safety Prods. USA is the same as Defendant Morning Pride Manufacturing.

[14] Many of these discovery demands were served as early as 2021, and updates to the AFFF MDL Court as to the progress of turnout gear discovery has been noted and detailed extensively in Joint Status Reports submitted to the Court since as early as 2022.

[15] Again, this number does not take into account the significant number of Requests for Production and Interrogatories that were served on Defendants 3M and DuPont related to PFAS more generally.

Beyond the discovery overlap, the legal and factual issues in the Related Actions match those in cases already pending in the AFFF MDL, including, as noted above, the same general issues related to PFAS toxicity and causation arguments. This will involve the same types of fact and expert discovery already undertaken in the AFFF MDL. Moreover, the exact same Defendants will be engaged in litigating these same issues a second time. Effectively, there are fourteen Defendants named in the turnout gear cases outside the AFFF MDL, all of these same specific turnout gear defendants have long been at issue (and named Defendants) in the AFFF MDL, many of which first appeared as early as 2021.

Importantly, as set out in Defendant Globe Manufacturing Company, LLC's Response to Movant City of Rochester's Motion for Centralization and Transfer Pursuant to 28 U.S.C. § 1407 ("Globe Response"), the Related Actions involve the same plaintiffs that have cases already pending in the AFFF MDL related to the same turnout gear.[16] Because this Panel has ruled that where AFFF allegations are disclaimed in a complaint but the same contamination site is the subject of personal injury claims alleging AFFF exposure, transfer to the AFFF MDL is warranted to avoid duplicative discovery. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2026 U.S. Dist. LEXIS 73301, *5-6 (J.P.M.L. Apr. 2, 2026)(stating that one way of demonstrating that a case without AFFF allegations belongs in the AFFF MDL is by showing that the "action involves overlapping water supplies, such that the actions will entail duplicative discovery and pretrial motion practice."). The same effect applies to the Related Actions: however, rather than water supplies, personal injury plaintiffs in the AFFF MDL are alleging injury resulting from exposure to PFAS in turnout gear at the same fire departments that are the subject of the Related Actions.

---

[16] Globe Response, at 11-16.

Because the exposure site is the same fire departments where allegations related to AFFF exposure are likewise being made, the Related Actions will necessarily involve duplicative discovery.

Moreover, many of the plaintiffs currently in the AFFF MDL assert the exact same types of claims and damages as the plaintiffs in the Related Cases, namely having to seek  the costs of replacing PFAS-containing turnout gear with PFAS-free alternatives and/or remediating firehouses to remove PFAS contamination that resulted from migration of PFAS off the turnout gear.[17] Allowing identical or overlapping claims to be litigated simultaneously in two separate MDLs invites inconsistent outcomes that could unfairly prejudice plaintiffs in both proceedings. This could also mean that plaintiffs with claims pending in the AFFF MDL would also be putative class members in the proposed new MDL, should it be created. As discussed below, such splitting of claims should be avoided. *See generally, In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 21511, *8 (J.P.M.L. Feb. 4, 2021)(indicating a disfavor of claim splitting in the AFFF MDL). Creating a separate MDL would therefore expose these individuals and entities to the prospect of being bound by judgments entered by two different courts on the same claims or require massive numbers of opt-outs from the class actions being litigated by the

