**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE:  FIREFIGHTER TURNOUT GEAR MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | **MDL No. 3191** |
| | **This Document relates to:** |
| | *Maybrook Fire District v. 3M Company et al.*, No. 7:26-cv-05016 (S.D.N.Y.) |

**RESPONSE OF PLAINTIFF MAYBROOK FIRE DISTRICT
IN SUPPORT OF COORDINATION WITH THE AFFF MDL OR, IN THE
ALTERNATIVE, DENIAL OF SEPARATE CENTRALIZATION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ------------------------------------------------------------------------------- ii

INTRODUCTION ------------------------------------------------------------------------------------ 2

FACTUAL BACKGROUND ------------------------------------------------------------------- 4

    I.    Background of the Related Actions -------------------------------------------------- 4

    II.    Scope of the AFFF MDL ------------------------------------------------------------- 4

ARGUMENT ----------------------------------------------------------------------------------- 6

    I.    Claims of Maybrook, Movant and the Related Actions Present Common
        Questions of Fact that Are Already Being Litigated in the AFFF MDL And
        Thus Will Result in Duplicative Discovery Efforts and Have the Potential
        to Result in Inconsistent Rulings --------------------------------------------------- 6

    II.    The AFFF MDL Involves the Same Defendants, Same Plaintiffs, Same
        Legal Issues and Same Damages Already at Issue in the AFFF MDL ----------------- 8

    III.    Creating a Separate Turnout Gear MDL Outside Judge Gergel's Control
        Would Force Plaintiffs Like Maybrook to Litigate Overlapping Claims in
        Two Remote Forums, Increasing Costs, Confusion, and Delay ----------------------10

    IV.    The Panel's December 2025 Order Denying Transfer of Individual Turnout
        Gear Personal Injury Cases is Not Controlling Here ----------------------------------12

CONCLUSION--------------------------------------------------------------------------------13

## TABLE OF AUTHORITIES

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ............................................................................................ 6

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
2021 U.S. Dist. 21511 (J.P.M.L. Feb. 4, 2021) ................................................... 5

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
2026 U.S. Dist. LEXIS 73301 (J.P.M.L. Apr. 2, 2026) ....................................... 9

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
357 F. Supp. 3d 1391 (J.P.M.L. 2018) ............................................................ 3, 5

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
765 F. Supp. 3d 1379 (J.P.M.L. 2024) ................................................................ 5

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
ECF No. 4062 (J.P.M.L. Dec. 11, 2025) ............................................................. 5

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873,
2021 U.S. Dist. LEXIS 21511 (J.P.M.L. Feb. 4, 2021) .................................... 5, 9

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
No. 2:18-mn-02873-RMG (D.S.C.) ............................................................ passim

*In re Philips Recalled CPAP, Bi-Level PAP, and Mech. Ventilator Prods. Liab. Litig.*,
No. 2:21-mc-01230-JFC (W.D. Pa.) .................................................................... 9

*In re Soclean, Inc.*,
585 F. Supp. 3d 1355 (J.P.M.L. 2022) ................................................................ 9

*In re Soclean, Inc.*,
No. 2:22-mc-00152-JFC (W.D. Pa.) .................................................................... 9

*Maybrook Fire District v. 3M Company et al.*,
No. 7:26-cv-05016 (S.D.N.Y.) ............................................................................ 1

*Village of Maybrook v. 3M Company, et al.*,
No. 2:23-cv-04479-RMG (D.S.C.) ...................................................................... 2

**Statutes and Other Authority**

28 U.S.C. § 1407............................................................................................................ 8

J.P.M.L. R. 6.2(e)......................................................................................................... 1

Pursuant to Rule 6.2(e) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation ("JPML" and/or "Panel"), Plaintiff Maybrook Fire District ("Maybrook" or "Plaintiff"), plaintiff in *Maybrook Fire District v. 3M Company et al.*, No. 7:26-cv-05016 (S.D.N.Y.), respectfully submits this Response in connection with the Motion for Centralization and Transfer of Related Actions.[1] Maybrook is a fire district that purchased PFAS-containing firefighter turnout gear and is proceeding as a proposed class representative in a proposed class action seeking relief on behalf of similarly situated fire departments, fire districts, municipalities, and other public entities. Maybrook joins in the arguments advanced by Plaintiffs' Co-Lead Counsel of the *Aqueous Film Forming Foams Products Liability Litigation*, MDL No. 2873 ("AFFF MDL"), and submits that, if the Panel determines coordinated or consolidated proceedings are warranted, the Related Actions should be transferred to the District of South Carolina for coordinated proceedings before the Honorable Richard M. Gergel in the existing AFFF MDL. In the alternative, if the Panel determines that for administrative or logistical reasons the creation of a turnout gear MDL separate and apart from the AFFF MDL is warranted, it should assign such MDL to Judge Gergel in the District of South Carolina to maximize the synergy between the two MDLs. However if the Panel declines to transfer the turnout gear cases to the AFFF MDL or to a related MDL before Judge Gergel, it should deny creation of a separate turnout gear MDL and permit these cases to proceed directly rather than creating a duplicative parallel MDL before another court.