---

[17] By analogy, these types of claims are already being negotiated as part of a class action settlement involving the Carrier Global Corporation Defendant in the AFFF MDL, as set forth in the Notice of Entry Into Plan Support Agreement ("Plan Support Agreement Notice"), dated October 18, 2024, at page 3 ("Whereas, on account of the resolution of and in exchange for the Independent AFFF Causes of Action of the consenting holders of Airport Claims and Water provider Claims assertable directly against Carrier, Carrier has agreed, among other things, to (a) pay $60.8 million to the consenting holders of the Airport Claims if the Airport Claimants Threshold is met, (b) pay $129.2 million to the consenting holders of the Water provider Claims if the Water Provider Claimants Threshold is met, and (c) share certain of the proceeds of the Insurance Policies with the holders of such Claims, ass as set forth in summary form in the Settlement Term Sheet, and as will be more fully set forth in the MDL Class Action Settlement Agreements"  [ECF No. 1570] in the Kidde Fenwal bankruptcy case pending in the United States Bankruptcy Court for the District of Delaware, which bears Bankruptcy Case Number 23-10638 (LSS) and the Notice of Filing of Revised Disclosure Statement for the Fifth Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code at page 31 [ECF No. 2587].  However, the airport claims against Carrier, for its liability will be addressed in the AFFF MDL, not the bankruptcy Court. See, Plan Support Agreement Notice at page 3. Indeed, the tentative and soon to be proposed class action settlement will include municipalities that own airports that seek damages for the PFAS in their soil due to training and usage of AFFF, as well as damages for replacement of equipment including but not limited to replacement of AFFF foam spraying devices with safer alternates and turnout gear worn by firefighters at the airports with PFAS-free alternatives.

proposed turnout gear MDL. This is precisely the type of procedural mess that transfer to a single, coordinated MDL is designed to prevent.

Similarly, the Panel generally avoids the creation of two entirely distinct MDLs where similar facts are present, which makes sense given the goal of an MDL is efficiency, avoidance of duplicative discovery, elimination of inconsistent pretrial rulings and conservation of the resources of the parties and the court, and having two MDLs with overlapping facts in two different district courts before two different judges undermines these paramount goals. *See, e.g.*, *In re Soclean, Inc.*, 585 F. Supp. 3d 1355, 1357 (J.P.M.L. 2022)(transferring *In re Soclean, Inc.*, MDL No. 3021, to the same judge as the *In re Philips Recalled CPAP, Bi-Level PAP, and Mech. Ventilator Prods. Liab. Litig.*, MDL No. 3014, because of overlapping facts and because the judge there was "uniquely situated to preside over the overlapping claims in the SoClean MDL" given her institutional knowledge of the facts from the existing MDL). This is precisely the circumstances here. Judge Gergel too is uniquely situated to preside over the Related Actions having by far the greatest experience overseeing PFAS litigation generally and turnout gear cases specifically.

Potential resolution of claims involving exposure to PFAS-laden turnout gear is likewise complicated by virtue of having similar claims against the same Defendants in two separate MDLs. By way of example, if Co-Lead Counsel in the AFFF MDL were to negotiate a proposed class settlement on behalf of plaintiff entities (fire departments, municipalities, counties and/or Sovereigns) that included fire departments seeking costs to replace turnout gear, the plaintiffs in the parallel MDL could oppose such a class settlement creating chaos in the resolution process. Negotiating resolutions in the context of a large MDL is already complex given the significant number of stakeholders, adding another entire MDL with the same claims would undoubtedly

make it even more difficult. Again, MDL centralization is specifically designed to avoid such predicaments.

Finally, the fact that claims of this type are already proceeding in an individualized fashion is proof positive that a class action is not needed to pursue these types of damages, or if it is to be pursued, it can be pursued in the AFFF MDL, which is overseeing numerous different AFFF/PFAS class actions, and also has certified four settlement classes to date.[18] As such, this undermines the likelihood that Plaintiffs in the Related Actions will be successful in establishing that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### C. Deference Is Owed to the Defendants Who Do Not Oppose Transfer of the Related Actions to the AFFF MDL Should the Panel Determine Consolidation is Warranted.

As reflected in Defendants' Responses, none of them oppose transfer of the Related Actions to the AFFF MDL. This is significant because Defendants historical involvement in the AFFF MDL gives them a deeper  knowledge as to what will be required in litigating these cases . While the Panel need not defer to Defendants' litigation preferences, the near-unanimity of Defendants supporting transfer of the Related Actions to the AFFF to the extent that consolidation is deemed warranted by the Panel is strong evidence that a new MDL would impose significant and unjustified burdens. Respectfully, such consensus should carry at least some weight.