---

[1] Although Maybrook submits this Response after briefing closed, the Notice of Tag-Along Action identifying Maybrook as a potentially related action was filed after the close of briefing. Maybrook therefore respectfully requests that the Panel consider this Response notwithstanding its submission after the briefing deadline.

1

**INTRODUCTION**

Maybrook agrees that the Related Actions raise overlapping factual and legal issues concerning PFAS-containing firefighter turnout gear, including Defendants' knowledge of PFAS hazards, the migration of PFAS from turnout gear, contamination of fire stations and related property, and the costs of replacing PFAS-laden gear with PFAS-free alternatives.

Maybrook is one such plaintiff. The Maybrook Fire District is an independent fire district which purchased PFAS-containing turnout gear for use by its firefighters. Maybrook seeks to recover damages associated with the purchase, replacement, and remediation consequences of that gear. As a proposed class representative, Maybrook has an interest not only in efficient adjudication of its own claims, but also in ensuring that similarly situated public entities are not subjected to duplicative discovery, inconsistent rulings, or competing MDL structures addressing the same PFAS-related misconduct and damages. Maybrook is also a concrete example of why creation of a second MDL would generate duplicative and potentially overlapping litigation. Although the Fire District is independent of the municipality, the Village of Maybrook – the municipality which the Maybrook Fire District serves – already has its own action pending in the AFFF MDL, *Village of Maybrook v. 3M Company, et al.*, No. 2:23-cv-04479-RMG (D.S.C.). These two actions are likely to involve overlapping facts, witnesses, geography, fire-service facilities, contamination issues, damages, and PFAS-related evidence. Placing Maybrook's turnout gear claims in a separate MDL would risk parallel proceedings concerning closely related public entities and substantially overlapping subject matter, even though the Fire District and the Village are legally distinct entities.

For the reasons set forth below, and as further elaborated on by the AFFF PEC, the common questions identified in the turnout gear actions are central questions that have already been raised

and litigated in the AFFF MDL, and significant written and testimonial discovery has already been conducted on the very topics that Movant and other parties identify as central to the Related Actions. Maybrook therefore supports the AFFF PEC's position that the most efficient and orderly path is transfer to the AFFF MDL before Judge Gergel.

Respectfully, creating a parallel MDL to relitigate the precise matters at issue in the AFFF MDL would undermine the efficient administration of MDL 2873 and create a substantial risk of inconsistent rulings on nearly identical topics, including PFAS toxicity, Defendants' knowledge and concealment of PFAS risks, and the mechanics by which PFAS-containing products contaminate fire-service property. When this Panel ordered consolidation of the AFFF MDL, it cited "[s]ignificant common discovery and pretrial motion practice pertaining to liability and general causation" as a basis for transfer. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1395 (J.P.M.L. 2018). The same rationale applies here, and is stronger now given the years of discovery, expert work, motion practice, and case management already completed before Judge Gergel.

The litigants and the AFFF MDL Transferee Court, now in its eighth year, have significant institutional knowledge regarding the legal, scientific, and factual issues central to Maybrook's claims and the claims of similarly situated public entities. The Court, counsel, and parties have invested years of effort and substantial resources in discovery, motion practice, and case management that directly bear on the claims asserted in the Related Actions. Transferring the Related Actions to the AFFF MDL would promote judicial efficiency, eliminate the risk of duplicative and inconsistent rulings, protect the integrity of ongoing proceedings, and serve the convenience of the parties and witnesses. Conversely, creating a separate turnout gear MDL would fracture related litigation, require courts and litigants to retrace the same ground already covered

3

in the AFFF MDL, and unnecessarily complicate class proceedings and potential resolutions involving the same PFAS-containing products, defendants, public-entity plaintiffs, and categories of damages.