### D. Movant's Argument that the District of South Carolina is Not an Appropriate Transferee Forum is Without Merit.

Movant argues that transfer to the District of South Carolina is inappropriate because issues regarding PFAS-laden PPE in the turnout gear cases previously transferred to MDL 2873 were

---

[18]  Presently, there are twenty-six (26) medical monitoring class actions and eighteen (18) property damage class actions pending in the AFFF MDL.

"secondary," to the AFFF allegations, and that the Related Actions' legal claims are distinct from those being litigated in the AFFF MDL.[19] Both underlying premises are wrong.

First, as discussed above, there are significant overlapping issues of fact between the proposed new turnout gear MDL and the AFFF MDL, and massive amounts of discovery relevant to the turnout gear cases has already been produced in the AFFF MDL. It appears that Movant's counsel may not have reviewed the discovery that has been produced in the AFFF MDL, and thus seemingly is not in a position to determine the scope of the overlapping issues. However, the bottom line is, there is tremendous overlap in turnout gear discovery, and no evidence to suggest that where turnout gear cases are at issue that those allegations are somehow "secondary."

In fact, any concern that turnout gear allegations are "secondary" in the AFFF MDL is belied by reality. In reality, the AFFF MDL court has demonstrated a sophisticated ability to triage, sequence, and administer its docket, including creating the following buckets of cases:

- Public water system cases;

- Personal injury cases

- Property damage claims;[20]

- Sovereign and natural resource damage claims;

- Medical monitoring claims; and

- CERCLA and Federal Tort Claims Act environmental remediation claims.

The AFFF MDL court has proven adept at advancing each of these tracks without allowing any single track to stop the progress of the others, including the cases involving turnout gear. More

---

[19] Movant City of Rochester's Reply in Support of Motion for Centralization and Transfer of the Related Actions to the District of Minnesota for Consolidated or Coordinated Pretrial Proceedings [ECF No. 63], at 5-6 ("Reply Brf.").

[20] This category of cases includes both property damages claims of municipal and private landowners, although there are far more and larger municipal claims. Moreover,  as part of their damages, many of these municipal plaintiffs are also asserting damages for the replacement costs of their turn out gear.

specifically, the public water system cases settled on the literal eve of trial with settlements achieved against four defendants to date; and active negotiations with others. Collectively, these settlements represent over 90% of the AFFF market share and its impact on contamination from PFOA and/or PFOS. Next, a pool of personal injury cases was worked up through a bellwether process, summary judgment and *Daubert* briefing was completed, and then the cases were stayed two months before trial during a claims analysis process for settlement purposes.

Next, the property damage cases, inclusive of claims brought by Sovereigns, are currently being worked up in a bellwether process where ten cases are soon to be narrowed to three to four final cases for full bellwether work up; and inclusive in some of these cases are will be claims for replacement costs of equipment, including turn out gear.[21] Additionally, CERCLA claims were likewise worked up through a quasi-bellwether and mediation process, and only recently stayed as well.

Moreover, the extensive turnout gear-specific discovery already completed in the AFFF MDL means that the Related Actions would enter the existing AFFF MDL proceedings at a significantly more advanced stage than they would in any newly formed MDL saving them years of discovery efforts.

Second, as it pertains to the similarity in legal claims, Movant incorrectly argues that, unlike the claims in the AFFF MDL, the Related Actions involve violations of RICO, consumer protection laws, and allegations that Defendants were unjustly enriched.[22] This is simply false. Many Sovereign Plaintiffs in the AFFF MDL allege violations of consumer protection laws[23] as

---

[21] Practically what this likely means is that claims at the heart of the Related Actions will likely be tried in the AFFF MDL long before discovery is even completed in any newly formed MDL.

[22] Reply Brf., at 6.