## FACTUAL BACKGROUND

### I.    Background of the Related Actions

Turnout gear is a type of personal protective equipment ("PPE") that is worn by firefighters to protect them from heat, flames, and hazardous substances encountered during firefighting operations, and typically includes a jacket, pants, helmet, gloves, boots, and a hood. The Related Actions allege that, for decades, turnout gear has been laden with PFAS, and that the PFAS migrates out of the turnout gear during its use and storage, causing dangerous exposure to PFAS by the firefighters using PPE.[2]

Maybrook and the plaintiffs in the Related Actions are municipalities, counties, fire districts, and fire departments that purchased and provided PFAS-containing turnout gear to their firefighters. These actions involve overlapping defendants, many of whom are already defendants in the AFFF MDL, and allege that Defendants knew about but concealed the dangers associated with PFAS. Maybrook seeks to recover the costs associated with the purchase of PFAS-laden turnout gear, replacement of that gear with PFAS-free alternatives, and other economic damages flowing from Defendants' alleged misconduct.

### II.    Scope of the AFFF MDL

As the Panel is aware, the AFFF MDL was established in December 2018 to coordinate and consolidate actions involving aqueous film-forming foam ("AFFF") to "serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." *In re*

---

[2] *See e.g.*, Maybrook Compl., at ¶ 3-29.

*Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018). Since that time, the Panel has transferred cases involving turnout gear to the AFFF MDL. *See, e.g.*, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2873, 2021 U.S. Dist. LEXIS 21511, at \*4, \*9 (J.P.M.L. Feb. 4, 2021) (noting that hundreds of firefighter actions alleging exposure to AFFF and turnout gear have been directly filed into MDL No. 2873 and holding that personal injury cases on behalf of firefighters alleging exposure to both turnout gear and AFFF should be transferred to the AFFF MDL).

While the Panel has, to date, declined to transfer certain turnout gear-only cases to the AFFF MDL, *e.g.*, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 765 F. Supp. 3d 1379, 1381 (J.P.M.L. 2024), the Panel's most recent ruling on the issue reserved the question explicitly for a future date. In denying a request to transfer a turnout gear-only case, the Panel stated that it was not convinced that transferring the turnout gear-only cases was "prudent or necessary *at this time*." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, Order Denying Transfer (J.P.M.L. Dec. 11, 2025) [AFFF MDL ECF No. 4062] (emphasis added). That "at this time" qualification is significant: the Panel expressly left open the possibility that circumstances might change to make transfer appropriate. Those circumstances have now materially changed and thus the Related Actions should be transferred to the AFFF MDL. And, importantly, "MDLs can naturally expand to encompass other claims involving the products at issue and presenting similar factual questions. *In re Aqueous Film-Forming Foams Prods. Liab. Litig*., 2021 U.S. Dist. 21511, at \*3 (J.P.M.L. Feb. 4, 2021).

5

## **ARGUMENT**

**I.     Claims of Maybrook, Movant and the Related Actions Present Common Questions of Fact that Are Already Being Litigated in the AFFF MDL And Thus Will Result in Duplicative Discovery Efforts and Have the Potential to Result in Inconsistent Rulings**

Maybrook's claims, like those asserted by the other Related Actions, present common factual questions that are already being litigated in the AFFF MDL. Those questions include, among others:

- PFAS toxicity;
- The degree to which PFAS poses a contamination risk to individuals wearing or otherwise handling PFAS turnout gear;
- The degree to which PFAS turnout gear contaminates areas in which it is used, stored, and cleaned; and
- Defendants' knowledge and concealment of, and collusion regarding, the risks associated with PFAS turnout gear.

Importantly, each of these issues is already the subject of active, extensive discovery in the AFFF MDL (much of which is completed). As to the question of PFAS toxicity generally, the AFFF MDL Court has overseen years of fact and expert discovery on PFAS toxicology, epidemiology, exposure pathways, and Defendants' corporate knowledge regarding same. As it pertains to DuPont and 3M specifically, over 25 depositions of these two Defendants have been taken in the AFFF MDL covering the range of specific topics related directly to PFAS toxicity. Moreover, there have been multiple rounds of expert reports on the topic of PFAS toxicity served by both plaintiffs and defendants, *Daubert* briefing on these topics, and AFFF MDL rulings on *Daubert* challenges on these very issues. Beginning this process again would not only undoubtedly result in duplicative discovery efforts but likewise could result in inconsistent rulings insofar as these and many other *Daubert* rulings have already been issued in the AFFF MDL.