[23] *See, e.g.*, Count IV: Massachusetts Consumer Protection Act in the Commonwealth of Massachusetts First Amended Complaint, AFFF MDL Case No. 22-cv-01649 [ECF No. 18] ; *see also*, Sixth Cause of Action of the State of Alaska's

well as unjust enrichment.[24] Moreover, and as noted above, the damages sought in Related Actions are the same as certain plaintiffs will be claiming in the AFFF MDL, including by both fire stations and airports that seek replacement turnout gear as an element of their damages. Because of the common factual and legal issues between the Related Actions and cases pending in the AFFF MDL, transfer of the Related Actions to the AFFF MDL is both warranted and appropriate.

**E.   Creating a Separate Turnout Gear MDL Could Result in Forum Shopping and Potential Claim-Splitting Problems.**

A separate turnout gear MDL could invite forum shopping and/or potential claim splitting issues.[25] By way of example, municipal plaintiffs seeking to replace turnout gear as a part of their damages but who also allege property contamination as a result of AFFF use could arguably belong in either the AFFF MDL or the new proposed MDL. As noted above, the Panel has previously indicated that it disfavors claim splitting with respect to this AFFF MDL. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 21511, *8 (J.P.M.L. Feb. 4, 2021)(discussing the rejection of "an attempt by a water authority to split its claims into AFFF and non-AFFF complaints and …., [and] noting that "[i]t would be inefficient for [such] actions to proceed separately and potentially prejudicial to the parties.'"). This is the general rule for most courts as clam splitting wastes judicial resources, risks inconsistent rulings, and imposes undue burden on parties.[26]  This example is very real. There are hundreds of airports with cases filed in

---

Complaint, AFFF MDL Case No. 21-cv-02804 [ECF No. 1-1]. Notably, both Alaska and Massachusetts are two of the ten plaintiffs in the property damage potential bellwether pool.

[24] *See e.g.*, the Seventh Cause of Action in the State of Alaska's Complaint, asserting a claim for unjust enrichment. *Id*.

[25] 3M's Response, at 9.

[26]  Some case law suggests that that class actions are immune from claims splitting defenses. Moreover, Co-Lead Counsel acknowledges that even within the AFFF MDL certain claims have been split and settled separately from the certain cases as a whole. Specifically, municipal and/or county entities have split and settled drinking water claims as part of multiple drinking water class action settlements while preserving other of their still pending claims. However, both the settled split claims  and the claims that are still pending were all being litigated in the same venue (namely

the AFFF MDL and many fire departments with claims in the AFFF MDL as well. Many of these plaintiffs will have to seek the costs of replacing PFAS-laden turnout gear, including some plaintiffs that are already part of the property damage plaintiff pool currently being worked up as part of a property damage plaintiff discovery pool and bellwether selection procedure under MDL CMOs 32 and 32-A [ECF Nos. 6571 and 9340, respectively], and the Order Regarding Parties Designated Real Property ID Sites [ECF No. 6892].[27]

Moreover, if those same plaintiffs are also swept into a separate turnout gear MDL as class members, they would be subject to the jurisdiction of two separate MDLs on effectively the same claims. This would expose them to potentially conflicting orders on class certification, discovery, and dispositive motions, and create a risk that a resolution in one MDL—whether by settlement or judgment—could be impaired, delayed, or complicated by parallel proceedings in the other. In fact, any such plaintiff may need to affirmatively opt-out of any proposed settlement that could result from the newly proposed MDL to maintain their already pending claim in the AFFF MDL. Transferring these class actions to the AFFF MDL avoids these concerns. Finally, although your undersigned would hope this would not occur, because such claims are potentially properly venued before two different MDL judges, having two separate MDLs could result in improper forum shopping.

Plaintiffs' AFFF MDL Lead Counsel respectfully submit that the concerns raised here caution against the creation of a separate MDL since the AFFF MDL already accommodates these

---

the AFFF MDL), thereby minimizing any potential for duplicative discovery, inconsistent rulings and/or complications with respect to any potential future resolution of other pending claims.