There are nearly twenty thousand cases alleging personal injury and/or property damage resulting from exposure to the PFAS in turnout gear that are already pending in the AFFF MDL.[3] Not surprisingly, therefore, discovery of the turnout gear cases has already occurred, including on the other three questions Movant asserts are common with respect to the proposed new MDL, *i.e.*, "[t]he degree to which PFAS poses a contamination risk to individuals wearing or otherwise handling PFAS turnout gear; [t]he degree to which PFAS turnout gear contaminates areas in which it is used, stored, and cleaned; and Defendants' knowledge and concealment of, and collusion regarding, the risks associated with PFAS turnout gear. These discovery efforts include service of turnout gear specific discovery as follows[4]:

- Over 750 Requests for Production on Defendants 3M, DuPont, Elevate Textiles,[5] Fire-Dex, Globe Manufacturing Company, LLC, Honeywell Safety Products USA,[6] Innotex Corp., Lakeland Industries, Lion Group, Inc., Milliken & Company, PBI Performance Products, Stedfast USA, Inc., Southern Mills d/b/a Tencate Protective Fabrics USA, and W.L. Gore Associates.[7]

- In response to this discovery, these Defendants have produced over 2 million pages of documents. In addition, 3M and DuPont have produced tens of millions of pages of documents related to PFAS more generally.

- Two motions to compel were filed against turnout gear Defendants to assist in ensuring full productions of documents from these Defendants.

- A total of 416 interrogatories have been served on the turnout gear defendants.

---

[3] See the AFFF MDL PEC's Response brief which reports that to date, 19,784 plaintiffs have served Plaintiff Fact Sheets alleging exposure to turnout gear.

[4] See the AFFF MDL PEC's Response brief which provides this data.

[5] Safety Components Fabric Technologies, Inc. (SCI), a subsidiary of Elevate Textiles, is likewise named as an AFFF MDL defendant.

[6] Of note, Honeywell Safety Prods. USA is the same as Defendant Morning Pride Manufacturing.

[7] Many of these discovery demands were served as early as 2021, and updates to the AFFF MDL Court as to the progress of turnout gear discovery has been noted and detailed extensively in Joint Status Reports submitted to the Court since as early as 2022.

In short, turnout gear cases were not an afterthought in the AFFF MDL—they have been a significant and carefully managed component of that litigation for years. Maybrook therefore joins the AFFF PEC's position that the existing MDL infrastructure is the proper vehicle for addressing these claims if coordinated treatment is necessary.

Permitting a separate MDL to proceed on the same matter would subject Plaintiffs like Maybrook to massive duplication of discovery of the efforts already put forth in the AFFF MDL, likely require the retention of overlapping expert witnesses on identical scientific questions, and impose needless burdens on courts and counsel alike. Squandering judicial and party resources in this fashion is antithetical to the purposes of 28 U.S.C. § 1407.

## II.    The AFFF MDL Involves the Same Defendants, Same Plaintiffs, Same Legal Issues and Same Damages Already at Issue in the AFFF MDL

Beyond discovery overlap, the legal and factual issues in Maybrook's case and the other Related Actions match issues already pending in the AFFF MDL, including PFAS toxicity, causation, Defendants' historical knowledge, product design, warnings, concealment, and the costs of replacing PFAS-containing equipment and remediating contaminated fire-service property. These issues will require the same types of fact and expert discovery already undertaken in the AFFF MDL. The same parties would otherwise be forced to litigate these issues a second time before a different transferee court.

The overlap is particularly acute because many fire departments, municipalities, and other public entities with claims concerning PFAS contamination and firefighting-related exposures are already involved in the AFFF MDL. Indeed Maybrook's claims may have significant overlap with the claims filed by the Village of Maybrook – the municipality which Maybrook serves – which are already part of the AFFF MDL. The Panel has recognized that transfer is appropriate where nominally distinct PFAS claims involve overlapping sites, facts, discovery, and pretrial motion

practice. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2026 U.S. Dist. LEXIS 73301, at \*5-6 (J.P.M.L. Apr. 2, 2026). The same principle applies here: Maybrook's claims concerning PFAS-containing turnout gear arise from the same broader course of conduct and scientific record already being litigated in MDL No. 2873.