[27] Together, these Orders identified twelve property damage sites for which discovery was undertaken. As noted in footnote 26, *supra*, these selected plaintiffs are only currently proceeding on certain of their claims related to a specific site where AFFF was used, rather than all of their claims simultaneously. Both municipalities and State Sovereign cases have parsed their claims in this way through this process where claims unrelated to the specific Site being discovered are preserved. However, again, the split or parsed claim(s) all remain in the same venue for overall coordination and efficiency, they are not relegated to an entirely different MDL.

cases. Consolidating the Related Actions in the AFFF MDL eliminates the risk of claim splitting entirely, ensures that overlapping plaintiffs are subject to a single set of orders and a single resolution process, and preserves the coherence and efficiency of the AFFF MDL.

**F.        Now Is the Time to Transfer Turnout Gear-Only Cases to the AFFF MDL.**

The Panel's December 2025 order declining to transfer prior turnout gear-only cases expressly conditioned its holding on the circumstances then-present, finding transfer not "prudent or necessary *at this time*." Plaintiffs' Co-Lead Counsel submits the time is *now*.

Material developments distinguish the present situation from that which existed when the Panel issued its December 2025 Order. Most importantly, the present circumstances now include the proposal of the creation of a new separate MDL, and the heightened risk of conflicting orders and duplicative litigation. This concern of duplicative litigation has become further compounded by virtue of the fact that the number of nearly identical or "copy-cat" class actions to the Related Actions continue to be filed. What started as one putative national class, has now grown to no less than six similar class actions with certain plaintiffs supporting the creation of a new turnout gear MDL, some opposing the creation of a new MDL and preferring to litigate in their own chosen venue, and, as Plaintiffs' Co-Lead Counsel understands it, at least one of the new plaintiff with a putative class action is intending to support transfer of the Related Actions to the AFFF MDL. Finally, Defendants in the AFFF MDL, who are in the better position to assess the scope of overlapping discovery burdens than Plaintiffs in these newly-filed class actions, uniformly do not oppose transfer of the Related Actions to the AFFF MDL.

These changed circumstances, taken together, provide ample reason to now transfer turnout gear only cases to the AFFF MDL. Transfer of the Related Actions to the AFFF MDL is both

16

prudent and necessary to protect the integrity of the AFFF MDL, serve the convenience of parties and witnesses, and promote the just and efficient conduct of this litigation as a whole.

### G. Counsel for the Related Actions Can Have a Role in the AFFF MDL.

Plaintiffs' Co-Lead Counsel for the AFFF MDL would welcome finding a role for the counsel who are championing the Related Actions in the AFFF MDL. As noted above, the AFFF MDL comprises many different claims and even class actions. Co-Lead Counsel of the AFFF MDL would support counsel for the Related Actions creating a sub-committee under the AFFF MDL Steering Committee to focus on advancing their claims. Indeed, the AFFF MDL has numerous litigation-based sub-committees for advancement of different but related cases.[28] Nonetheless, subcommittee or not, these claims can be prosecuted as part of the existing AFFF MDL where many cases related to turnout gear already exist, massive amounts of turnout gear discovery has already been undertaken, issues related to the general science of PFAS and PFAS toxicity more specifically has already occurred and continues to move forward.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Co-Lead Counsel of the AFFF MDL respectfully urge the Panel to transfer the Related Actions to the District of South Carolina for consolidation and coordination with the *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873, pending before the Honorable Richard M. Gergel.

Dated: July 2, 2026                                                   Respectfully submitted,

---

[28] These subcommittees include – to name just a few – a Sovereign Plaintiff subcommittee, a medical monitoring subcommittee, a personal injury subcommittee, property damage subcommittee, CERCLA subcommittee and a turnout gear subcommittee.

/s/ Michael A. London
Michael A. London
Douglas and London P.C.
1 State Street, 35th Floor
New York, NY 10004
212-566-7500
212-566-7501 (fax)
mlondon@douglasandlondon.com

Joseph Rice
Motley Rice LLC
28 Bridgeside Blvd.,
Mt. Pleasant, SC 29464
jrice@motleyrice.com

Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
214-521-3605
ssummy@baronbudd.com

*Plaintiffs' Co-Lead Counsel of the AFFF MDL as Amicus Curiae*