Maybrook also seeks the same categories of damages that are already being pursued by certain plaintiffs in the AFFF MDL, including costs to replace PFAS-containing turnout gear with PFAS-free alternatives and costs associated with remediating PFAS contamination in firehouses, training facilities, and related properties. Allowing identical or overlapping claims to proceed simultaneously in two separate MDLs invites inconsistent outcomes that could prejudice plaintiffs in both proceedings. It could also place entities with claims in the AFFF MDL within putative classes in a separate turnout gear MDL, creating unnecessary risks of claim splitting, opt-out complications, inconsistent rulings, and competing settlement structures. *See generally In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 21511, at \*8 (J.P.M.L. Feb. 4, 2021) (indicating disfavor of claim splitting in the AFFF MDL).

Similarly, the Panel generally avoids the creation of two entirely distinct MDLs where similar facts are present, which makes sense given the goal of an MDL is efficiency, avoidance of duplicative discovery, elimination of inconsistent pretrial rulings and conservation of the resources of the parties and the court, and having two MDLs with overlapping facts in two different district courts before two different judges undermines these paramount goals. *See, e.g.*, *In re Soclean, Inc.*, 585 F. Supp. 3d 1355, 1357 (J.P.M.L. 2022) (transferring *In re Soclean, Inc.*, MDL No. 3021, to the same judge as the *In re Philips Recalled CPAP, Bi-Level PAP, and Mech. Ventilator Prods. Liab. Litig.*, MDL No. 3014, because of overlapping facts and because the judge there was "uniquely situated to preside over the overlapping claims in the SoClean MDL" given her

9

institutional knowledge of the facts from the existing MDL). This is precisely the circumstances here. Judge Gergel too is uniquely situated to preside over the Related Actions having by far the greatest experience overseeing PFAS litigation generally and turnout gear cases specifically.

Potential resolution of claims involving exposure to PFAS-laden turnout gear would likewise be complicated by having similar claims against the same Defendants in two separate MDLs. If, for example, a proposed class settlement involving public entities and turnout gear replacement costs were negotiated in one MDL while overlapping claims proceeded in another, the result could be competing class structures, inconsistent releases, and unnecessary conflict among plaintiffs seeking relief for the same alleged misconduct. Maybrook seeks to avoid that inefficiency. Coordination before Judge Gergel, or denial of separate centralization in favor of allowing turnout gear cases to proceed through the AFFF MDL, best protects absent class members and preserves orderly resolution of overlapping PFAS claims.

**III.    Creating a Separate Turnout Gear MDL Outside Judge Gergel's Control Would Force Plaintiffs Like Maybrook to Litigate Overlapping Claims in Two Remote Forums, Increasing Costs, Confusion, and Delay**

The creation of a separate turnout gear MDL outside the control of Judge Gergel would create a real and immediate risk that plaintiffs like Maybrook will be required to litigate substantially overlapping claims in two separate federal forums, both remote from their home forum. Maybrook's turnout gear claims are pending in the Southern District of New York, while the closely related Village of Maybrook action is already proceeding in the AFFF MDL before Judge Gergel in the District of South Carolina. If the Panel were to create a new turnout gear MDL in a different district, Maybrook and similarly situated public entities could be forced to participate in one MDL addressing AFFF-related PFAS contamination and another MDL addressing turnout

gear-related PFAS contamination, even where those cases concern the same community, overlapping facilities, common witnesses, related damages, and the same broader PFAS evidence.

That result would defeat the core purpose of multidistrict litigation. Instead of reducing burden and promoting efficiency, a second MDL would multiply proceedings, require overlapping discovery in two courts, and force plaintiffs to coordinate litigation strategy, document production, witness preparation, expert development, motion practice, and potential settlement discussions across separate MDL structures. For a local public entity like Maybrook, that duplication would significantly increase the costs of litigation and divert resources from the efficient prosecution of its claims. It would also create needless confusion over which court controls discovery, which protective orders and case-management orders apply, how overlapping evidence should be used, and how related claims involving the same locality should be resolved.

The risk is not abstract. The Village of Maybrook's AFFF action is already in the AFFF MDL, and Maybrook's turnout gear action may substantially overlap with that case despite the Fire District and the Village being legally distinct entities. Splitting related PFAS claims between Judge Gergel and a separate transferee court would invite inconsistent schedules, duplicative rulings, conflicting expert and discovery obligations, and delay in resolving claims that should be managed coherently. These concerns strongly counsel against creating a separate turnout gear MDL. If centralized treatment is warranted, the Related Actions should be coordinated before Judge Gergel in the AFFF MDL; if not, the Panel should deny separate centralization rather than impose a second remote forum that would increase costs, confusion, and delay for plaintiffs like Maybrook.

IV.     **The Panel's December 2025 Order Denying Transfer of Individual Turnout Gear Personal Injury Cases is Not Controlling Here**

The Panel's December 2025 order denying transfer of individual personal-injury cases alleging turnout gear exposure as the cause of injury does not control here. Those cases presented a different transfer question involving individual firefighters' personal-injury claims based on alleged occupational exposure to turnout gear. Maybrook's case, by contrast, is brought by a public-entity plaintiff seeking economic relief for the purchase, replacement, and consequences of PFAS-containing turnout gear. Those public-entity claims are more likely to overlap with municipal AFFF cases already pending in the AFFF MDL, including claims involving the same communities, public facilities, contamination evidence, witnesses, damages, and broader PFAS-related discovery. The posture of public-entity turnout gear claims therefore materially differs from the posture addressed in December 2025 and presents a stronger basis for coordination with the AFFF MDL—or, at minimum, for denying creation of a separate turnout gear MDL.

Furthermore, the Panel's December 2025 order declining to transfer prior turnout gear-only cases expressly conditioned its holding on the circumstances then present, finding transfer not "prudent or necessary *at this time*." However, the request to create a new separate MDL is a material development that alters that reasoning. The Panel is now being asked not whether to transfer a handful of individual cases, but instead whether to create an entirely new MDL. This significantly heightens risks of conflicting orders, duplicative discovery, competing class proceedings, and unnecessary fragmentation of overlapping PFAS litigation. Rather than allowing a few isolated turnout gear claims to move forward in their home forum, the Movant now seeks to consolidation of a new action involving multiple proposed class actions, overlapping public-entity plaintiffs, similar defendants, similar damages, and common questions already embedded in the AFFF MDL. These changed circumstances make transfer to Judge Gergel appropriate if

12

centralized treatment is warranted, and make denial of a separate turnout gear MDL appropriate if the Panel declines such transfer.

Transfer of the Related Actions to the AFFF MDL would be prudent and necessary to protect the integrity of existing proceedings, serve the convenience of parties and witnesses, and promote the just and efficient conduct of the litigation as a whole. If the Panel declines to transfer these cases to the AFFF MDL, however, Maybrook respectfully submits that the proper alternative is denial of separate centralization, not the creation of a new MDL that would duplicate and potentially conflict with MDL No. 2873.

But to be clear, Maybrook does not seek consolidation outside the AFFF MDL. Its claims, as asserted in its Complaint, can be well managed in its home district if the Panel declines to transfer them to Judge Gergel, and informal coordination among courts and counsel can occur if necessary to avoid duplication. But the delay, expense, and procedural complexity resulting from creating an entirely new turnout gear MDL outweigh any potential efficiencies that separate centralization might provide.

## CONCLUSION

For the foregoing reasons, Plaintiff Maybrook Fire District respectfully joins in and supports the arguments advanced by Plaintiffs' Co-Lead Counsel of the AFFF MDL. If the Panel determines that coordinated or consolidated proceedings are warranted, Maybrook respectfully requests that the Related Actions be transferred to the District of South Carolina for coordination with *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2873, pending before the Honorable Richard M. Gergel. In the alternative, if the Panel determines that creation of a separate turnout gear MDL is warranted, it should assign such MDL to Judge Gergel. However, in the event that the Panel declines to transfer the Related Actions to the AFFF MDL or

13

to Judge Gergel as a new related MDL, Maybrook respectfully requests that the Panel deny creation of a separate turnout gear MDL and allow the turnout gear cases to proceed directly rather than creating a duplicative parallel MDL before another court.

Dated: July 7, 2026                          Respectfully submitted,

                                                     */s/ Hunter J. Shkolnik*
                                                     Hunter J. Shkolnik, Esq.
                                                     **NS PR LAW SERVICES LLC**
                                                          **d/b/a NAPOLI SHKOLNIK**
                                                     1302 Avenida Ponce de León
                                                     San Juan, PR 00907
                                                     Tel. (787) 493-5088
                                                     Hunter@nsprlaw.com

                                                     */s/ Salvatore C. Badala*
                                                     Salvatore C. Badala, Esq.
                                                     **NAPOLI SHKOLNIK PLLC**
                                                     400 Broadhollow Road
                                                     Suite 305
                                                     Melville, NY 11747
                                                     Tel. (212) 397-1000
                                                     SBadala@napolilaw.com

                                                     ***Counsel for Plaintiff***
                                                     ***Maybrook Fire District***

14